**KRONENBERGER BURGOYNE, LLP**

Karl S. Kronenberger (Cal. Bar No. 226112)
Henry M. Burgoyne, III (Cal. Bar No. 203748)
Jeffrey M. Rosenfeld (Cal. Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Defendants SubscriberBase, Inc,
SubscriberBase Holdings, Inc. and Consumer
Research Corporation

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASIS INTERNET SERVICES, *et al.*** | Case No. CV-09-3503 |
| Plaintiffs, | |
| vs. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| **SUBSCRIBERBASE INC, *et al.*,** | |
| Defendants. | DATE:     March 19, 2010 |
| | TIME:     10:00 a.m. |
| | CTRM:    1, 17th Floor |
| | JUDGE:   The Hon. Samuel Conti |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT .... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I. INTRODUCTION ..................................................................................................... 2

II. ARGUMENT ........................................................................................................... 3

    A. Plaintiffs failed to allege that the Emails' subject lines were false .................... 3

        1. Many of the subject lines did not use the term "free" or offer a gift ........ 5

        2. No recipient acting reasonably under the circumstances would have
        been deceived by the Emails' subject lines .......................................... 6

    B. Plaintiffs have not alleged that Defendants knew that the subject lines were
    likely to mislead—or even that Defendants knew of the Emails—as required
    by section 17529.5(a)(3) ................................................................................ 10

        1. Regardless of whether Defendants "advertised" in the Emails, Plaintiffs
        failed to sufficiently allege Defendants' knowledge, as required by
        section 17529.5(a)(3) .......................................................................... 11

        2. Plaintiffs fail to sufficiently allege a conspiracy ................................... 12

    C. Plaintiffs' claims are barred by California's False Advertising Law, as amended
    by Proposition 64 ........................................................................................... 14

    D. *Virtumundo* and its progeny hold that CAN-SPAM's preemption clause
    requires a state law plaintiff to plead fraudulent conduct ............................... 17

IV. CONCLUSION ..................................................................................................... 18

i

**TABLE OF AUTHORITIES**

*Alfus v. Pyramid Tech. Corp.,* 745 F. Supp. 1511, 1521 (N.D. Cal. 1990).....................13

*ASIS Internet Services v. Optin Global, Inc.,* No. 05-5124, 2008 WL 1902217, *19 (N.D. Cal. April 29, 2008) .........................................................................................11, 12

*Branick v. Downey Sav. and Loan Ass'n,* 39 Cal. 4th 235, 240 (2006) .........................14

*Choate v. County of Orange,* 86 Cal. App. 4th 312, 333 (2000)....................................12

*Ferguson v. Active Response Group,* No. 08-35709, 2009 WL 3229301, *1 (9th Cir. Oct. 8, 2009)...............................................................................................................18

*Freeman v. Time, Inc.,* 68 F.3d 285 (9th Cir. 1995)....................................................8, 9

*Gordon v. Commonwealth Marketing Group, Inc.,* No. 08-5074, 2009 WL 3784606, *1 (E.D. Wash. Nov. 9, 2009) .......................................................................................17

*Gordon v. First Premier Bank, Inc.,* No. 08-5035, 2009 WL 5195897, *1 (E.D. Wash. Dec. 21, 2009) .....................................................................................................17

*Gordon v. Virtumundo, Inc.,* 575 F.3d 1040 (9th Cir. 2009).......................................3, 17

*Haskell v. Time, Inc.,* 857 F. Supp. 1392, 1399, 1400-03, 1405-07 (E.D. Cal. 1994) . 7, 8

*Haskell v. Time, Inc.,* 965 F. Supp. 1398, 1407 (E.D. Cal.1997) ....................................7

*In re Tobacco II Cases,* 46 Cal. 4th 298, 317 (2009)....................................................14

*Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 505-08 (2003) ..................4, 7, 9

*Mazza v. American Honda Motor Co.,* 254 F.R.D. 610, 627 (C.D. Cal. 2008)................7

*Net2Phone, Inc. v. Superior Court,* 109 Cal. App. 4th 583, 588-89 (2003).....................5

*Silverstein v. Liquid Minds LLC,* No. BC340643 (Los Angeles Super. Ct. Aug. 18, 2009)17

*State ex rel. Metz v. CCC Info. Services, Inc.,* 149 Cal. App. 4th 402, 419 (2007)........13

*United Centrifugal Pumps v. Schotz,* No. 89-2291, 1991 WL 274232, *3-4 (N.D. Cal. June 12, 1991) ......................................................................................................13

*Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097 (9th Cir. 2003)....................................13

*Wasco Products, Inc. v. Southwall Technologies, Inc.,* 435 F.3d 989 (9th Cir. 2006) ... 13

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. CV-09-3503

ii

NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA

1

**Federal Statutes and Other Authorities**

16 C.F.R. §251 ...................................................................................................*passim*

Proposition 64 ...................................................................................................*passim*

Bus. & Prof. C. §17500 *et seq.* .......................................................................*passim*

Bus. & Prof. C. §17529.5(a)(3). ......................................................................*passim*

FED. R. CIV. P. 9(b). .........................................................................................*passim*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

2  TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

3  PLEASE TAKE NOTICE THAT on March 19, 2010, at 10:00 a.m. or as soon

4  thereafter as the matter may be heard in the above-titled Court, located in Courtroom 1,

5  17th Floor of the United States District Court for the Northern District of California, located

6  at 450 Golden Gate Avenue, San Francisco, California, Defendants SubscriberBase, Inc,

7  SubscriberBase Holdings, Inc. and Consumer Research Corporation Inc. (collectively,

8  "Defendants") will move for dismissal of the First Amended Complaint ("FAC").   The

9  scheduling of the motion is based on the Honorable Judge Conti's procedures and

10  schedule.

