**United States District Court**
For the Northern District of California

1

2

3

4              IN THE UNITED STATES DISTRICT COURT

5            FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   ASIS INTERNET SERVICES, a        ) Case No. 09-3503 SC
    California corporation, and JOEL )
8   HOUSEHOLTER, dba KNEELAND        ) ORDER DENYING DEFENDANTS'
    ENGINEERING, dba FOGGY.NET,      ) MOTION TO DISMISS
9                                    )
10          Plaintiffs,              )
                                     )
11      v.                           )
                                     )
12  SUBSCRIBERBASE INC., et al.,     )
                                     )
13          Defendants.              )
                                     )
14  _____)

15  **I.    INTRODUCTION**

16      Plaintiffs Asis Internet Services ("Asis") and Joel

17  Householter, dba Foggy.Net ("Foggy") (collectively, "Plaintiffs"),

18  brought this suit against Defendants Subscriberbase, Inc., et al.

19  ("Defendants"), for alleged violations of section 17529.5 of the

20  California Business & Professions Code.[1]  Docket No. 1 ("Compl.").

21  This Court granted Defendants' previous motion to dismiss for

22  failure to state a claim, and described the information that

23  Plaintiffs needed to include in order to plead their deceit-based

24  claims with particularity.  Docket No. 15 ("Dec. 4, 2009 Order").

25  Plaintiffs filed a First Amended Complaint that comported with the

26  Court's guidance.  Docket No. 17 ("FAC").  Now Defendants have

27  _____

28  [1] Throughout this Order, all citations to "sections" are to the
    California Business & Professions Code unless otherwise stated.

filed a second Motion to Dismiss ("Motion"), on substantially
identical grounds to their previous motion.  Docket No. 20.  The
Motion is fully briefed.  Docket Nos. 22 ("Opp'n"), 23 ("Reply").
For the reasons stated below, the Court DENIES the Motion.

**II.  DISCUSSION**

Plaintiffs seek to hold Defendants liable for violations of
section 17529.5 of the California Business & Professions Code
("section 17529.5"), which is part of California's False
Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.
The parties are familiar with the factual background of this
dispute, as well as the legal standards applicable to Defendants'
Motion to Dismiss, which this Court set out in its previous Order.
Dec. 4, 2009 Order at 2-5.  Although Plaintiffs have provided more
detail in their FAC, the allegations remain substantially the same
as in their original Complaint.

**A.  Whether Plaintiffs Have Pled that Email Subject Lines Were False, or Known to Be Likely to Mislead a Recipient Acting Reasonably Under the Circumstances**

The first question before the Court is whether Plaintiffs have
sufficiently alleged that Defendants sent e-mail advertisements
with "subject line[s] that a person knows would be likely to
mislead a recipient, acting reasonably under the circumstances,
about a material fact regarding the contents or subject matter of
the message."  Cal. Bus. & Prof. Code § 17529.5(a)(3).  Plaintiff
is alleging that the subject lines purport to offer the recipient
"free" gifts, or some clever synonym for the same, while in fact
the emails and associated web pages offer gifts only to those who
perform additional affirmative acts, such as signing up for credit

**United States District Court**
For the Northern District of California

2

1  cards or submitting loan applications.  Dec. 4, 2009 Order at 10;

2  FAC ¶ 20.

3        1.  <u>Whether a Recipient Would Likely Be Deceived</u>

4        In the submissions related to the first motion to dismiss, the

5  parties only briefly touched upon the question of whether the

6  subject lines in Defendants' emails would be likely to deceive a

7  reasonable recipient.  Defendants have made this question a focus

8  of their current Motion.  Mot. at 6-10.  Defendants claim that this

9  is a question of law to be undertaken by the Court at the dismissal

10 stage.  <u>Id.</u> at 7.  For support, Defendants mistakenly cite to <u>Lavie</u>

11 <u>v. Procter & Gamble Co.</u>, which stated that "[t]he standard to be

12 used in evaluating whether an advertisement is deceptive under the

13 UCL is purely a question of law and certainly has important public

14 policy implications for California consumers and businesses."  105

15 Cal. App. 4th 496, 503 (Ct. App. 2003).

16       The Court disagrees with Defendants' reading of <u>Lavie</u>.  <u>Lavie</u>

17 did not suggest that the question of whether an ad was deceptive

18 was a question of law; it held that the question <u>of which standard</u>

19 <u>to use</u> in making that determination was a question of law.  The

20 appellate panel in <u>Lavie</u> was discussing whether it could consider a

21 new issue that was raised for the first time on appeal, in an

22 amicus brief submitted by the California Attorney General.  <u>Id.</u> at

23 503.  It concluded that it could do so as long as "the issue posed

24 is purely a question of law based on undisputed facts . . . ."  <u>Id.</u>

25 (quoting <u>Fisher v. City of Berkeley</u>, 37 Cal. 3d 644, 654-55 n.3

26 (1984)).  The particular issue that the Attorney General raised had

27 to do with whether the trial court should have used a "least

28 sophisticated consumer" standard rather than a "reasonable

**United States District Court**
For the Northern District of California

consumer" standard to determine whether the advertisements were

likely to mislead or deceive the public.  Id. at 502.  In other

words, the issue was not whether a reasonable person would be

deceived by the advertisements in question, but rather which

standard of "reasonable" the court should use to resolve that

question.  That was clearly a question of law.

In contrast, the question here is whether a reasonable

consumer[2] is likely to be deceived by Defendants' subject headings.

This is clearly a question of fact, which is best left for a jury,

unless "[n]o reasonable trier of fact could conclude otherwise."

Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 682

(Ct. App. 2006).  Various California authorities maintain that

whether a reasonable consumer would be deceived by a particular ad

or practice is a question of fact.  For example, in Consumer

Advocates v. Echostar Satellite Corp., a California appellate court

found "a triable issue of fact on the relevant point, whether . . .

representations are likely to deceive a reasonable consumer."  113

Cal. App. 4th 1351, 1361-62 (Ct. App. 2003); see also Mazza v. Am.