11  The Court should dismiss the FAC because Plaintiffs' claims are preempted by

12  CAN-SPAM and Plaintiffs have failed to plead the elements of their claims with

13  particularity under Federal Rule of Civil Procedure 9(b).  Additionally, Plaintiffs' claims are

14  barred by Proposition 64.

15  This motion is based on Defendants' memorandum of points and authorities in

16  support of this motion and such other evidence and arguments that may be presented

17  prior to or at the hearing on the motion.

18

19  DATED: January 19, 2010                    **KRONENBERGER BURGOYNE, LLP**

20

21                                             By:   s/ Henry M. Burgoyne, III
22                                                    Henry M. Burgoyne, III

23                                             Attorneys for Defendants SubscriberBase,
                                               Inc, SubscriberBase Holdings, Inc. and
24                                             Consumer Research Corporation

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3      Notwithstanding Plaintiffs' amendments thereto, the First Amended Complaint

4  ("FAC") suffers from the same flaws as Plaintiffs' initial complaint.  Accordingly, it too,

5  must be dismissed.

6      First, Plaintiffs again fail to allege, much less with particularity, that the subject

7  lines of the emails at issue (the "Emails") are false.  Contrary to the allegations in the

8  FAC, many of the subject lines do not contain the term "free," do not offer a "free gift,"

9  and/or specifically state that the offer is subject to conditions.  Those subject lines are not

10  false even under Plaintiffs' own analysis.  Furthermore, even if those subject lines

11  specifically mentioned the availability of "free gifts," those subject lines still could not be

12  considered "likely to mislead a recipient acting reasonably under the circumstance,"

13  within the meaning of Business and Professions Code Section 17529.5(a)(3).  That is the

14  case because California's false advertising jurisprudence (to which Plaintiffs direct the

15  Court) makes clear that no email recipient could or would reasonably interpret the Emails'

16  subject lines as offering a "free gift" without cost or condition.

17      Second, Plaintiffs have still failed to allege that Defendants had any knowledge of

18  the Emails, much less the Emails' subject lines or—as required by section 17529.5(a)(3)

19  –that those subject lines were "likely to mislead."  In its prior Order Granting Defendants'

20  Motion to Dismiss (the "Prior Order"), the Court indicated the existence of "ties" between

21  Defendants and the authors and/or senders of the emails.  Those ties, however, are as a

22  matter of fact and law insufficient to establish Defendants' specific knowledge of the

23  Emails' contents and likely effect.  Plaintiffs attempt to circumnavigate their inability to

24  plead Defendants' knowledge by means of vague "conspiracy" allegations.  Those

25  conspiracy allegations, however, do not come close to satisfying California law, much

26  less Federal Rule of Civil Procedure 9(b).

27      Third, Plaintiffs' claims are barred by California's false advertising law, as

28  amended by Proposition 64.  In enacting Proposition 64, the California electorate limited

**NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  all actions brought under California's false advertising laws—including actions brought

2  under section 17529.5—to plaintiffs who had suffered an injury in fact and lost money or

3  property.  Plaintiffs have not alleged any such injury or loss.  Accordingly, Plaintiffs'

4  section 17529.5(a)(3) claims cannot be sustained.

5        Fourth and finally, and as relates to preemption of Plaintiffs' claims, while the

6  Court addressed the federal CAN-SPAM Act in its Prior Order, it did not refer to or

7  appear to take into account the controlling Ninth Circuit case on the subject, *Gordon v.*

8  *Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009).  What's more, the Court did not have the

9  advantage of a range of new authority issued since this Court's prior order.  All of that

10  recent case law holds that to avoid CAN-SPAM preemption, a state law plaintiff must

11  plead and prove the elements of fraud (including reliance and damages).

12        For all of these reasons, the Court must dismiss Plaintiffs' FAC.

13                              **II.    ARGUMENT**

14  **A.    Plaintiffs failed to sufficiently allege that the Emails' subject lines were false.**

15        In order to state a claim under section 17529.5(a)(3), a plaintiff must allege that

16  the email at issue had a subject line "that a person knows would be likely to mislead a

17  recipient, acting reasonably under the circumstances, about a material fact regarding the

18  contents or subject matter of the message."  As the Court held in the Prior Order, such

19  falsity must be alleged with the particularity required under Federal Rule of Civil

20  Procedure 9(b).  (Prior Order at 6:21-7:15.)  Plaintiffs have failed to allege that the

21  Emails' subject lines violated section 17529.5(a)(3), both because: 1) most of the subject

22  lines don't use the term "free," and many don't offer or refer to any gift; and 2) no

23  recipient acting reasonably under the circumstances could or would have been deceived

24  by any of the Emails' subject lines.[1]

25  _____

26  [1]  In the Prior Order, the Court addressed Defendants' more limited argument regarding
the falsity of the Emails' subject lines.  Specifically, the Court addressed Defendants'
argument that Plaintiffs failed to allege that the subject lines were misleading because