Honda Motor Co., 254 F.R.D. 610, 627 (C.D. Cal. 2008) (question of

---

[2] Defendants contend that this Court should not use a general
reasonable consumer standard to weigh the likelihood of deception,
but rather a special (presumably more rigorous) standard to apply
to "internet users."  Mot. at 7.  Defendants again cite Lavie for
this proposition.  However, Lavie didn't say that a more rigorous
standard should apply where advertisements might target a
sophisticated group; rather, it held that "unless the advertisement
targets a particular disadvantaged or vulnerable group, it is
judged by the effect it would have on a reasonable consumer."  105
Cal. App. 4th at 506-07.  The FAC does not suggest that Defendants
were targeting any particular group.  "Internet users" and email
are now too ubiquitous to make this a useful class, as
distinguishable from general consumers.  Of course, the ultimate
fact finder will eventually need to consider whether a recipient
would be likely to be misled if "acting reasonably under the
circumstances . . . ."  Cal. Bus. & Prof. Code § 17529.5(a)(3).

**United States District Court**
For the Northern District of California

whether omission would be likely to deceive reasonable consumer was "common issue of fact" among class).  Similarly, the question of whether particular practices are likely to deceive members of the public is generally treated as a question of fact when it arises under California's related Unfair Competition Law ("UCL"), Cal. Prof. & Bus. Code §§ 17200 et seq.  See, e.g., People v. McKale, 25 Cal. 3d 626, 635 (1980) (allegations that customers "are likely to be deceived" by particular practice "are sufficient to withstand demurrer").  California Courts have therefore found that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer." Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134 (Ct. App. 2007) (citation and internal quotation marks omitted).

Defendants therefore have the relatively heavy burden of persuading this Court that no reasonable fact finder could conclude that the email subject lines were "likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."  Cal. Bus. & Prof. Code § 17529.5(a)(3); Colgan, 135 Cal. App. 4th at 682.  Defendants rely on Freeman v. The Time, Inc., Magazine Co., but this case is distinguishable.  68 F.3d 285 (9th Cir. 1995).  In Freeman, the Ninth Circuit affirmed the dismissal of an FAL claim that involved an offer to enter a sweepstakes, where the offer included language that indicated that the recipient had already won a prize.  Id. at 289.  Because the terms of the offer were adjacent to the offer itself, the Ninth Circuit held that dismissal was

appropriate because no reasonable recipient could have been deceived into thinking that he or she had won the sweepstakes.  Id. As the panel explained:

> The promotions expressly and repeatedly state the conditions which must be met in order to win. None of the qualifying language is hidden or unreadably small.  The qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it.  Any persons who thought that they had won the sweepstakes would be put on notice that this was not guaranteed simply by doing sufficient reading to comply with the instructions for entering the sweepstakes.

Id. at 289-90.

Defendants also rely on Haskell v. Time, Inc., which is also inapposite.  857 F. Supp. 1392 (E.D. Cal. 1994).  Haskell addressed similar mass mailings that involved sweepstakes and used puffed language to entice responses.  Id. at 1399-403.  That decision noted that "[a]ny reasonable recipient, even if unsophisticated, understands that these are mass mailings as part of an advertising campaign.  The rules are set forth clearly, in a box headed 'How the Sweepstakes Works,' and reveal the projected odds of winning any prize."  Id. at 1399-400.  The Court noted the plaintiff's attempt to distort the content of the mailers to support his claim:

> The complaint alleges that the solicitation states that the recipient "has just won Ten Million Dollars!"  In fact, the exemplar states, "If the Address Label below contains the winning number and you return it . . . . you'll see on NBC TV that you've just won ten million dollars!"  No reasonable recipient could view this mass mailing as an announcement that the recipient in fact had been selected as the winner.

Id. at 1400-01.[3]

_____

[3] The mailers in Freeman involved language that was similar to that in Haskell, with similar qualifiers immediately adjacent to any

United States District Court
For the Northern District of California

Turning to the email subject lines cited by Plaintiffs in their FAC, the Court finds that these do not present the clear case presented by Freeman and Haskell.  Unlike the express conditions juxtaposed with every assurance in those cases (e.g., "If the Address Label below contains the winning number . . ."), many of the subject headings in Defendants' emails include no conditional language.  See, e.g., FAC Ex. J ("List of Emails Received by Asis") at 5 (e.g., "Get the latest BlackBerry Storm phones on our tab!").  Many of these offers are couched as offers to employ the recipient as some type of consumer reviewer.  For example:

- "Take a 15 second online survey to get $500 bucks from our sponsor to shop at Dollar General & more for Free"

- "Review & Keep Designer Handbags worth $1500 Dollars-guys invited too"

- "Test & Keep a BlackBerry Storm (Paid by Sponsors)"

- "How would you like to be chosen to test and keep a Hi Definition TV?"

- "Mystery Shoppers-Rate Local Retail Stores - Shop and Keep $1000 Worth-Limited Applicants Needed"

Id. at 2, 13, 16, 19.

The Court finds that the above-quoted language is less cautious than the representations made in the sweepstakes mailers at issue in Freeman and Haskell.  In particular, this Court notes that the Court in Haskell explicitly rebuked the plaintiff for attempting to recast the clearly qualified language in the mailers

---

apparent assurance of winning.  68 F.3d at 287 ("If you return the grand prize winning number, we'll officially announce that MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS SCHEDULED TO BEGIN.").

United States District Court
For the Northern District of California

("If the Address Label below contains the winning number and you return it . . . . you'll see on NBC TV that you've just won ten million dollars!") as unqualified assurances that the recipient had won a prize ("the recipient 'has just won Ten Million Dollars!'"). 857 F. Supp. at 1400-01.  Here, many of Defendants' subject lines do include unqualified assurances, and Plaintiffs have no need to recast the subject lines.  Similarly, the panel in <u>Freeman</u> made specific mention of the fact that the language in the mailers "expressly and repeatedly state[ing] the conditions which must be met in order to win" was situated immediately adjacent to any offers.  68 F.3d 285, 289.