27  Plaintiffs did not allege that the recipients were not entitled to the items identified in the
subject lines.  The Court rejected this argument, finding that Plaintiffs pled that the

28  Emails' associated landing pages required consumers to perform additional affirmative
acts.  Here, in Defendants motion and brief, Defendants address this topic more

Case No. CV-09-3503

                            3

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    As an initial matter, and for a laundry list of reasons, the Court should disregard

2    Plaintiffs' argument that because the Emails supposedly violate 16 C.F.R. §251, they

3    *ipso facto* violate section 17529.5(a)(3).  First, Plaintiffs misrepresent that California has

4    adopted "the FTC's rules concerning false advertising and that those rules apply" to

5    claims under section 17529.5(a)(3).  (FAC ¶18.)  In fact, and as clearly explained by the

6    case cited by Plaintiffs, <u>California courts look only to "judicial interpretations" of the</u>

7    <u>Federal Trade Commission Act</u>, including for guidance as to the reasonable consumer

8    standard.  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 505-07 (2003).

9    Second, 16 C.F.R. §251 is not, as Plaintiffs represent, an "order" of the FTC, but a self-

10   professed "guide" designed to help advertisers (in particular, print advertisers)

11   understand how the FTC analyzes potential violations of the FTC Act.  Third, section

12   17529.5(a)(3) does not incorporate a particularized standard (such as that set forth in 16

13   C.F.R. §251) but, as Plaintiffs concede, the more generalized "reasonable consumer"

14   standard.  Had the California Legislature wished to incorporate more particularized

15   requirements into section 17529.5(a)(3)—for example, that certain additional information

16   be disclosed in certain other parts of an email—they would have said so, or even referred

17   explicitly to 16 C.F.R. §251 or some other external standards.  They did not, and the

18   statute should not be re-written.

19   Perhaps most importantly, <u>even if 16 C.F.R. §251 were in some way applicable,</u>

20   <u>none of the Emails violates it</u>.  16 C.F.R. §251.1(c) dictates that "conditions and

21   obligations upon which receipt and retention of the 'Free' item are contingent should be

22   set forth clearly and conspicuously at the outset of the offer so as to leave no reasonable

23   probability that the terms of the offer might be misunderstood."  The Emails clearly and

24   conspicuously set forth the existence and nature of conditions, and at the earliest

25   practicable time.  Plaintiffs concede that each Email discloses the existence of conditions

26   prominently, right below the graphic that constitutes the introduction to the offer.  Those

27   _____

28   comprehensively, in particular because Defendants have now been apprised of the
Emails' subject lines.

conditions are immediately and readily viewable by any recipient who clicks on the prominent hyperlink, which displays the remainder of the advertisement.  16 C.F.R. §251 was written in 1971.  It did not contemplate email subject lines (limited to snippets of text) or hyperlinked documents (such as email and Internet pages).  It is ridiculous to suggest that 16 C.F.R. §251, even if applicable, would require an advertiser to fully describe conditions in the sentence fragment that is a subject line (typically less than 56 characters).  So too is it ridiculous to suggest that terms and conditions aren't sufficiently disclosed because they appear on a hyperlinked document. *Net2Phone, Inc. v. Superior Court*, 109 Cal. App. 4th 583, 588-89 (2003)  (explaining "[w]e perceive no unfairness in [defendant's] requirement that certain contractual terms must be accessed via hyperlink, a common practice in Internet business").  Plaintiffs point to no authority of any kind suggesting that anyone has ever applied 16 C.F.R. §251 to commercial email in the way Plaintiffs' now urge this Court to do so.  Even if 16 C.F.R. §251 were in some way relevant, the Emails would not violate it.  The Court should recognize as much.

Importantly, Plaintiffs do not allege that the recipients were not entitled to a gift—or that the subject lines were false in that respect.  Nor do Plaintiffs allege that any consumer—whether a customer of Plaintiffs' or otherwise—actually was confused by the Emails.  It is irrelevant whether Plaintiffs believe that the Emails complied with 16 C.F.R. §251.  The Emails' subject line are not "likely to mislead a recipient, acting reasonably under the circumstances" within the meaning section 17529.5(a)(3).  Accordingly, Defendants' motion should be granted.

**1.    Many of the subject lines did not use the term "free" or offer a gift.**

As Defendants' sole basis for liability, Plaintiffs argue that the Emails' subject lines offered a "free gift" without prominently disclosing conditions on the receipt of that gift. That failure of disclosure, according to Plaintiffs, rendered those subject lines misleading under section 17529.5(a)(3).  (FAC ¶¶18, 20, 23-24.)  The primary problem with that argument is that <u>many of the subject lines did not use the term "free" (or any similar term), did not refer to any sort of gift, and/or specifically stated that conditions applied</u>.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   (FAC Ex. L.)  As to those emails, Plaintiffs' allegation of falsity plainly fails.

2       By way of example, and example only, the following subject lines don't by any

3   stretch conform to Plaintiffs' inaccurate summary allegations of falsity:

4       • "Become a Pampered Chef Distributer on us(details apply)."

5       • "Shop til ya drop at no cost!"

6       • "Mystery shop locally and keep what you buy!"

7       • "Find out how you could test and keep a designer hand bag."

8       • "Get the New Nikon D300 Digital Camera on us (with participation)."

9       • "Shop on us."

10      • "You shop – we pay."