This is not to say that Defendants' emails were completely devoid of notice that terms existed, or that the "gifts" may not be unreservedly free.  There were two ways that the emails included qualifications.  First, some of the emails included some sort of qualifying language in the subject heading itself.  Second, all of the emails included fine print[4] at the bottom of the communications, which stated that terms and conditions apply, and which also included links to landing pages that describe the terms and conditions in more detail.  <u>See</u> FAC ¶ 20.

Many of the subject lines in Defendants' emails contain a wide variety of potentially "conditional" or "qualifying" phrases, which may, to varying degrees, mitigate any likelihood of misleading a reasonable consumer.  The language in the subject lines is so varied that it could be arranged into a spectrum of sorts.  Some of the statements cited above contain no qualifying language

---

[4] The font on the notice of conditions is typically smaller than and spatially separate from the body of the emails.

bar

whatsoever, and appear to be unconditional promises of rewards or lucrative positions.  See, e.g., List of Emails Received by Asis at 13 ("Test & Keep a BlackBerry Storm (Paid by Sponsors)").  Moving down the spectrum, some headings use language that is arguably more ambiguous as to the existence of terms and conditions, such as "let us buy you . . . ."  Id. at 10 ("Let us buy you the new Blackberry Storm").  Others use language that suggests that the recipient may only have an opportunity to receive a gift.  Id. at 13 ("You could get the newest BlackBerry Storm phone - [we'll] pay").[5]  Some subject lines pose questions.  Id. at 16 ("Would you like to test and keep a designer bag?").  Still other subject lines append statements like "details apply" or "with participation."  Id. at 8, 27 ("Get the latest BlackBerry Storm phones on our tab (details apply)!").  At the dismissal stage, this Court will not attempt to draw an arbitrary line, and state that all subject lines with this kind of phrasing have no likelihood of deceit, while all subject lines with that kind of phrasing are likely to deceive.  The Court is satisfied that a reasonable fact finder could conclude that a large number of the subject lines could mislead a reasonable recipient, and it will leave to the fact finder the task of determining which qualifying language successfully mitigates any likelihood of deception.

The Court also concludes that the language of the statute prevents the Court from considering, at this stage, whether the likelihood of deception is mitigated by the fine print in the

---

[5] The excerpt actually displays "we‚Äôll" instead of "we'll." Plaintiffs contend that the character anomaly is indicative of Defendants' attempt to circumvent spam-blocking software.  Opp'n at 2 n.2.  This could also be caused by an encoding issue in Plaintiffs' email client or web-browsing software.

**United States District Court**
For the Northern District of California

bodies of the email (which contain vague notices that conditions exist), or by the actual recitation of those terms and conditions on the landing pages (available through a hyperlink in the email's body).   Although the panel in <u>Freeman</u> considered "the promotion as a whole" to determine if it was likely to mislead, it was addressing allegations that the promotion violated section 17500 of the FAL.   That section does not focus on any particular portion of the allegedly deceitful statement or communication.   In contrast, the statute at issue in this suit, section 17529.5(a)(3), focuses on the subject line.   It expressly prohibits subject lines that are likely to mislead "about a material fact regarding the contents or subject matter of the message."   Cal. Bus. & Prof. Code § 17529.5(a)(3).   Section 17529.5(a)(3) does not turn on whether a subject line is true or false, taken in the context of the email as a whole or in light of a hyperlinked page.   It asks a very different question: whether the subject line might in fact lead a reasonable person to expect something materially different than the message's actual content or subject matter.   In this context, it is inappropriate to suggest that a subject line is not deceptive because of corrective disclaimers in the fine print of the message itself, or terms written in a hyperlinked page.[6]

Of course, a misrepresentation must be material to violate section 17529.5(a)(3).   A finder of fact may therefore reasonably

---

[6] Plaintiff's citation to <u>Net2Phone, Inc. v. Superior Court</u>, 109 Cal. App. 4th 583, 588-89 (Ct. App. 2003) is inapposite.   That case found that a forum selection clause in a hyperlinked document might be enforceable.   The issue here, as framed by section 17529.5, is not whether the terms and conditions might be enforceable, but whether the "contents and subject matter" of the message and the landing page might be materially different from what a reasonable recipient may expect, based on the subject lines.

**United States District Court**
For the Northern District of California

1   consider the body of an email or a hyperlinked page in determining

2   whether misrepresentations in the subject lines were actually

3   material.  This is an inquiry best left for the finder of fact.

4        The Court finds that Plaintiffs have plausibly alleged that

5   the emails in question contained subject lines that were likely to

6   mislead a recipient acting reasonably under the circumstances.

7   While it is not clear that a finder of fact will ultimately

8   conclude that each and every email implicated by the FAC has a

9   likelihood of material deception, Plaintiffs have met their burden

10  at the dismissal stage.

11              2.   <u>Defendants' Critique of the Federal Trade Commission</u>
                     <u>Guidance</u>

12

13       A substantial amount of Defendants' supporting memorandum

14  addresses guidance issued by the Federal Trade Commission ("FTC"),

15  16 C.F.R. § 251, which sets out a standard for the use of the term

16  "free" in ads and product labeling.  <u>See</u> Mot. at 4-5.  Defendants

17  do not raise this guidance as an argument that vindicates their

18  subject lines; rather, they are responding to an argument that

19  Plaintiffs have raised in their Complaint and FAC, and which they

20  argued in their Opposition to the previous Motion to Dismiss.

21  Plaintiffs cite this guidance on several occasions, and suggest

22  that California courts look to this guidance to help determine when

23  the term "free" or similar terms are misused.  <u>See</u> Docket No. 7

24  ("Opp'n to First Motion to Dismiss") at 14; FAC. ¶ 18.

25       This issue was fully briefed in connection with the first

26  motion to dismiss.  This Court previously concluded that Plaintiffs

27  had sufficiently alleged that the subject headings were false, Dec.

28  4, 2009 Order at 10-11.  The Court deliberately did not rely upon

16 C.F.R. § 251 in reaching this conclusion.  By this Order, the Court reaffirms its earlier conclusion, and it now explicitly declines to rely upon 16 C.F.R. § 251.  Defendants' attempt to take issue with an argument made by Plaintiffs, but not adopted by this Court, does not disturb this Court's ruling.