11      • "You shop-keep what you get."

12      • "Get the latest Blackberry Sotrm phones on our tab (details apply)!"

13      • "Get the new Sony alpha DSLR Camera on us- details inside!"  (FAC Ex. L.)

14      None of these subject lines promises the recipient a "free gift" without conditions.

15  In fact, like so many other of the alleged Emails' subject lines, none even comes close to

16  doing so.  Accordingly, in relation to those emails, Plaintiffs' section 17529.5(a)(3) claims

17  plainly fail, and so must be dismissed.

18      **2.    No recipient acting reasonably under the circumstances would have**
          **been deceived by the Emails' subject lines.**
19

20      Section 17529.5(a)(3) imposes liability only when a subject line is "likely to mislead

21  a recipient, _acting reasonably under the circumstances_, about a material fact regarding

22  the contents or subject matter of the message."  (Emphasis added).   Contrary to

23  Plaintiffs' broad-brush, conclusory allegations, no recipient could reasonably interpret any

24  of the alleged subject lines as representing that the recipient had actually been awarded

25  a "free gift."  Accordingly, Plaintiffs' section 17529.5(a)(3) claims fail.

26      With respect to the meaning of section 17529.5(a)(3)'s "likely to mislead a

27  recipient, acting reasonably under the circumstances" language, Plaintiffs urge the Court

28  to seek guidance in California cases interpreting Business and Professions Code section

17500 *et seq.*, which Plaintiffs refer to as "the California False Advertising law."  Indeed, that caselaw provides a good deal of guidance.  To state a false advertising claim under section 17500 law, a plaintiff must allege that the defendant's statements were likely to deceive a reasonable recipient.  *See Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 627 (C.D. Cal. 2008).   If the alleged misrepresentation would not mislead a reasonable recipient, then such claims may be dismissed on a motion to dismiss.  *See Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994). The phrase "likely to deceive" requires more than a possibility that the advertisement might be understood by some few recipients in an unreasonable manner.  *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).   Rather, that phrase requires the ad to be so misleading that a significant portion of the consuming public, acting reasonably under the circumstances, could be misled.  *Id.*  Where the intended recipients are members of a particular group – Internet users, for example – the truthfulness of an advertisement "must be measured by the impact it will likely have on members of that group, not others to whom it was not primarily directed."  *Id.* at 506 (emphasis added).  To establish a likelihood of deception, the plaintiff must be able to demonstrate by extrinsic evidence that the challenged statements tend to mislead recipients.  *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (E.D. Cal.1997).  The evaluation of an alleged false advertisement under the reasonable consumer standard is a question of law to be undertaken by the Court.  *See Lavie*, 105 Cal. App. 4th at 105.

Plaintiffs allege that the Emails' subject lines are false for failing to disclose conditions or costs associated with supposedly offered "free gifts."  The problem with that argument is that as a matter of law, no recipient of any of the Emails could reasonably have believed that he or she was entitled, without condition or payment, to a valuable "free gift."  At worst, the Emails' subject lines are analogous to sweepstakes advertisements of the sort at issue in *Haskell*.  The *Haskell* court granted the defendant advertisers' motion to dismiss section 17500 claims after concluding that no reasonable recipient could believe that advertisements promising cash prizes were true.   The

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

7

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   advertisements there at issue were "sweepstakes bulletins"; to entice recipients in to

2   reading those bulletins, the defendant advertiser incorporated hyperbolic representations

3   such as: a) "You've never been closer to having a chance to win $5,000,000.00"; b) "You

4   have just won One Million Dollars!"; c) "Five Million Dollars Guaranteed"; and c) that the

5   recipient was a "winner," "finalist," or "pre-selected." *Haskell v. Time, Inc.*, 857 F. Supp.

6   1392, 1400-03, 1405-07 (E.D. Cal. 1994).   The *Haskell* court concluded that such

7   representations did not constitute false advertisements, since "[a]ny reasonable recipient,

8   even if un-sophisticated, understands that these are mass mailings as part of an

9   advertising campaign." *Id.* at 1399, 1400-01.

10   Relying on *Haskell*, the Ninth Circuit in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th

11   Cir. 1995), concluded that promises of valuable prizes, as contained in personalized

12   sweepstakes mailers, were not likely to deceive a reasonable consumer.   To entice

13   recipients into reading its mailers, the advertiser incorporated highly visible language

14   stating, in effect, that the recipient already was a winner:

15   • "If you return the grand prize winning number, we'll officially announce that
16      MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS
        SCHEDULED TO BEGIN."

17
18   • "We are now scheduled to begin payment of the third and largest prize-the
        $1,666,675 listed next to the name MICHAEL FREEMAN!   In fact,
19      arrangements have already been made which make it possible to begin
        payment of the $1,666,675 DIRECTLY to MICHAEL FREEMAN if one of your
20      numbers is the grand prize winner.

21   • "If you return your entry with the Validation Seal attached and your entry
        includes the grand prize winning number, MICHAEL FREEMAN IS
22      GUARANTEED TO BE PAID THE ENTIRE $1,666,675.00!" *Freeman*, 68 F.3d
        at 287.