**B.    Whether Plaintiffs Have Adequately Pled Defendants' Knowledge**

Section 17529.5(a)(3) forbids "any person or entity" from advertising in California through an email advertisement that has a subject line "that a person knows" is likely to be mislead.  Cal. Bus. & Prof. Code § 17529.5(a)(3).  Defendants claim that Plaintiffs have failed to plausibly plead that Defendants "knew" that the email subject lines were likely to deceive, because Defendants did not send the emails themselves.  Instead, they "contract with third parties to send lawful commercial email advertisements under circumstances that do not permit the examination of every such advertisement."  Mot. at 11.

To support their position, Plaintiffs cite to <u>Asis Internet Services v. Optin Global, Inc.</u>, No. 05-5124, 2008 U.S. Dist. LEXIS 34959, *58 (N.D. Cal. April 29, 2008).  The court in <u>Optin Global</u> rejected, on summary judgment, the plaintiff's section 17529.5 claims because the defendant "did not send the offending spam.  Nor did it knowingly 'procure' the spam . . . ."  <u>Id.</u>  At most, the defendant in that case had benefitted from the spam emails that other parties had sent, and the Court concluded that this was insufficient to establish that the defendant had "advertised" under section 17529.5.  <u>Id.</u>  This case does not help Defendants.  The decision was issued in response to cross motions for summary

**United States District Court**
For the Northern District of California

judgment, and not at the dismissal stage.  In <u>Optin Global</u> the
court was able to rely on the structure of the defendant's
relationship with the entities that had sent the emails, which may
or may not have been the same as the relationships that Defendants
had with the senders in this suit.  <u>See</u> <u>id.</u> at *5-7.  At this stage
of the litigation, such information is not part of the record that
is available to this Court.  This Court is only aware that
Defendants readily admit that they used "contractors to send emails
that entice consumers to visit" their web pages.  Mot. at 11-12.
This is sufficient to render Plaintiff's allegations, that
Defendants knew that the subject lines of the emails were likely to
deceive the recipients, plausible.

Defendants also fault Plaintiffs for failing to successfully
allege that Defendants acted as part of a conspiracy.  Mot. at 12-
14.  The Court fails to see how such allegations are a necessary
element in Plaintiffs' cause of action.

### C.   **Whether Plaintiffs Have Standing**

Defendants now argue that Plaintiffs fail to meet the standing
requirements of Proposition 64, which "amended the unfair
competition law to provide that a private plaintiff may bring a
representative action under [the UCL or the FAL] only if the
plaintiff has 'suffered injury in fact and has lost money or
property as a result of such unfair competition'. . . ."  <u>Arias v.</u>
<u>Super. Ct.</u>, 46 Cal. 4th 969, 977-78 (2009).  As California's
Supreme Court has described:

> Proposition 64 accomplishes its goals in
> relatively few words.  The measure amends section
> 17204 [as well as section 17535], which
> prescribes who may sue to enforce the UCL [and
> FAL], by deleting the language that had formerly

13

> authorized suits by any person "acting for the interests of itself, its members or the general public," and by replacing it with the phrase, "who has suffered injury in fact and has lost money or property as a result of [violation of this chapter]."

<u>Californians for Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 228 & n.2 (2006) (language in brackets added to conform with Cal. Bus. & Prof. Code § 17535, which was subject to "identical changes").  The particular sections of the UCL and FAL that Proposition 64 amended were the provisions that authorize litigants to pursue equitable relief, and which authorize courts to grant such relief.  <u>See</u> Cal. Bus. & Prof. Code §§ 17203, 17204, 17535. Plaintiffs who seek injunctive or other equitable relief under the UCL or FAL therefore necessarily invoke the provisions amended by Proposition 64, by relying on those sections.

The problem with Defendants' argument is that section 17529.5 includes independent, non-exclusive standing and remedy provisions, which explicitly authorize "electronic mail service provider[s]" ("EMSPs") to bring a suit for liquidated damages against an entity that violates section 17529.5.[7]  Cal. Bus. & Prof. Code § 17529.5(b).  This section was not amended by Proposition 64.  It contains no requirement that EMSPs suffer injury in fact, or lose money or property as a result of a violation.  By invoking this section, and by not seeking any injunctive relief under section 17535 of the FAL, or any other provision that was amended by

---

[7] Section 17529.5 also may be enforced by the Attorney General or "[a] recipient of an unsolicited commercial e-mail advertisement." Cal. Bus. & Prof. Code § 17529.5(b)(1)(A).  The liquidated damages provision authorizes recovery of $1000 per offending email, up to one-million dollars "per incident," which is reduced tenfold if the Court finds that the defendant took care to establish procedures that prevent violations.  <u>Id.</u> § 17529.5(b)(1)(B)(ii), (b)(2).

1   Proposition 64, Plaintiffs have avoided the standing requirements

2   imposed by the ballot initiative.

3       Defendants argue that this Court should nevertheless impose

4   the requirements of Proposition 64 upon Plaintiffs in this case,

5   and conclude that EMSPs must show that they have "suffered injury

6   in fact and [have] lost money or property," just like a FAL

7   plaintiff who seeks injunctive relief -- even though the special

8   standing provisions of section 17529.5(b) clearly lack this

9   requirement.[8]  Mot. at 14-16.  Defendants support this argument by

10  citing "the clear intent of the electorate" who passed Proposition

11  64.  Id. at 15.  The Court must therefore examine the intent and

12  purpose behind Proposition 64, to determine if it is incompatible

13  with the special standing provision of section 17529.5.  See Credit

14  Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119 (9th Cir.

15  2005) (when interpreting California law, courts may consider

16  whether "literal meaning of a statute comports with its purpose"

17  (citation omitted)).