23
24   The *Freeman* court found that any false inference to the effect that the recipient already

25   had won the sweepstakes would have been dispelled by the conditions that were

26   contained in the rest of the advertisement.   *See Freeman*, 68 F.3d at 289-90.   As the

27   Freeman court explained, "[s]uch an inference is unreasonable in the context of the

28   entire document . . . Any persons who thought that they had won the sweepstakes would

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    be put on notice that this was not guaranteed simply by doing sufficient reading to

2    comply with the instructions for entering the sweepstakes."  *Id.* at 289-90.  Accordingly,

3    the *Freeman* court concluded, those statements did not constitute false advertisements

4    within the meaning of section 17500.  *Id.* at 290.

5          To the extent the Emails' subject lines contained words like "free" and/or "gift,"

6    those subject lines were, as a matter of law, unlikely to mislead a recipient acting

7    reasonably.  Plaintiffs admit that their customers receive over 100 unsolicited emails

8    each day.  (FAC ¶¶11-12.)  <u>It is inconceivable that an individual who received 100</u>

9    <u>unsolicited commercial emails daily, acting reasonably, would believe a promise in one of</u>

10   <u>those emails' subject lines that to the effect that the consumer was being offered a cost-</u>

11   <u>and condition-free gift</u>.  *See Lavie*, 105 Cal. App. 4th at 506 (truthfulness to be judged by

12   likely impact on member of group to whom advertisement is directed).  What's more, as

13   in *Freeman*, a recipient of one of the Emails could not have registered to received his or

14   her purportedly "free gift" without reading instructions sufficient to put the recipient on

15   notice of accompanying charges and/or conditions.  The question is not, as Plaintiffs

16   would have the Court believe, whether the Emails' subject lines "represent that the

17   recipient has received a free gift."  (FAC ¶20.)  Instead, the question is—both under

18   section 17529.5(a)(3) and under caselaw articulating California's "reasonable consumer"

19   standard—whether a significant portion of intended recipients, acting reasonably under

20   the circumstances, would have been misled by the Emails' subject lines into believing

21   that they were entitled to a valuable "free gift" without cost or condition.  And the answer,

22   as set forth in *Haskell* and *Freeman*, is no.

23         Plaintiffs allege that the "email subject lines received by Plaintiffs were clearly

24   intended to get someone to open the email by enticing them with a free gift."  (FAC ¶20.)

25   So what?  The suggestion of a free "prize" or "gift" as an enticement to review marketing

26   content is an age-old technique used in radio, television, mail, and print.  *See* 16 C.F.R.

27   §251 (explaining that "[t]he offer of 'Free' merchandise or service is a promotional device

28   frequently used to attract customers. Providing such merchandise or service with the

**NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   purchase of some other article or service has often been found to be a useful and

2   valuable marketing tool").  Why should the standard by which that technique is judged be

3   any different simply because the alleged misrepresentation appears in the subject line of

4   an email?  An Internet user who receives 100 unsolicited commercial emails a day would

5   not reasonably believe that they were entitled to a "Free Blackberry Storm" without any

6   payment or conditions.  A recipient of an email with the subject line "get FREE money to

7   shop!" would not reasonably believe that he or she was entitled to free money by virtue of

8   receiving an email.  It is not surprising that Plaintiffs fail to allege any actual consumer

9   confusion, whether by their users or anyone else.[2]  Nor is it surprising that Plaintiffs can

10  point to no authority of any kind so much as suggesting that senders of commercial

11  emails such as those at issue here must shoehorn all relevant terms and conditions into

12  the body of an email, much less the 56 characters of text that comprise a subject line.

13  No recipient acting reasonably could or would have been misled by the subject lines at

14  issue.  Thus, the Emails do not violate section 17529.5(a)(3), and Plaintiffs' claims must

15  be dismissed.

16  **B.    Plaintiffs have not alleged that Defendants knew that the subject lines were
        likely to mislead—or even that Defendants knew of the Emails—as required**
17      **by section 17529.5(a)(3).**

18      Plaintiffs have not alleged that Defendants authored or sent the Emails, or even

19  that Defendants had any direct knowledge of the Emails' existence and content.  Instead,

20  Plaintiffs seek to impose liability on the grounds that:  1) Defendants "advertised" in and

21  were somehow connected to the Emails, and/or 2) Defendants conspired with unnamed

22  third parties to send the Emails.  Neither ground suffices.[3]

23

24  [2] It's also important to recognize that reasonable users of email understand that only a
    limited amount of information can fit within an email's small subject line.   Thus,
25  reasonable users of email understand that they must read the body of an email to
    understand what terms and conditions may apply.

26  [3] Defendants recognize that the Court, in its Prior Order, addressed the relationship of
    Defendants to the Emails, as pled in the Complaint.  Given that the Prior Order did not
27  discuss the structure of email affiliate marketing, and how an advertiser may not be in
    any way associated with the sender of an email, Defendants believe that further
28  argument is appropriate.

Case No. CV-09-3503                                    **NTC OF MTN & MTN ISO DEFENDANTS'**
                                         10           **MOTION TO DISMISS; MPA**

**1.   Regardless of whether Defendants "advertised" in the Emails, Plaintiffs failed to sufficiently allege Defendants' knowledge, as required by section 17529.5(a)(3).**

In the Prior Order, the Court indicated that Plaintiffs had alleged a sufficient connection between the Emails and Defendants, insofar as Plaintiffs had alleged that Defendants "advertised" in the Emails and that "sufficient ties" existed between Defendants and the emails. (Prior Order at 7:21-28.)  According to the Prior Order, those ties consisted of references to Defendants in the landing pages to which the Emails contained hyperlinks.  (*Id.*)  Those facts alone, however, are insufficient to state a claim under section 17529.5(a)(3), which imposes liability only on a defendant who "knows [that an alleged subject line] would be likely to mislead a recipient."