18      This invitation, to effectively rewrite a provision in the

19  California Business and Professions Code, is not to be taken

20  lightly.  As a California Court of Appeal has explained:

21          When a later statute supersedes or substantially
            modifies an earlier law but without expressly
22          referring to it, the earlier law is repealed or
            partially repealed by implication.  The courts
23          assume that in enacting a statute the Legislature

24  ────────────────
    [8] This Court previously found that Plaintiffs had stated sufficient
25  harm to establish Article III standing.  Dec. 4, 2009 Order at 11;
    see also Asis Internet Servs. v. Consumerbargaingiveaways, LLC, 622
26  F. Supp. 2d 935, 939-40 (N.D. Cal. 2009) ("Plaintiffs, as internet
    service providers, certainly suffer Article III injury from false
27  or misleading advertising in spam email messages: spam annoys their
    customers, thus hurting business, and forces them to expend
28  resources to filter and combat the spam.").  Defendants have not
    challenged this conclusion.

1             was aware of existing, related laws and intended

2             to maintain a consistent body of statutes. Thus
there is a presumption against repeals by

3             implication; they will occur only where the two
acts are so inconsistent that there is no

4             possibility of concurrent operation, or where the
later provision gives undebatable evidence of an

5             intent to supersede the earlier; the courts are
bound to maintain the integrity of both statutes
if they may stand together.

6

7 People v. Bustamante, 57 Cal. App. 4th 693, 699 (Ct. App. 1997)

8 (quoting Sacramento Newspaper Guild v. Sacramento County Bd. of

9 Supervisors, 263 Cal. App. 2d 41, 54-55 (Ct. App. 1968)) (citations

10 omitted). These principles apply to initiative measures as well as

11 to legislative amendments. Id. at 699 n.5.

12      The language of Proposition 64 and the description of the

13 effects of the ballot measure, as provided in the Official Voter

14 Information Guide ("OVIG"), does create some tension with section

15 17529.5. See Defendants' Request for Judicial Notice ("Defendants'

16 RJN"), Docket No. 21, Ex. B ("OVIG") at 38, 109.[9]  In particular,

17 the OVIG explained that, without the measure, a plaintiff was "not

18 required to show that he/she suffered any injury or lost money or

19 property. . . .  This measure prohibits any person . . . from

20 bringing a lawsuit for unfair competition unless the person has

21 suffered injury or lost money or property." Id. at 38. The

22 enacted provision also states that the pre-Proposition 64 law was

23 "being misused by some private attorneys who . . . [f]ile lawsuits

24 where no client has been injured in fact." Id. at 109. It also

25 expressed concerns that abusive attorneys were filing suits for

26 clients who had never "viewed the defendant's advertising . . . ."

27 _____

28 [9] The Court may take judicial notice of the OVIG, a document of
public record. See United States v. 14.02 Acres, 547 F.3d 943, 955
(9th Cir. 2008).

United States District Court
For the Northern District of California

1 | Id.

2     Nevertheless, this Court is not persuaded that the special

3 standing provisions of section 17529.5 are incompatible with the

4 amendments of Proposition 64.  This is because the standing

5 provisions of this section were unique prior to the passage of

6 Proposition 64.  Under the UCL and FAL, both before and after the

7 passage of Proposition 64, plaintiffs are typically restricted to

8 seeking injunctive or other equitable relief.  See In re Tobacco II

9 Cases, 46 Cal. 4th 298, 312 (2009) ("A UCL action is equitable in

10 nature; damages cannot be recovered." (quotation marks and citation

11 omitted)).  The provisions that authorized this kind of relief

12 "expressly conferred standing to sue upon 'any person acting for

13 the interests of . . . the general public' without requiring a

14 showing of actual injury."  Branick v. Downey Savings & Loan Assn.,

15 39 Cal. 4th 235, 241-42 (2006) (quoting pre-Proposition 64 standing

16 provision in section 17204).  This was an extremely broad class of

17 entities (i.e., the general public), and Proposition 64 was clearly

18 aimed at curbing the nearly limitless scope of standing under the

19 FAL, as well as the abusive litigation that it allowed.  In

20 contrast, section 17529.5 authorized liquidated damages only for

21 the Attorney General, EMSPs, and the actual recipients of the

22 unsolicited and prohibited emails -- it was never open to the

23 general public.  Even before Proposition 64, the class of entities

24 that could bring suit as potential plaintiffs under section

25 17529.5(b)(1)(B)(2) was significantly more limited than the class

26 of entities that could seek injunctive relief for any violation of

27

28

17

1    the FAL.[10]  Moreover, the target of the statute is much narrower

2    than that of the UCL and FAL -- it is crafted to discretely target

3    email advertisers, rather than businesses or advertisers generally.

4    It was therefore never subject to the same scope of abuse as the

5    general provisions of the UCL and FAL.

6        This Court will not take it upon itself to rewrite the plain

7    language of section 17529.5(b)(1)(A) to include a requirement for

8    "lost money or property" as a prerequisite for standing.  In the

9    absence of clear evidence that Proposition 64 was intended to

10   modify this provision, the Court finds that it need not take such

11   drastic action.  Section 17529.5 targets a discrete wrong, and

12   provides standing requirements that are distinct from those of

13   general FAL claims.  These requirements were not clearly addressed

14   or disturbed by Proposition 64 or the ballot initiative material

15   that this Court has reviewed.

16   **D.   Whether Plaintiff's Claims are Preempted by the CAN-SPAM**

17        **Act**

18       The CAN-SPAM Act[11] was intended to create a national standard

19   for regulating mass-commercial emails, and to that end, it

20   "supersedes any statute . . . except to the extent that any such

21   statute . . . prohibits falsity or deception in any portion of a

22   commercial electronic mail message . . . ."  15 U.S.C.

23   § 7707(b)(1).  Defendants argue that this provision only saves

24   state claims that include each and every element of common law

25   ─────────────────
     [10] Prior to Proposition 64, other entities could conceivably have

26   brought suit for violations of section 17529.5(a), as long as they
     sought only injunctive relief under section 17535, but not if they

27   sought liquidated damages under section 17529.5(b).

28   [11] "CAN-SPAM" stands for "Controlling the Assault of Non-Solicited
     Pornography and Marketing."

fraud, including reliance and damages.  Mot. at 11-13.