Plaintiffs do not, and cannot, allege that Defendants had any knowledge that the Emails' subject lines were likely to mislead.  In fact, Plaintiffs can't even allege that Defendants knew of the subject lines, or even of the Emails themselves.  Defendants, like so many others in the Internet marketing industry, contract with third parties to send lawful commercial email advertisements under circumstances that do not permit the examination of every such advertisement.[4]  There is no indication, in the FAC or elsewhere, that Defendants had any opportunity to examine the Emails, much less that they knew of the subject lines or the subject lines' supposed tendency to mislead.  ASIS and its counsel the Singleton Law Group should know of the requirement that it allege (and later prove) a defendant's knowledge, given that ASIS and Singleton have lost at least one case on that very issue.  *See ASIS Internet Services v. Optin Global, Inc.*, No. 05-5124, 2008 WL 1902217, *19 (N.D. Cal. April 29, 2008) (dismissing section 17529.5

---

[4] In the industry referred to as affiliate email marketing, an advertiser engages an affiliate network to contract with its affiliates to send out emails advertising the advertiser's products.  In almost all cases, the contract between the advertiser and the network and the contracts between the network and its affiliates require the parties to comply with all relevant laws, including CAN-SPAM and its state counterparts.

Each time a user receives an email, follows the link in that email, and completes a transaction, the advertiser compensates the network, and the network compensates the affiliate who sent the email.  Often, the affiliates themselves contract with sub-affiliates, and the sub-affiliates contract with sub-sub-affiliates, and so on.  In each instance, the advertiser and network get further and further removed from the sender of the email.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. CV-09-3503

**NTC OF MTN & MTN ISO DEFENDANTS' MOTION TO DISMISS; MPA**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  claim where ASIS could not establish that the defendant had drafted or sent the emails at

2  issue).  As Judge Spero explained, "ASIS has cited no California case law that suggests

3  that a defendant that did not itself send spam advertising and did not knowingly

4  commission another entity to send spam advertisements could be held liable under state

5  law merely because it benefitted from the spam.  Indeed, <u>to the extent a state law</u>

6  <u>permitted the imposition of liability on such a basis it would not fall within the savings</u>

7  <u>clause of the CAN-SPAM Act, which permits state law to regulate the use of electronic</u>

8  <u>messages only to the extent those regulations are based on traditional principles of</u>

9  <u>fraud.</u>"  *Id.* (emphasis added.)

10       The Internet "landing pages" created and maintained by Defendants are entirely

11  lawful.  Defendants' use of contractors to send emails that entice consumers to visit

12  those pages also is entirely lawful.  The fact that the Emails contained links to

13  Defendants' landing pages in no way indicates that Defendants participated in the

14  drafting or sending of the Emails, much less that they knew of the Emails' contents or the

15  likelihood of those contents to mislead.  One could argue, as ASIS and Singleton have in

16  the past, that Defendants in some way benefitted from the alleged Emails.  As ASIS and

17  Singleton already are aware, however, deriving a supposed benefit from Emails does not

18  amount to knowledge sufficient to satisfy section 17529.5(a)(3).  *See ASIS v. Optin*

19  *Global*, 2008 WL 1902217 at *19.

20       Plaintiffs readily concede that they must plead what they refer to as the

21  "averments of fraud," to include "misleading or deceitful statements, knowledge and

22  intent to deceive."  (FAC ¶21.)  The FAC may allege a connection between Defendants

23  and the Emails, but it does not come close to alleging Defendants' knowledge, much less

24  Defendants' intent.  Accordingly, it must be dismissed.

25       **2.       Plaintiffs fail to sufficiently allege a conspiracy.**

26       In order to state a cause of action based on a conspiracy theory, a plaintiff must

27  allege the formation and operation of a conspiracy, that the defendants committed

28  wrongful acts pursuant to the conspiracy, and that damages resulted from such acts.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    *See State ex rel. Metz v. CCC Info. Services, Inc.*, 149 Cal. App. 4th 402, 419 (2007).

2    Bare legal conclusions, inferences, generalities, presumptions, and conclusions are

3    insufficient to state a conspiracy under California law. *See id.*; *Choate v. County of*

4    *Orange*, 86 Cal. App. 4th 312, 333 (2000). In addition to the California requirements for

5    pleading a civil conspiracy, the Ninth Circuit has held that if the object of a conspiracy is

6    fraudulent, a section 17529.5 plaintiff must comply with the stringent requirements of

7    Rule 9(b), and plead the facts of the alleged conspiracy with particularity. *See Wasco*

8    *Products, Inc. v. Southwall Technologies, Inc.*, 435 F.3d 989 (9th Cir. 2006); *Vess v.*

9    *Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Thus, to survive a motion to

10   dismiss, a plaintiff alleging a fraudulent conspiracy must state with sufficient factual

11   particularity that the defendant reached some explicit or tacit agreement with a co-

12   conspirator to commit fraudulent conduct, and that the defendant directed itself toward

13   this wrongful goal. *See Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D.