In California, the elements of a fraud claim include (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage.  <u>Lazar v. Super. Ct.</u>, 12 Cal. 4th 631, 638 (1996).  In this suit, Plaintiffs have not pled the last two elements, reliance and damages.  These elements are not required by the FAL, under which "one need not plead and prove the elements of a tort.  Instead, one need only show that members of the public are likely to be deceived." <u>Freeman</u>, 68 F.3d at 289.  Section 17529.5(a)(3) allows suits against advertisers who knowingly send emails with subject lines that are "likely to mislead a recipient."  Cal. Bus. & Prof. Code § 17529.5(a)(3).  It allows selected entities to bring suits for statements that are merely "potentially" misleading -- i.e., statements upon which nobody has relied, and which have caused no "damages" by or through the falsehoods themselves -- so long as the plaintiff can prove a "likelihood" of deception.  The question is whether this sufficiently targets "falsity or deception" to avoid preemption under 15 U.S.C. § 7707(b)(1).

          1.  <u>Whether Virtumundo Requires State Statutes to Include the Elements of Reliance and Damages</u>

Defendants rely upon <u>Gordon v. Virtumundo</u>, 575 F.3d 1040 (9th Cir. 2009), which they claim controls the preemption question at hand.  Mot. at 11-12.  <u>Virtumundo</u> considered a cause of action and a Washington statute that are both distinguishable from the claim that Plaintiffs now advance under section 17529.5.  <u>Virtumundo</u> affirmed a summary judgment against a plaintiff who sought to hold the defendants liable for sending messages that did not clearly

**United States District Court**
For the Northern District of California

display the identity of the sender.  The court concluded that this amounted to allegations that the defendants sent messages that contained, "at best, incomplete or less than comprehensive information regarding the sender."  575 F.3d at 1064.  Assuming that such activity violated the Washington statute, this did not amount to "falsity or deception" as used in the savings provision because "[t]here is of course nothing inherently deceptive in Virtumundo's use of fanciful domain names." Id. at 1063.  The plaintiff's "alleged header deficiencies relate to, at most, non-deceptive statements or omissions . . . ." Id. at 1064.  The panel concluded that "[s]uch technical allegations . . . find no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN-SPAM Act's express preemption clause." Id.  Put otherwise, the panel held that any statute requiring that an advertiser's "name expressly appear in the 'from lines'" of an email is preempted under the CAN-SPAM Act because it is not based on "traditional tort theories." Id.

Prior to Virtumundo, discussion of this question centered around a Fourth Circuit decision, Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F.3d 348 (4th Cir. 2006), which was, at the time, "the only federal circuit court decision addressing preemption of state law claims by the CAN-SPAM Act." Virtumundo, 575 F.3d at 1061.  Much like Virtumundo, the Fourth Circuit had concluded that "falsity and deception" referred to "traditionally tortious or wrongful conduct" rather than "errors that do not sound in tort," and found a state statute, which reached merely erroneous conduct by an email advertiser, to be preempted. Omega, 469 F.3d at 354.  The reasoning of the Fourth Circuit informed much of the

United States District Court
For the Northern District of California

subsequent discussion that took place among the district courts of California.  Nevertheless, as this Court previously discussed, a split existed in this district as to whether plaintiffs could only plead "falsity or deception" by pleading all of the elements of common law fraud, or whether the CAN-SPAM Act spared section 17529.5 plaintiffs from pleading reliance and damages under state statutes.  See Dec. 4, 2009 at 4-5; compare Asis Internet Servs. v. Vistaprint USA, Inc., 617 F. Supp. 2d 989 (N.D. Cal. 2009) (section 17529.5 is not preempted, even though it does not require showing of reliance or damages) and Asis Internet Servs. v. Consumerbargaingiveaways, LLC, 622 F. Supp. 2d 935, 940-44 (N.D. Cal. 2009) (same) with Hoang v. Reunion.Com, Inc., No. 08-3518, 2008 U.S. Dist. LEXIS 85187, *4-6 (N.D. Cal. Oct. 6, 2008) (finding that CAN-SPAM only allows state causes of action based on common law fraud and dismissing section 17529.5 complaint that does not allege reliance and damages).

Virtumundo did not clearly resolve this split.  It "reach[ed] the same conclusion" as Omega, and held that the CAN-SPAM Act forbids state statutes that reach non-deceptive practices. Virtumundo, 575 F.3d at 1061-62.  Since Virtumundo, no federal authority citing that case specifically addresses the question that is now before the Court.[12]  As submissions by both parties indicate, state trial courts have continued to disagree on this

[12] Gordon v. Commonwealth Mktg. Group, Inc., found a plaintiff's claims under Washington state law preempted because he had "not adequately pleaded nor developed the record to allege fraud," but the court did not discuss whether the plaintiff's allegations sounded in "deception" or "mere error."  No.08-5074, 2009 U.S. Dist. LEXIS 105217, *2 (E.D. Wash. Dec. 29, 2009).  Notably, the plaintiff in this suit was also the plaintiff in Virtumundo.

**United States District Court**
For the Northern District of California

topic since the decision in <u>Virtumundo</u> was issued.  <u>See</u>, <u>e.g.</u>,
<u>Balsam v. Trancos, Inc.</u>, Civ. No. 471797 (Cal. Super. Ct., County
of San Mateo, Jan. 15, 2010) (tentative statement of decision)
(finding section 17529 claim not preempted); <u>Silverstein v. Liquid</u>
<u>Minds LLC</u>, B.C. 375173 (Cal. Super. Ct., County of Los Angeles,
August 18, 2009) (minute order) (finding finding section 17529.5
preempted because not based on traditional fraud theory).[13]
<u>Virtumundo</u> did not reject the plaintiff's claims because they did
not include the elements of reliance and damages, or because his
theory was not based on common law fraud per se.  It rejected the
plaintiff's claims because it found that Washington's prohibition
reached "non-deceptive statements," and was therefore not
sufficiently grounded in "traditional tort theories such as claims
arising from fraud or deception."  <u>See</u> <u>Virtumundo</u>, 575 F.3d at
1063-64.  Therefore, while it is clear that "the word 'deception'
certainly denotes something more than immaterial inaccuracies or
inadvertent mistakes," <u>id.</u> at 1062, it is not clear that the word
restricts states to creating causes of action that require a
showing of reliance and damages.