14   Cal. 1990)

15       For example, in *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1108, the Ninth

16   Circuit found that a patient's allegations that a conspiracy to defraud existed between a

17   psychiatric association and prescription drug companies failed to provide the particulars

18   of when, where, or how the alleged conspiracy occurred, and, consequently, failed to

19   satisfy the requirements for pleading a civil conspiracy under California law or Rule 9(b).

20   Similarly, in *United Centrifugal Pumps v. Schotz*, No. 89-2291, 1991 WL 274232, *3-4

21   (N.D. Cal. June 12, 1991) the court found that conclusory allegations, pled on information

22   and belief, that the defendants entered into an agreement to defraud the plaintiff into

23   investing in sham instruments, did not state a conspiracy claim. And in *Wasco Products,*

24   *Inc. v. Southwall Technologies, Inc.*, 435 F.3d at 992, the Ninth Circuit found that the

25   plaintiff had failed to allege a civil conspiracy where the plaintiff had not alleged that the

26   defendants ever formed an agreement to misrepresent the properties of the sealant for

27   glass products.

28       Plaintiffs' allegations fail for the same reasons as the allegations in those cases.

1  Plaintiffs allege, at most, vague conclusions regarding Defendants' involvement in a

2  conspiracy to draft and send the Emails.  (FAC ¶10.)  Plaintiffs do not allege that

3  Defendants themselves drafted or sent the Emails.  Nor do Plaintiffs identify who drafted

4  or sent the Emails.  Nor do Plaintiffs provide any details of when, where, or how the

5  alleged agreement to draft and send the Emails occurred.  In fact, Plaintiffs don't even

6  allege that an unlawful agreement to send the Emails ever existed, or that if such an

7  agreement did exist, Defendants were parties to it or even knew about it.  Simply put,

8  Plaintiffs' allegations fail to state a conspiracy under California law or Rule 9(b).  Thus,

9  Plaintiffs' claims against Defendants, who Plaintiffs' do not and cannot allege to have

10  played any part in drafting or sending the Emails, must be dismissed.

11  **C.    Plaintiffs' claims are barred by California's False Advertising Law, as amended by Proposition 64.**

12  

13      In November of 2004, 59% of the California electorate voted to pass Proposition

14  64.  Under Proposition 64, only private persons "who [have] suffered injury in fact and

15  have lost money or property may sue to enforce the unfair competition and false

16  advertising laws. Uninjured persons may not sue, and private persons may no longer sue

17  on behalf of the general public." *Branick v. Downey Sav. and Loan Ass'n*, 39 Cal. 4th

18  235, 240 (2006) (internal quotations and citations removed).   "The findings and

19  declarations of the purpose of Proposition 64 state quite plainly: 'It is the intent of

20  California voters in enacting this act to eliminate frivolous unfair competition lawsuits

21  while protecting the right of individuals to retain an attorney and file an action for relief

22  pursuant to this chapter.'"  *In re Tobacco II Cases*, 46 Cal. 4th 298, 317 (2009) (quoting

23  Prop. 64, §1, subd. (d), as reprinted in Historical and Statutory Notes to Bus. & Prof. C.

24  §17203).

25      Proposition 64 applies to section 17529.5 claims because the proposition applies

26  to all claims brought under California's unfair competition laws and false advertising laws.

27  *See Branick*, 39 Cal. 4th at 241.  Section 17529.5 falls under the False Advertising

28  Chapter and Article of California's Business and Professions Code, and so is a part of

California's false advertising laws.  In the Prior Order, the Court indicated that Proposition 64 would not apply to this action because it applies only to standing for plaintiffs who seek injunctive relief, and Plaintiffs here seek statutory damages.  (Prior Order at 11 n.4.)  While the implementation of Proposition 64 in section 17535 refers only to "actions for injunction," the clear intent of the electorate, as articulated by the text of Proposition 64 itself, was to apply that reform to all claims under California's false advertising law.  Nothing in Proposition 64 or any contemporaneous materials suggests the limitation postulated by the Court.

Specifically, nothing in the election materials (i.e. the Official Title and Summary or the Analysis By the Legislative Analyst) or the Findings and Declarations of Purpose of Proposition 64 (RJN ¶¶1-2 & Exs. A-B), mentioned any limitation on Proposition 64 to injunctive actions.  To the contrary, these materials indicated that Proposition 64 would apply to all claims under California's unfair competition and false advertising laws.  Thus, the Official Title and Summary and Analysis By The Legislative Analyst for Proposition 64 states:

> Limits individual's right to sue by allowing private enforcement of unfair business competition laws only if that individual was actually injured by, and suffered financial/property loss because of, an unfair business practice.

> Currently, a person initiating a lawsuit under the unfair competition law is not required to show that he/she suffered injury or lost money or property.

> This measure prohibits any person, other than the Attorney General and local prosecutors, from brining a lawsuit for unfair competition unless the person has suffered injury and lost money or property. (RJN ¶2 & Ex. B.)

This position is echoed in the actual text of Proposition 64, which states:

> The people of the state California find and declare that:

> (a) This state's unfair competition laws set forth in Sections 17200 and 17500 of the Business and Professions Code are intended to protect California businesses and consumers from unlawful, unfair, and fraudulent business practices.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

(b) These unfair competition laws are being misused by some private attorneys who:

(1) File frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit. (2) File lawsuits where no client has been injured in fact. (3) File lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant. (4) File lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.

.      .      .