Unlike the plaintiff in <u>Virtumundo</u>, Plaintiffs' section
17529.5 claim is not based on merely "incomplete" information.
Instead, Plaintiffs can plausibly claim that there is something
"inherently deceptive" in Defendants' alleged practices.  <u>C.f.</u>, <u>id.</u>
at 1063 ("There is of course nothing inherently deceptive in
Virtumundo's use of fanciful domain names.").  Plaintiffs' theory

---

[13] These Orders are attached as Exhibit C to Plaintiffs' Request
for Judicial Notice, Docket No. 22-4 (<u>Balsam</u>), and Exhibit A to
Defendants' RJN (<u>Silverstein</u>).

is grounded in a much more substantial variety of intentional deception: Plaintiffs allege that Defendants represented something as "free" when it was in fact not.

Section 17529.5(a)(3) is also quite distinct from the Washington statute in <u>Virtumundo</u>.  This provision does not prohibit any conduct that is not prohibited by the CAN-SPAM Act.  <u>Compare</u> 15 U.S.C. § 7704(a)(2) <u>with</u> Cal. Bus. & Prof. Code § 17529.5(a)(3).[14] Neither the CAN-SPAM Act nor 17529.5 require that plaintiffs plead each and every element of fraud.  15 U.S.C. § 7704(a)(2); <u>Asis Internet Servs. v. Optin Global, Inc.</u>, No. 05-5124, 2006 U.S. Dist. LEXIS 46309, *13 (N.D. Cal. June 30, 2006) ("[T]he required elements of a claim by an internet access provider under the CAN-SPAM Act . . . do not include all of the elements of common law fraud.").  Both statutes prohibit what might be termed "attempted" or "potential" deception, i.e., subject lines that are only "likely to mislead," without regard to whether or not they have actually ever misled anyone.  The question still remains whether this prohibition, when found in a state statute, is sufficiently based in "traditional tort theories" to avoid preemption, or whether the statute must be read to include the requirement that plaintiffs plead reliance and damages to meet this burden.

///

///

---

[14] CAN-SPAM applies to emails where "a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."  15 U.S.C. § 7704(a)(2).  Section 17529.5(a)(3) applies to emails with "a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

United States District Court
For the Northern District of California

2.   Whether Congress Intended for "Falsity or Deception"
to Be Limited to Pure Forms of Common Law Fraud

The explicit language of the preemption clause betrays no intention by Congress to limit state regulation to the simple codification of common law fraud in its purest form.  Both the preemption clause itself and the relevant legislative history suggest that Congress intended to allow states to regulate more than simple fraud.  The relevant authorities, including Virtumundo, refer disjunctively to "falsity or deception" and "fraudulent or deceptive . . . subject lines."  15 U.S.C. § 7707(b)(1); S. Rep. No. 108-102, at 21; Virtumundo, 575 F.3d at 1061-63.  The term "deception" would be redundant (if not misleading) if Congress meant to limit state regulation solely to common law fraud.  See Consumerbargaingiveaways, 622 F. Supp. 2d at 942 ("Congress, however, is certainly familiar with the word "fraud" and choose not to use it; the words "falsity or deception" suggest broader application.").  This language supports a broad reading of the exemption within the savings clause, which this Court is obliged to credit because "express preemption statutory provisions should be given narrow interpretation." Virtumundo, 575 F.3d at 1060 (quoting Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n, 410 F.3d 492, 496 (9th Cir. 2005)).

As the Virtumundo Court observed, the justification for the CAN-SPAM Act's preemptive effect is to prevent state and local lawmakers from "manipulat[ing] that standard to create more burdensome regulation."  575 F.3d at 1063.  But adding the traditional fraud elements of reliance and damages does not add anything to Congress's efforts to create a uniform system of

**United States District Court**
For the Northern District of California

regulation governing email advertisements.  Indeed, requiring these elements would not in any way affect the scope of tortious behavior that is prohibited by section 17529.5.  This is because the elements of reliance and damages do not speak to the substance of the emails or subject lines that are prohibited.

The difference between deception in the strict "fraud" sense, and deception without reliance and damages, is merely the difference between actual and attempted fraud.  Once an advertiser makes a material, intentional misrepresentation, whether the elements of reliance and damages manifest in any instance depends upon the naiveté, vulnerability, or circumstance of the recipient. Congress explicitly crafted the savings clause so that preemption would turn on whether a state staute targets the behavior of advertisers:  "[State s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern [of inconsistency], because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway."  S. Rep. No. 108-102, at 22 (2003).  This suggests that states may regulate deceptive behavior without consideration of conditions that do not turn on the behavior of advertisers.

While the elements of reliance and damages do not affect the nature of the behavior that is prohibited, they do affect who may properly bring suit for a violation of the provision.  Requiring these elements would therefore have one clear practical consequence:  It would limit the scope of entities that are entitled to bring suit under section 17529.5.  It would restrict enforcement suits to the (presumably more rare) case where a plaintiff had actually been duped by a misleading subject line.

25

The bulk of deceptive email would go unpunished, until such an email happened to mislead someone with the resources and wherewithal to pursue a private claim.  Removing the elements of reliance and damages, and allowing the punishment of attempted as well as actual fraud, allows the states to enact more effective enforcement mechanisms without expanding the scope of prohibited behavior beyond that which is tortious in nature.

Congress authorized California to "prohibit[] falsity or deception in any portion of a commercial electronic mail message," 15 U.S.C. § 7707(b)(1), and it indicated no intent to limit the mechanisms that California may authorize to enforce such prohibitions.  The Court finds no basis for concluding that California is barred from deterring deceptive practices by, for example, authorizing its Attorney General to bring civil suits against advertisers who have attempted to commit email fraud upon its citizens.  Nor is it barred from authorizing EMSPs to bring private actions against those who have attempted fraud upon their customers.