(d) It is the intent of California voters in enacting this act to eliminate frivolous unfair competition lawsuits while protecting the right of individuals to retain an attorney and file an action for relief pursuant to Chapter 5 (commencing with Section 17200) of Division 7 of the Business and Professions Code.

(e) It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution.  (RJN ¶2 & Ex. B.)

Nothing in the Findings and Declarations of Purpose for Proposition 64 indicate that it was intended to be limited to actions for injunctive relief.  To hold otherwise would contradict the express intent of the California electorate.

Given that Proposition 64 applies to claims brought under section 17529.5, Plaintiffs must allege that they have suffered an injury in fact and have lost money or property as a result of the alleged violation of section 17529.5.  Plaintiffs have failed to do so.  The most that Plaintiffs allege is that they incurred costs generally from the receipt of mass email, regardless of whether that email was lawful or unlawful, and regardless of whether that email was solicited or unsolicited.  These costs are far too tenuously connected to the alleged violation of section 17529.5 to satisfy Proposition 64.  Thus, Plaintiffs' claims must be dismissed.

//

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**D.    *Virtumundo* and its progeny hold that CAN-SPAM's preemption clause requires a state law plaintiff to plead fraudulent conduct.**

In its Prior Order, the Court found that CAN-SPAM's preemption clause does not require a plaintiff asserting a state law claim to plead all five elements of fraud (specifically, reliance and damages).  (Prior Order at 6:18-19.)  Defendants respectfully disagree with the Prior Order's construction of CAN-SPAM and ask the Court to reconsider its position in light of recent authority, in particular *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009).

The Prior Order made no reference to *Virtumundo*, the controlling law in this Circuit regarding CAN-SPAM preemption.  In *Virtumundo*, the Ninth Circuit held that CAN-SPAM only permits states to enact laws regulating commercial email where such laws regulate "traditionally tortious or wrongful conduct," namely, "acts of fraud."  *Id.* at 1062.  The Ninth Circuit went on to state that CAN-SPAM's "repeated reference to 'fraud' and 'deception' is telling and confirms that Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions."  *Id.*  The court reasoned, "it would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation."  *Id.* at 1063.  Thus the Ninth Circuit construed "CAN-SPAM Act's express preemption clause in a manner that preserves Congress's intended purpose-i.e., to regulate commercial e-mail on a nationwide basis, and to save from preemption only statutes, regulations, or rules that target *fraud or deception*."  *Id.* at 1061-62 (internal citations removed).

Every state and federal court in the Ninth Circuit to examine CAN-SPAM preemption since *Virtumundo* has concluded that a state law plaintiff must plead the elements of fraud to avoid preemption.  *See Gordon v. First Premier Bank, Inc.* No. 08-5035, 2009 WL 5195897, *1 (E.D. Wash. Dec. 21, 2009) (finding that the Ninth Circuit held in *Virtumundo* that state law claims must allege fraudulent conduct to avoid preemption); *Gordon v. Commonwealth Marketing Group, Inc.*, No. 08-5074, 2009 WL 3784606, *1 (E.D. Wash. Nov. 9, 2009) (same); *Silverstein v. Liquid Minds LLC*, No.

NTC OF MTN & MTN ISO DEFENDANTS'
MOTION TO DISMISS; MPA

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  BC340643 (Los Angeles Super. Ct. Aug. 18, 2009) (finding that the Ninth Circuit held in

2  *Virtumundo* that CAN-SPAM "preempts state law claims insofar as they are not traditional

3  tort theories such as claims arising from fraud or deception");[5] *see also Ferguson v.*

4  *Active Response Group*, No. 08-35709, 2009 WL 3229301, *1 (9th Cir. Oct. 8, 2009)

5  (affirming dismissal of state law claim as preempted by CAN-SPAM where district court

6  had found that Congress was operating in the vein of tort when it drafted the preemption

7  clause's exceptions, and intended falsity to refer to other torts involving

8  misrepresentations).

9       Because the Court did not rely on *Virtumundo* in the Prior Order, and because the

10  Court did not have access to above-described more recent authority, the Court should

11  revisit its interpretation of CAN-SPAM's preemption clause.   On that basis, it should

12  conclude that Plaintiffs' claims fail on account of their failure to allege that Plaintiffs (or

13  anyone else) relied on or was in any way damaged by the Emails.   Even if the Court

14  adopts its earlier interpretation of CAN-SPAM preemption, however, Plaintiffs claims are

15  still preempted because, as more fully described above, Plaintiffs have failed to

16  sufficiently plead falsity, much less Defendants' knowledge of the Emails subject lines (or

17  even the Emails themselves) or Defendants' intent to mislead or deceive.   On that basis,

18  the Court should dismiss the Complaint

19                              **III.    CONCLUSION**

20       For all of the reasons set forth above, the Court should dismiss the first amended

21  complaint.

22

23  DATED: January 19, 2010              **KRONENBERGER BURGOYNE, LLP**

24                                        By:  ___s/ Henry M. Burgoyne, III_____

25                                              Henry M. Burgoyne, III

26                                        Attorneys for Defendants SubscriberBase,
                                         Inc, SubscriberBase Holdings, Inc. and
27                                        Consumer Research Corporation

28  [5] Defendants' Request for Judicial Notice in Support of Motion to Dismiss First Amended
    Complaint ("RJN") at ¶1 & Ex. A.