In short, the purpose of the preemption clause is to achieve uniform regulation with respect to lawful advertisement activity, while allowing states to continue regulation the narrow field of "falsity and deception."  15 U.S.C. § 7707(b)(1); <u>Virtumundo</u>, 575 F.3d at 1063.  Congress intended that preemption turn on the nature of the advertiser behavior that is being regulated.  <u>See</u> S. Rep. No. 108-102, at 22.  This can be achieved without requiring plaintiffs, under every state statute aimed at deceptive email, to plead reliance and damages.  California may therefore prohibit emails that result in actual deception, and it may prohibit emails

**United States District Court**
For the Northern District of California

that attempt to deceive (just as the CAN-SPAM Act does). It may also enforce these prohibitions by authorizing EMSPs to bring suit, including EMSPs that have not relied upon the allegedly misleading email subject lines.

This Court is satisfied that, because section 17529.5(a)(3) prohibits only behavior that Congress authorized California to prohibit, it is not preempted by the CAN-SPAM Act.  As long as Plaintiffs can establish that Defendants were responsible for making knowing and material misrepresentations (as required by section 17529.5(a)(3)), their claim will sound in "falsity or deception" and will not be preempted by the CAN-SPAM Act. Plaintiffs have pled a claim that is sufficiently grounded in "traditional tort theories," as required by Virtumundo and 15 U.S.C. § 7707(b)(1).

> 3.   Whether the Broad Enforcement Permitted by Section 17529.5 Conflicts With the CAN-SPAM Act

The Court is compelled to comment on the difference in standing conferred by section 17529.5 and the CAN-SPAM Act. Plaintiffs could not have brought this claim under the CAN-SPAM Act.  Several nearly identical suits brought by Plaintiff Asis under the CAN-SPAM Act have been dismissed because they failed to meet that Act's particular standing requirements.  See, e.g., ASIS Internet Servs. v. Azoogle.com, Inc., No. 08-15979, 2009 U.S. App. LEXIS 26232, *2-3 (9th Cir. Dec. 2, 2009).  As the Ninth Circuit has observed, the CAN-SPAM Act "conferred standing only on a narrow group of possible plaintiffs." Virtumundo, 575 F.3d at 1049.  The language of the federal statute authorizes internet access service providers ("IAS providers") to bring suit against advertisers only

**United States District Court**
For the Northern District of California

if they have been "adversely affected by a violation" of the CAN-SPAM Act.  15 U.S.C. § 7706(g)(1).  The Ninth Circuit has interpreted this language to require "something beyond the mere annoyance of spam and greater than the negligible burdens typically borne by an IAS provider in the ordinary course of business."  Id., 575 F.3d at 1053.  However, section 17529.5(b) lacks the "adversely affected" language of the CAN-SPAM Act.

This raises the question:  May California issue a statute with prohibitions that are parallel to those found in the CAN-SPAM Act, but which authorizes a broader class of plaintiffs to bring suit, without disturbing "the fine balance struck by Congress?"  Id. 575 F.3d at 1049.  The limitations that Congress placed on standing for IAS providers were certainly deliberate.  "Congress's intent was to limit enforcement actions to those best suited to detect, investigate, and, if appropriate, prosecute violations of the CAN-SPAM Act -- those well-equipped to efficiently and effectively pursue legal actions against persons engaged in unlawful practices and enforce federal law for the benefit of all consumers."  See Virtumundo, 575 F.3d at 1049-50.  In concurring with the Virtumundo decision, Judge Gould expressed his belief that Congress crafted the standing language of the Act to avoid suits by "litigation factories," where "the purported harm is illusory and more in the nature of manufactured circumstances in an attempt to enable a claim."  Id. at 1067-68 (Gould, J., concurring).

By eschewing the standing requirements of the CAN-SPAM Act, section 17529.5 allows a broader scope of plaintiffs -- including Asis and Foggy -- to bring suit against email advertisers.  However, to the extent that Plaintiffs seek only to enforce section

**United States District Court**
For the Northern District of California

1   17529.5(a)(3), the section remains within the narrow subject matter

2   that Congress has explicitly left to state regulation.  The CAN-

3   SPAM Act's preemption provision grants states the authority to

4   regulate certain behavior, and specifically to "prohibit[] falsity

5   or deception in any portion of a commercial electronic mail

6   message," without regard to the methods that states may use to

7   enforce these prohibitions.  15 U.S.C. § 7707(b)(1).  It would be

8   both unnecessary and disingenuous to attempt to impose parity in

9   the standing provisions between the two statutes, by imposing a

10  narrow reading on Congress's express reservation of this right for

11  the states.[15]  This Court will not find that Congress has

12  superseded California's power to authorize this kind of enforcement

13  mechanism without a showing that this was Congress's "clear and

14  manifest purpose," particularly "when Congress has legislated in a

15  field traditionally occupied by the States."  See Altria Group,

16  Inc. v. Good, 129 S. Ct. 538, 543 (2008).  The Court therefore

17  finds that section 17529.5 does not overstep the scope of authority

18  designated to California under the CAN-SPAM Act.

19  ///

20  ///

21  ///

22  ///

23

24  [15] Requiring plaintiffs to plead reliance and damages would not
    impose parity between the statutes.  IAS providers who have never
25  relied upon a deceptive subject line may be "adversely affected" by
    emails with potentially misleading subject lines, and can bring a
26  suit identical to this one under the CAN-SPAM Act, if they
    experience "network crashes, higher bandwidth utilization, and
27  increased costs for hardware and software upgrades, network
    expansion and additional personnel."  Virtumundo, 575 F.3d at 1053
28  (quoting Asis Internet Servs. v. Active Response Group, No. 07-
    6211, 2008 U.S. Dist. LEXIS 60535, *12 (N.D. Cal. July 30, 2008).

III. <u>CONCLUSION</u>

　　For the reasons stated above, Defendants' Motion to Dismiss is DENIED.


　　IT IS SO ORDERED.


　　Dated:　April 1, 2010

UNITED STATES DISTRICT JUDGE