# Exhibit A

**Jason K. Singleton**, State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski**, State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX 441-1533**

**Attorneys for Plaintiff, ASIS Internet Services**

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASIS INTERNET SERVICES, a California corporation,** | **Case No. C-05-5124 JCS** |
| **Plaintiff,** | **RESPONSE TO WRITTEN INTERROGATORIES** |
| **vs.** | |
| **OPTIN GLOBAL, INC., a Delaware Corporation, also dba Vision Media Limited Corp., USA Lenders Network, USA Lenders, and USA Debt Consolidation Service; et al.,** | |
| **Defendants.** | |

PROPOUNDING PARTY: Judgment Creditor AZOOGLEADS.COM, INC.

RESPONDING PARTY: Judgment Debtor ASIS INTERNET SERVICES

SET NO.: ONE

Plaintiff has not completed its investigation or analysis of the facts relating to this case, has not completed discovery, and has not completed preparation for trial. Accordingly, the responses herein given are without prejudice to Plaintiff's right to produce evidence of any subsequently discovered facts or interpretations thereof and/or to add to, modify or otherwise change or amend the responses herein. The information hereinafter set forth is true and correct to the best knowledge of Plaintiff at this particular time and is subject to correction for inadvertent errors or omissions, if any errors or omissions shall hereafter be found to exist. Plaintiff expressly reserves the right to supplement its responses as additional information is

**INTERROGATORY NO. 11:**

IDENTIFY ANY equipment or personal property valued over $100 that YOU own.

**RESPONSE:**

ASIS does not own any equipment or personal property, were sold with assets of company.

**INTERROGATORY NO. 12:**

IDENTIFY ANY and ALL stock, bonds, mutual funds or other long-term investments YOU own, in whole or in part.

**RESPONSE:**

None

**INTERROGATORY NO. 13:**

IDENTIFY ANY domain names YOU own, in whole or in part.

**RESPONSE:**

All domains were sold with business.

**INTERROGATORY NO. 14:**

IDENTIFY ANY and ALL sources of income YOU have.

**RESPONSE:**

None

**INTERROGATORY NO. 15:**

IDENTIFY, by month, the revenue YOU have earned by YOUR provision of goods and/or services to YOUR customers since January 1, 2005

**RESPONSE:**

| | | | | | | |
|------|----------|----------|----------|----------|----------|----------|
| 2005 | 22710.43 | 20251.05 | 20644.27 | 20585.13 | 22007.68 | 23303.40 |
| | 19081.31 | 19366.11 | 21448.31 | 14828.18 | 17820.85 | 22008.64 |
| 2006 | 17601.04 | 17713.92 | 18533.44 | 14917.57 | 18096.03 | 19171.22 |
| | 17743.36 | 18852.21 | 19789.48 | 17073.70 | 18511.82 | 21629.46 |
| 2007 | 18777.92 | 18760.38 | 23151.48 | 21154.35 | 24282.94 | 21593.15 |
| | 23975.35 | 22148.88 | 22670.95 | 24200.91 | 22863.68 | 26112.29 |

| 2008 | 21328.19 | 23007.84 | 22351.33 | 23010.34 | 24496.55 | 22638.52 |
| | 22446.19 | 21479.90 | 20689.33 | 23127.90 | 22641.85 | 22154.29 |
| 2009 | 24090.36 | 22847.56 | 19848.42 | 21529.26 | 23066.83 | 23297.98 |
| | 21513.63 | 22231.40 | 20669.31 | 21877.31 | 21309.30 | 20719.77 |

## INTERROGATORY NO. 16:

IDENTIFY the number of customers YOU had at the beginning of EACH month since January 1, 2005.

## RESPONSE:

| 2005 | 1020 | 1010 | 950 | 1000 | 907 | 1000 |
| | 995 | 992 | 980 | 972 | 960 | 961 |
| 2006 | 955 | 947 | 943 | 935 | 929 | 942 |
| | 935 | 934 | 942 | 940 | 954 | 948 |
| 2007 | 920 | 939 | 946 | 938 | 956 | 954 |
| | 952 | 954 | 952 | 955 | 958 | 964 |
| 2008 | 947 | 948 | 955 | 946 | 933 | 936 |
| | 928 | 922 | 901 | 889 | 885 | 886 |
| 2009 | 887 | 919 | 894 | 883 | 887 | 876 |
| | 884 | 881 | 892 | 870 | 855 | 860 |

## INTERROGATORY NO. 17:

IDENTIFY EACH shareholder or other owner of any ownership interest in YOU at ANY time since January 1, 2005.

## RESPONSE:

2005 - Rex White, Nella White

2006 - Rex White, Nella White

2007 - Rex White, Nella White

2008 - Nella White

2009 - Nella White

///

| Attorney-Client Retainer Agreement | Pure Ads, LLC. |
| Attorney-Client Retainer Agreement | Sierra Partners, LLC |
| Attorney-Client Retainer Agreement | Subscriberbase, Inc. |
| Attorney-Client Retainer Agreement | Summer Bay Partnership |
| Attorney-Client Retainer Agreement | ValueClick, Inc. |
| Attorney-Client Retainer Agreement | VistaPrint USA |

## INTERROGATORY NO. 31:

IDENTIFY ALL DOCUMENTS REGARDING ANY contract, agreement, or other arrangement between YOU and any other PERSON for the provision of services to YOU at any time between January 1, 2005 and the present, to the extent said services were REGARDING ANY litigation against ANY PERSON for alleged violations of the federal CAN-SPAM Act, 15 U.S.C. §7701 et seq., California Business and Professions Code section 17529.5, and/or ANY and ALL other legal or equitable theories of law REGARDING YOUR and/or YOUR customers' alleged receipt of email messages.

## RESPONSE:

See Interrogatory No. 30 above.

SINGLETON LAW GROUP

Dated:        July 16, 2010

JASON K. SINGLETON
RICHARD E. GRABOWSKI, Attorneys for
Plaintiff, ASIS INTERNET SERVICES

## VERIFICATION

I, the undersigned certify and declare that I have read the foregoing **RESPONSES TO JUDGMENT CREDITOR AZOOGLEADS.COM, INC.'S WRITTEN INTERROGATORIES TO JUDGMENT DEBTOR ASIS INTERNET SERVICES** and know its contents.

I am a party to the above entitled matter; the foregoing **RESPONSES TO JUDGMENT CREDITOR AZOOGLEADS.COM, INC.'S WRITTEN INTERROGATORIES TO JUDGMENT DEBTOR ASIS INTERNET SERVICES** are true of my own knowledge, except as to those matters which are therein stated on my information and belief, and as to those matters I believe it to be true.

I declare under the penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed on the ____ day of July, 2010, at Garberville, California.

_____
Declarant, NELLA WHITE, PRESIDENT
ASIS INTERNET SERVICES

## PROOF OF SERVICE

I declare that I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is, Singleton Law Group, 611 "L" Street, Suite "A", Eureka, CA 95501.

On July 16, 2010, I served the following document:

## RESPONSE TO WRITTEN INTERROGATORIES

on the parties listed below as follows:

**KRONENBERGER BURGOYNE LLP**
150 Post Street, Suite 520
San Francisco, CA 94108

☐　**By facsimile machine** (FAX) by personally transmitting a true copy thereof via an electronic facsimile machine to # (415) 955-1158

☐　**By first class mail** by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid and placing the envelope in the firm's daily mail processing center for mailing in the United States mail at Eureka, California.

☐　**By EMAIL** to the address(es) listed above

☐　**By personal service** by causing to by personally delivered a true copy thereof to the address(es) listed herein at the location listed herein.

☑　**By Federal Express, UPS,** or overnight mail

☐　**(State)**　I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑　**(Federal)**　I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 16, 2010, at Eureka, California.

Roberta Alliston

Exhibit B

SALES AGREEMENT BETWEEN
ASIS INTERNET SERVICES AND A SIMPLE INTERNET SOLUTION

ASIS Internet Services hereby, and of this date, January 22, 2010, sells it's customer base, and associated domain names to A Simple Internet Solution for $25,000. Included with this sale is assorted office furniture and computers. Accounts receivable will accrue to A Simple Internet Solution as of Feb. 1, 1010. ASIS Internet Services will cover accounts payable into Februrary to compensate for services prepaid by customers.

Domains names included in this sale:
asis.com
xprs.net
konocti.net
mckinleyville.net
urchin.net
coastalinternet.net

A Simple Internet Solution will set up it's own contracts with support vendors as soon as is practical to do so. ASIS Internet Services will maintain it's own support services through the month of February. If A Simple Internet Solution desires to continue with these vendors, it will be responsible for their costs after this time.

For the sake of continuity with customer support issues, ASIS Internet Services will maintain it's published customer support telephone numbers and auto-forward them to A Simple Internet Solution. until the next telephone directories are issued. A Simple Internet Solution will be responsible for their cost after February and until they are disconnected. A Simple Internet Solution will train the customers to use their own billing address and phone numbers as soon as is practical.

Nella White of ASIS Internet Services will make herself available to assist in any technical aspects of this transition. Except for the first week of February, she will be available on demand through the month of February for time sensitive issues. She will also be available for consultation on a less urgent basis through the month of August, 2010.

Signed:                          Date:

_Nella White_  *Nella White*  ___1/27/2010___
For ASIS Internet Services

_SALLY THEN_  *Sally Then*  ___1/27/2010___
For A Simple Internet Solution

Exhibit C

**Jason K. Singleton**, **State Bar #166170**
jason@singletonlawgroup.com
**Richard E. Grabowski**, **State Bar #236207**
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX  441-1533**

**Attorneys for Plaintiff, ASIS INTERNET SERVICES**
**and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING**
**dba FOGGY.NET**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ASIS INTERNET SERVICES, a California corporation,  and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET** | **Case No. C-08-2813 SBA** |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – VIOLATION OF CAN-SPAM ACT OF 2003 [15 *U.S.C.* § 7701, *et seq.*]** |
| **vs.** | |
| **SIERRA PARTNERS, LLC., a Nevada Limited Liability Company, dba DIRECT CONSUMER SERVICES, DAVID WINSEN, CHAD FISK, and DOES ONE through FIFTY, inclusive,** | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | |

**Plaintiffs: ASIS INTERNET SERVICES, a California corporation,** an Internet Access Provider (hereafter "**ASIS**"); **and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET,** an Internet Access Provider (hereafter "**FOGGY**"), complain of Defendants **SIERRA PARTNERS, LLC., a Nevada Limited Liability Company, dba DIRECT CONSUMER SERVICES, DAVID WINSEN, CHAD FISK, and DOES ONE through FIFTY, inclusive,** and alleges violations of ***CAN-SPAM Act,* 15 *U.S.C.* §7704(a) and (b)** and requests injunctive relief, statutory damages, aggravated damages, and attorney fees authorized as remedies under **15 *U.S.C.* §7706(g)**.

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction of this action pursuant to **28 *U.S.C.* §1331** for

violations of the **CAN-SPAM Act of 2003 (15 *U.S.C.* §§7701 et seq.).** This Court also has original jurisdiction under **15 *U.S.C.* §7706(g)(1)** for cases involving a civil action by an **internet access provider** adversely affected by a violation of section **15 *U.S.C.* §7704(a)(1)** and **15 *U.S.C.* §7704(b).**

2. This Court has personal jurisdiction over Defendant **DAVID WINSEN,** who Plaintiffs are informed and believe lives and/or is employed at 18401 Burbank Blvd., Suite 120, Tarzana, California.

3. This Court has personal jurisdiction over Defendant **CHAD FISK,** who Plaintiffs are informed and believe lives and/or is employed at 2833 Luna Avenue, San Diego, California.

4. **DAVID WINSEN** and **CHAD FISK** are listed by the Secretary of State for Nevada as the Managing Members of **SIERRA PARTNERS, LLC.** (See **Exhibit A**).

5. Plaintiffs are informed and believes and therefore allege that Defendants sent **47,577** commercial electronic mail messages to email accounts at mail servers owned by Plaintiff **ASIS** (**31,527** emails) and Plaintiff **Foggy** (**16,050** emails). Defendants have therefore purposely availed themselves of the privileges of conducting activities in the forum, the emails are the subject of the action, and exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum when **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES, DAVID WINSEN,** and **CHAD FISK** had commercial emails sent to email accounts at Northern California Internet Access Providers. *Aitken v. Communications Workers of America*, 496 F.Supp.2d 653 at 659 (E.D.Va.,2007); *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 at 611 - 620 (E.D.Va.,2002); and *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773 at 779 - 780 (S.D.Miss.,2001).

6. Plaintiffs are informed and believe and therefore allege that Defendants, **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES,** has purposely availed itself of the privileges of conducting activities in the forum by registering its web sites with registration companies located in the forum and/by placing their web sites on computers located in the

forum.  See **Exhibit "B"** attached hereto for domain name registration information and Internet Protocol address (hereafter "IP") location information.   These web sites and the computers they reside on are directly related to this matter.

7.       Plaintiffs are informed and believe and therefore allege that Defendants, **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES,** has purposely availed itself of the privileges of conducting activities in the forum by dong business with companies resident in the forum state, California.  The subject emails in this case were sent for advertisers in California and are listed in a number of the emails indicating a business relationship with those California companies.  See **Exhibit "C."**

8.       Paragraphs 5, 6, and 7 establish the existence of deliberate and continuing obligations between Defendant, **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES,**  with residents of the forum state, California.  Therefore, Defendant: "has availed itself of the privilege of conducting business there, and because its activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require it to submit to the burdens of litigation in that forum as well."  **Burger King Corp. v. Rudzewicz,** 471 U.S. 462 at 476 (1985).

9.       Venue is proper in this Court pursuant to **28 *U.S.C.* §1391(b)** and is founded on the fact that a substantial part of the unlawful actions of the defendants occurred in this judicial district, that is the emails were sent to Email and Internet Access Providers in Garberville, California, and Eureka, California.

## FACTUAL ALLEGATIONS

9.       Plaintiffs are informed and believe and therefore allege that Defendant **SIERRA PARTNERS, LLC.,** is a Nevada Limited Liability Company, with an address of 723 S Casino Center Blvd., 2nd Floor, Las Vegas, Nevada, 89101-6716, and registered with the Secretary of State of Nevada to do business in Nevada with agent for service in Nevada.  (see **Exhibit "A"**).

10.      Plaintiffs are informed and believe and therefore allege that Defendant **DIRECT CONSUMER SERVICES** is an alias, agent, service mark, brand name, or domain name for

Defendant **SIERRA PARTNERS, LLC.**

11. Plaintiffs **ASIS** and **Foggy** do not know the true names and capacities of defendants **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES, DAVID WINSEN, CHAD FISK, and DOES ONE through FIFTY, inclusive,** their business capacities, their ownership connection to the business(es), nor their relative responsibilities in causing the *CAN-SPAM Act of 2003* and other violations herein complained of, and alleges a joint venture and common enterprise by all such defendants. Plaintiffs are informed and believe and therefore allege that each of the defendants herein, including DOES ONE to FIFTY, inclusive, is the agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, joint venturer, partner, and associate, or such similar capacity, of each of the other defendants, and was at all times acting and performing, or failing to act or perform, with the authorization, consent, permission or ratification of each of the other defendants, and is responsible in some manner for the acts and omissions of the other defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, connections and responsibilities of defendants **SIERRA PARTNERS, LLC., dba DIRECT CONSUMER SERVICES, DAVID WINSEN, CHAD FISK, and DOES ONE through FIFTY, inclusive,** are ascertained.

12. Plaintiffs are informed and believe and allege that all named Defendants, including **DOES ONE to FIFTY, inclusive**, conspired to commit the acts described herein, or alternatively, aided and abetted one another in the performance of the wrongful acts hereinafter alleged.

13. Plaintiff **ASIS** is a California corporation registered to do business in California and is located in Garberville, California. **ASIS** provides Internet access service within the meaning of **15 *U.S.C.* §7702(11)**.

14. Plaintiff **FOGGY** is a sole proprietorship and is located in Eureka, California. **FOGGY** provides internet access service within the meaning of **15 *U.S.C.* §7702(11)** and email service within the meaning of *California Business & Professions Code §17529.5*.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF     4

15.     Plaintiffs allege that Defendants sent or caused to have sent **31,527** commercial electronic mail messages from **January 1, 2006, through February 14, 2008**, to Plaintiff **ASIS'** servers, protected computers, containing, and/or accompanied by, header information that was materially false or materially misleading.

16.     Plaintiffs allege that Defendants sent or caused to have sent **16,050** commercial electronic mail messages from **May 25, 2007, through April 30, 2008**, to Plaintiff **FOGGY'S** servers, protected computers, containing, and/or accompanied by, header information that was materially false or materially misleading.

17.     Plaintiffs received Defendants' emails and Plaintiffs have suffered adverse affect from the sending and receipt of Defendants' emails.  Plaintiffs' web sites have clear notices that misuse of their resources is prohibited:

**ASIS:**
"ASIS provides the use of its equipment and services for the exclusive use of its subscribing customers. ASIS prohibits the use of its equipment and services by anyone other than its subscribing customers for any purpose unless specifically authorized by ASIS in writing. ASIS specifically prohibits the use of its equipment and services, including but not limited to mail servers, for delivery, transmission, or re-transmission of unsolicited commercial emails (UCE) or unsolicited bulk emails (UBE)."

**Foggy:**
"You may not use the facilities of this system to send, relay, forward, bounce, reply, or otherwise route electronic messages to (a) subscribers on this system other than as needed to complete the delivery of individual electronic messages from the subscribers correspondent(s), or (b) third parties who are not subscribers on this system without prior written permission of Foggy.net. You may contact support@foggy.net or telephone (707)476-2820 with questions about these policies. Permission will not be given to send, relay, forward, bounce, reply, or otherwise route unsolicited commercial email, and you may not use this system in any way to send, relay, forward, bounce, reply, or otherwise route unsolicited commercial email to subscribers or to third parties.

Any message(s) you send to subscribers on this system must accurately identify the originating sender of the message(s). A message with a misleading, disguised, or otherwise false originating address will be treated as unsolicited commercial email and disposed of accordingly."

18.     Plaintiffs state that the email accounts that the **47,577** commercial emails (**ASIS** (**31,527** emails) and **Foggy** (**16,050** emails) were sent to did not solicit the emails.  These

emails were unsolicited because most of the email accounts they were sent to are unassigned or inactive email accounts owned by **ASIS and FOGGY**. **ASIS** did not solicit any product, service, or information from any entity using these email accounts. **FOGGY** did not solicit any product, service, or information from any entity using these email accounts.

19.    Plaintiffs are informed and believe and therefore allege that Defendants used an automated creation of multiple email accounts to send **47,577** commercial electronic mail messages to a Plaintiffs' protected computers. These emails were sent from 554 unique domain names. These domain names were used to generate 9,170 unique email accounts. Although many of the email accounts were of the format "return@xxx.com" (where "xxx" represents the 554 unique domain names), many of the email accounts used obviously computer generated names such as "qCYAO-b@scrolnights.com" and "qCYsF4c@scrolnights.com". Other user names were generated using the product advertised or the name of the advertising company. (See **Exhibit D** for a sample list of email accounts). This indicates the email accounts were generated programmatically using a database of information containing the senders domain names and a randomizer to generate the username (the portion of the email account before the "@" symbol) or the senders domain names and a database of the advertiser/product names.

### FIRST CAUSE OF ACTION
(**Violation of CAN-SPAM Act of 2003 – 15 *U.S.C.* §7704(a)(1),
and 15 *U.S.C.* §7704(b)(1) and (2))**

20.    Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

21.    On **January 1, 2006, through February 14, 2008**, Plaintiff **ASIS** received **31,527** commercial electronic mail messages from Defendants to its mail servers (designated as "asis.com" and "sohum.net") located in California that violated the ***CAN-SPAM Act of 2003***.

22.    On **May 25, 2007, through April 30, 2008**, Plaintiff **Foggy** received **16,050** commercial electronic mail messages from Defendants to its mail servers (designated as "foggy.net" and "jennsea.com") located in California that violated the ***CAN-SPAM Act of 2003***.

23.    Plaintiffs allege that all of the relevant electronic mails sent by the Defendants

contained or were accompanied by header information that was materially false or materially misleading. Each of these **47,577** messages indicated that they were from email accounts such as "WAL*MART Card Giveaway," "Confirmation # DPS-1000," "Gas Card Giveaway," or various other unknown identities. These false email names resolved into emails sent by various person or persons unknown (e,g, WAL*MART Card Giveaway to qc4AO-bu@scrolnights.com, Confirmation # DPS-1000 to ConfirmationDPS1000 @embertrip.com, and Gas Card Giveaway to return@piecessliegh.com). See sample emails and source codes in **Exhibit "E"** attached hereto. (Note that all receiving email accounts have been redacted, part of these emails represent inactive email accounts that are still the property of **ASIS** and **Foggy** and are protected by their corporate privilege; part of the emails are live consumer accounts and are protected by their right to privacy.) A WHOIS check of the domain name registration for the 554 domains used to send the emails indicate that all of the domain names were registered under a protection or privacy service. Plaintiffs have reviewed the Domain Name registration for all of the emails and determined that those domain names are registered under services that conceal the true identity of the domain name registrant through a proxy/privacy service. See the WHOIS reports in **Exhibit "F"** attached hereto. The true registrant for these domains cannot be determined without a subpoena. See **Exhibit "G"** attached hereto for privacy and/or registration agreements for the domain name registration companies. **15 _U.S.C._ §7704(a)(1)(A)** states:

> "(A) header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading.

**15 _U.S.C._ §7704(a)(6)** states:

> "the term "materially", when used with respect to false or misleading header information, includes the alteration or concealment of header information in a manner that would impair the ability of an Internet access service processing the message on behalf of a recipient, a person alleging a violation of this section, or a law enforcement agency to identify, locate, or respond to a person who initiated the electronic mail message or to investigate the alleged violation…"

Therefore, since false information was used to generate the domain names and/or domain names were concealed from investigation through a proxy services, the electronic mail messages violated **15 *U.S.C.* §7704(a)(1)(A)**.

24. Plaintiffs are informed and believe and therefore allege that the Defendants sent or had sent **47,577** separate items of electronic mail to the Plaintiffs, from addresses that were acquired by the use of automated tools or scripts. Said conduct was in violation of **15 *U.S.C.* §7704(b)(2)**.

25. As a proximate result of said unlawful conduct by said Defendants, Plaintiffs are entitled to statutory damages in the amount of up to $100.00 per email in the case of violation of **15 *U.S.C.* §7704(a)(1)** in the form of statutory damages as set forth in **15 *U.S.C.* §7706(g)(1)(B)(ii) and (3)(A)(i)**.

26. As a proximate result of said unlawful conduct by said defendants, Plaintiffs are entitled to treble all statutory damages as a result of violation of any section of **15 *U.S.C.* §7704(b)** as set forth in **15 *U.S.C.* §7706(g)(1)(C)**.

27. Plaintiffs furthermore seeks a preliminary and permanent injunction against the defendants for their current and future violations of the ***CAN-SPAM Act of 2003*** as Plaintiffs and members of the general public will continue to incur damages as a result of the unlawful conduct of said defendants. The seeking of injunctive relief by plaintiffs is specifically authorized by **15 *U.S.C.* §7706(g)(1)(A)**.

28. Plaintiffs furthermore seek their attorney fees and costs against the Defendants pursuant to **15 *U.S.C.* §7706(g)(4)**.

**WHEREFORE**, Plaintiffs pray judgment against the Defendants and each of them as follows:

1. For statutory damages of up to $100.00 for each violation of **15 *U.S.C.* §7704(a)(1)** in the sum of **$4,757,700**;

2. For aggravated damages under **15 *U.S.C.* §7706(g)(1)(C)** of up to three times the amount above for these violations committed by the defendants' violations of **15 *U.S.C.* §7704(b)** in the sum of **$14,273,100**;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF     8

3.     For a preliminary and permanent injunction preventing the Defendants and all persons acting in concert with them from the violation of the *Can-Spam Act of 2003*;

4.     For an award of reasonable attorneys' fees and costs according to proof;

5.     For costs of suit; and

6.     For such other and further relief as this Courts deems just and proper.

**SINGLETON LAW GROUP**

Dated:     June 2, 2008          /s/ Jason K. Singleton
                                                Jason K. Singleton,
                                                Richard E. Grabowski, Attorneys for Plaintiffs,
                                                **ASIS INTERNET SERVICES and**
                                                **JOEL HOUSEHOLTER, dba KNEELAND**
                                                **ENGINEERING, dba FOGGY.NET**

**REQUEST FOR JURY TRIAL**

Plaintiffs hereby request a jury for all claims for which a jury is permitted.

**SINGLETON LAW GROUP**

Dated:     June 2, 2008          /s/ Jason K. Singleton
                                                Jason K. Singleton,
                                                Richard E. Grabowski, Attorneys for Plaintiffs,
                                                **ASIS INTERNET SERVICES and**
                                                **JOEL HOUSEHOLTER, dba KNEELAND**
                                                **ENGINEERING, dba FOGGY.NET**

Exhibit D

1  **Jason K. Singleton,** State Bar #166170
   jason@singletonlawgroup.com
2  **Richard E. Grabowski,** State Bar #236207
   rgrabowski@mckinleyville.net
3  **SINGLETON LAW GROUP**
   **611 "L" Street, Suite A**
4  **Eureka, CA 95501**
   **(707) 441-1177**
5  **FAX  441-1533**

6  **Attorneys for Plaintiff, ASIS INTERNET SERVICES**

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10 **ASIS INTERNET SERVICES, a California**          )  **Case No.**
   **corporation,**                                  )
11                                                    )  **COMPLAINT FOR LIQUIDATED**
                                                      )  **DAMAGES FOR VIOLATIONS OF**
12         **Plaintiffs,**                            )  **CALIFORNIA BUSINESS &**
   **vs.**                                            )  **PROFESSIONS CODE §17529.5**
13                                                    )
   **VISTAPRINT USA, INCORPORATED, a**               )  **DEMAND FOR JURY TRIAL**
14 **Delaware corporation, VISTAPRINT LIMITED, a**   )
   **Bermuda Company, aka VISTAPRINT.COM, aka**      )
15 **VISTAPRINT, ROBERT S. KEANE  and DOES**         )
   **ONE through FIFTY, inclusive,**                  )
16                                                    )
                                                      )
17         **Defendants.**                            )
                                                      )
18 ─────────────────────────────────────────────

19         **Plaintiffs:  ASIS  INTERNET  SERVICES,  a  California  corporation,** and an Internet

20 Service Provider, complains of Defendants **VISTAPRINT USA, INCORPORATED, a Delaware**

21 **corporation,  VISTAPRINT  LIMITED,  a  Bermuda  Company,  aka  VISTAPRINT.COM,  aka**

22 **VISTAPRINT, ROBERT S. KEANE  and DOES ONE through FIFTY, inclusive,** and alleges

23 violations of *California Business and Professions Code* §17529.5(a) and requests

24 liquidated damages and attorney fees authorized as remedies under *California Business and*

25 *Professions Code* §17529.5(b)(1)(B) and (C).

26                         **JURISDICTION AND VENUE**

27         1.       This Court has diversity jurisdiction of this action pursuant to 28 *USC* §1332 for

28 disputes between citizens of different states and citizens or subjects of a foreign state where

COMPLAINT FOR LIQUIDATED DAMAGES              1

1  "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and
2  costs." 28 *USC* §1332. The amount in controversy is $10,225,000, the Plaintiff is a citizen of
3  California, and the Defendants are citizens of Massachusetts and the Bermuda Islands, a
4  British Overseas Territory.

5      2.    Defendants have purposely availed themselves of the privileges of conducting
6  activities in the forum, the email advertisements are the subject of the action, and exercise of
7  jurisdiction is reasonable since Defendants should have known that they would be subject to
8  the jurisdiction and laws of the forum when **ADVERTISERS** sent mass commercial email
9  advertisements in violation of *California Business & Professions Code* §17529 to persons at
10 Northern California Internet Service Providers.  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104
11 at 1112-1114 (9th Cir., 2002) (where the court found that a foreign corporation that
12 communicated directly and substantially with the plaintiffs with the purpose of harming the
13 plaintiffs had expressly aimed their acts at the forum state); *Asis Internet Services v.*
14 *Imarketing Consultants, Inc.*, Slip Copy, 2008 WL 2095498 at *3 N.D.Cal.,2008 (where the
15 court found specific jurisdiction based on defendant sending mass emails to persons in the
16 forum); *Aitken v. Communications Workers of America*, 496 F.Supp.2d 653 at 659
17 (E.D.Va., 2007); *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 at 611-620
18 (E.D.Va., 2002); and *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773 at 779-780
19 (S.D.Miss., 2001).  These advertisements represent a request to do business with the intended
20 recipients and establish contractual relationship with the intended recipients.  These email
21 advertisements therefore establish the existence of deliberate and continuing obligations with
22 residents of the forum state, California.  Therefore, Defendants: "has availed itself of the
23 privilege of conducting business there, and because its activities are shielded by 'the benefits
24 and protections' of the forum's laws it is presumptively not unreasonable to require it to submit
25 to the burdens of litigation in that forum as well."  *Burger King Corp. v. Rudzewicz,* 471 U.S.
26 462 at 476 (1985).

27     3.    Venue is proper in this Court pursuant to 28 *USC* §1391(a)(2) and is founded on
28 the fact that a substantial part of the unlawful actions of the Defendants occurred in this judicial

1  district, that is the emails were sent to an Email and Internet Service Provider in Garberville,

2  California.

3  **FACTUAL ALLEGATIONS**

4      4.    Plaintiff is informed and believes and based thereon alleges that Defendant

5  **VISTAPRINT LIMITED** is and was at all times relevant herein a business located at Canons

6  Court, 22 Victoria Street, Hamilton, HM12, Bermuda Islands.  Plaintiffs are informed and

7  believe and based thereon allege that Defendant **VISTAPRINT LIMITED** is a Bermuda Island

8  Company.

9      5.    Plaintiff is informed and believes and based thereon alleges that Defendant,

10  **VISTAPRINT USA, INCORPORATED** is and was at all times relevant herein a business

11  located at 95 Hayden Avenue, Lexington, Massachusetts 02421.  Plaintiff is informed and

12  believes and based thereon alleges that Defendant **VISTAPRINT USA, INCORPORATED** is a

13  corporation incorporated under the laws of Delaware.

14      6.    Plaintiff is informed and believes and based thereon alleges that Defendant

15  **ROBERT S. KEANE** is and was at all times relevant herein the founder, CEO, and day to day

16  Manager of **VISTAPRINT LIMITED** and **VISTAPRINT USA, INCORPORATED**.  Plaintiff is

17  informed and believes and based thereon alleges that Defendant **ROBERT S. KEANE**

18  **(hereafter "KEANE")** is a resident of Massachusetts with business address at 95 Hayden

19  Avenue, Lexington, Massachusetts 02421.  Plaintiff is informed and believes and based

20  thereon alleges that Defendant **KEANE** created and manages the companies of **VISTAPRINT**

21  **LIMITED** and **VISTAPRINT USA, INCORPORATED** to avoid liability for his illegal false

22  advertising activities as described in this complaint. "As the separate personality of the

23  corporation is a statutory privilege, it must be used for legitimate business purposes and must

24  not be perverted.  When it is abused it will be disregarded and the corporation looked at as a

25  collection or association of individuals, so that the corporation will be liable for acts of the

26  stockholders or the stockholders liable for acts done in the name of the corporation." *Mesler*

27  *v. Bragg Management Co.* (1985), 39 Cal.3d 290 at 300 [702 P.2d 601].

28      7.    Plaintiff is informed and believes and based thereon alleges that all named

1    Defendants are in fact agents, partners, or employees of Defendant **KEANE.**

2        8.    Plaintiff is informed and believes and therefore alleges that Defendants

3    **VISTAPRINT.COM** and **VISTAPRINT** are aliases or agents for Defendants **KEANE,**

4    **VISTAPRINT LIMITED** and **VISTAPRINT USA, INCORPORATED**.

5        9.    Plaintiff **ASIS INTERNET SERVICES** does not know the true names and

6    capacities of defendants **VISTAPRINT USA, INCORPORATED, VISTAPRINT LIMITED, aka**

7    **VISTAPRINT.COM, aka VISTAPRINT, ROBERT S. KEANE and DOES ONE through FIFTY,**

8    **inclusive**, their business capacities, their ownership connection to the business(s), nor their

9    relative responsibilities in causing the violations of *California Business and Professions*

10    *Code* §17529.5 and other violations herein complained of, and alleges, on information and

11    belief, a joint venture and common enterprise by all such defendants. Plaintiff is informed and

12    believes that each of the defendants herein, including **DOES ONE to FIFTY, inclusive**, is the

13    agent, ostensible agent, master, servant, employer, employee, representative, franchiser,

14    franchisee, joint venture, partner, and associate, or such similar capacity, of each of the other

15    defendants, and was at all times acting and performing, or failing to act or perform, with the

16    authorization, consent, permission or ratification of each of the other defendants, and is

17    responsible in some manner for the acts and omissions of the other defendants in legally

18    causing the violations and damages complained of herein, and have approved or ratified each

19    of the acts or omissions of each other defendant, as herein described. Plaintiff will seek leave

20    to amend this Complaint when the true names, capacities, connections and responsibilities of

21    defendants **VISTAPRINT USA, INCORPORATED, a Delaware corporation, VISTAPRINT**

22    **LIMITED, a Bermuda Company, aka VISTAPRINT.COM, aka VISTAPRINT, ROBERT S.**

23    **KEANE  and DOES ONE through FIFTY, inclusive**, are ascertained.

24        10.    Plaintiff is informed and believes and therefore alleges that all named

25    Defendants, including **DOES ONE to FIFTY, inclusive**, conspired to commit the acts

26    described herein, or alternatively, aided and abetted one another in the performance of the

27    wrongful acts hereinafter alleged.

28        11.    Plaintiff **ASIS INTERNET SERVICES** (hereafter "**ASIS**") is a California

corporation registered to do business in California and is located in Garberville, California. **ASIS** provides Internet service and email service within the meaning of *California Business & Professions Code* §17529.5.  **ASIS** received the emails at issue while performing services as an internet access provider and email service provider for its customers.

12.    Plaintiff is informed and believes and based thereon allege that Defendants advertised in **10,225** commercial electronic mail advertisements sent to Plaintiff **ASIS'** protected computers from January 6, 2006 through November 6, 2008, with a subject line that a person would know would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents and subject matter of the message.  Plaintiff discovered these email advertisements on November 7, 2008.

13.    Plaintiff is informed and believes and based thereon alleges that Defendants sent the **10,225** commercial electronic mail advertisements knowing that they would go to Plaintiff's mail service computers.

14.    Plaintiff states that the email accounts that the **10,225** commercial electronic mail advertisements sent to **ASIS** accounts did not solicit the emails.   These emails were unsolicited because they were sent to unassigned or inactive email accounts owned by **ASIS**. **ASIS** did not solicit any product, service, or information from any entity using these email accounts.

### FIRST CAUSE OF ACTION
**(Violation of *California Business and Professions Code* §17529.5
False advertisements relating to commercial email advertisements.)**

15.    Plaintiff refers to the allegations in prior paragraphs of this complaint and incorporate the same herein by this reference as though set forth in full.

16.    Plaintiff alleges that Defendants sent or had sent **10,225** commercial  separate unsolicited electronic mail advertisements to plaintiff's computers that include various subject lines that were false and misleading and would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message in violation of *California Business and Professions Code* §17529.5(a)(3).  Plaintiff alleges that the "circumstances" required are plainly visible in the

actual subject lines of the emails. The email subject lines received by Plaintiff were clearly intended to get someone to open the email by enticing them with free gifts such as: "Re: , your 250 business cards at No-Fee", " Full Color Business Cards at No Charge", "[QUAR] You were chosen to receive a $500 JCPenney Gift Card!", and 250 Free Business Cards - ON US"  See Sample emails in Exhibit "A" and see a complete list of subject lines appearing in the emails at Exhibit "B."  (Note that all receiving email accounts have been redacted, while most of these emails represent inactive email accounts they are still the property of **ASIS** and are protected by their corporate privileges.)   The California courts have determined that the standard for false advertisements under the California False Advertising Act (**California Business and Professions Code** §17500 et seq.) is the reasonable consumer standard and that all that is necessary to prevail is a showing that a reasonable consumer would be deceived or mislead. (**Colgan v. Leatherman Tool Group, Inc.** (2006) 135 Cal. App. 4th 663 at  682 [38 Cal. Rptr. 3d 36].) The California Courts have further found that the Federal Trade Commission has used the reasonable consumer standard in development of their rules concerning false advertising and that those rules apply.  (**Lavie v. Procter & Gamble Co.** (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486]). 15 **USC** §45 is titled "Unfair methods of competition unlawful; prevention by Commission," and enables the Federal Trade Commission to issue orders regarding unfair trade practices.  15 **USC** §45(d) provides that the orders of the Commission are exclusive unless overturned by the United States Court of Appeals.   The FTC has issued 16 **CFR** part 251, "Guide concerning use of the word 'free' and similar representations."  16 **CFR** Part 251 states that the terms of the offer should be set out clearly and conspicuously at the outset of the offer so that no misunderstanding can occur. All of the email subject lines represent that the recipient has received a free gift.  16 **CFR** part 251 clearly states that the requirements for participation for an advertisement claiming a free gift must appear within the same page of the offer and must be conspicuous.  None of the emails describe any terms or conditions for receipt of the free gift.  Once the recipient clicks on the active links in the email they are taken to landing pages where they are offered a variety of products.  Once they have supposedly selected the free gift they are led through a dozen separate web pages where they

are required to enter personal information, including: name, address, telephone, company, email address, etc.  At the end of this series of pages and only at the end they are informed that their free gift will be shipped for $5.17.   See Exhibit "C"  for the Landing Pages of each step to checkout.  At this point they are also required to provide credit card information or if paying by check informed they must purchase at least $10 in goods.  The subject lines are clearly intended to deceive the recipients into thinking they are getting a free gift in order to entice them into opening and responding to the emails.  The email subject lines are in violation of 16 **CFR** part 251 and therefore in violation of **California Business and Professions Code** §17529.5(a)(3).

17.   As a proximate result of said unlawful conduct by said Defendants, Plaintiff is entitled to liquidated damages in the amount of $1,000.00 for each unsolicited commercial email transmitted in violation of **California Business and Professions Code** §17529.5(a) as set forth in **California Business and Professions Code** §17529.5(b)(1)(B)(ii).

18.   Plaintiff furthermore seek its attorney fees and costs against the defendants pursuant to **California Business and Professions Code** §17529.5(b)(1)(C).

**WHEREFORE**, plaintiffs pray judgment against the defendants and each of them as follows:

1.   For liquidated damages of $1,000.00 for each violation of **California Business and Professions Code** §17529.5(a) in the sum of **$10,225,000**;

5.   For an award of reasonable attorneys' fees and costs according to proof;

6.   For costs of suit; and

7.   For such other and further relief as this Courts deems just and proper.


**SINGLETON LAW GROUP**


Dated:        November 17, 2008         _/s/ Jason K. Singleton_____
                                        Jason K. Singleton
                                        Richard E. Grabowski
                                        Attorneys for Plaintiff, **ASIS INTERNET SERVICES**

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a jury for all claims for which a jury is permitted.

**SINGLETON LAW GROUP**

Dated:          November 17, 2008          _/s/ Jason K. Singleton_____
                                                                    Jason K. Singleton
                                                                    Richard E. Grabowski
                                                                    Attorneys for Plaintiffs, **ASIS INTERNET SERVICES**

Exhibit E

**Jason K. Singleton,** State Bar #166170
jason@singletonlawgroup.com
**Richard E. Grabowski,** State Bar #236207
rgrabowski@mckinleyville.net
**SINGLETON LAW GROUP**
**611 "L" Street, Suite A**
**Eureka, CA 95501**
**(707) 441-1177**
**FAX 441-1533**

**Attorneys for Plaintiff, ASIS INTERNET SERVICES**
**and JOEL HOUSEHOLTER**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIS INTERNET SERVICES, a California corporation, and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET, <br><br> Plaintiffs, <br><br> vs. <br><br> CONSUMERBARGAINGIVEAWAYS, LLC, an Illinois Limited Liability Company, dba OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM, CONSUMER REVIEW NETWORK, LLC, a Delaware Limited Liability Company, dba CONSUMERREVIEWNETWORK.COM, DIRECTGIFTCARDPROMOTIONS, LLC, an Illinois Limited Liability Company, dba LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM, JEFF M. ZWEBEN, and DOES ONE through FIFTY, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR LIQUIDATED DAMAGES FOR VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17529.5** <br><br> **DEMAND FOR JURY TRIAL** |

**Plaintiffs: ASIS INTERNET SERVICES, a California corporation,** an Internet Service Provider; **and JOEL HOUSEHOLTER, dba KNEELAND ENGINEERING, dba FOGGY.NET,** an Internet Service Provider, complain of Defendants **CONSUMERBARGAINGIVEAWAYS, LLC, an Illinois Limited Liability Company, dba OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM, CONSUMER REVIEW NETWORK, LLC, a Delaware Limited Liability Company, aka CONSUMERREVIEWNETWORK.COM,**

1 | **DIRECTGIFTCARDPROMOTIONS, LLC, an Illinois Limited Liability Company, dba**
2 | **LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM, JEFF M. ZWEBEN**
3 | **(hereinafter collectively referred to as "ADVERTISERS"), and DOES ONE through FIFTY,**
4 | **inclusive**, and alleges violations of *California Business and Professions Code* §17529.5(a)
5 | and request liquidated damages and attorney fees authorized as remedies under *California*
6 | *Business and Professions Code* §17529.5(b)(1)(B) and (C).

7 | <u>**JURISDICTION AND VENUE**</u>

8 |     1.    This Court has diversity jurisdiction of this action pursuant to 28 *USC* §1332 for
9 | disputes between citizens of different states where "the matter in controversy exceeds the sum
10 | or value of $75,000, exclusive of interest and costs." 28 *USC* §1332. The amount in
11 | controversy is $928,000.00, the Plaintiffs are citizens of California, and the Defendants are
12 | citizens of Illinois and Delaware.

13 |     2.    Defendants have purposely availed themselves of the privileges of conducting
14 | activities in the forum, the email advertisements are the subject of the action, and exercise of
15 | jurisdiction is reasonable since Defendants should have known that they would be subject to
16 | the jurisdiction and laws of the forum when **ADVERTISERS** had mass commercial email
17 | advertisements sent in violation of *California Business & Professions Code* §17529 to
18 | persons at Northern California Internet Service Providers. *Dole Food Co., Inc. v. Watts*, 303
19 | F.3d 1104 at 1112-1114 (9th Cir., 2002) (where the court found that a foreign corporation that
20 | communicated directly and substantially with the plaintiffs with the purpose of harming the
21 | plaintiffs had expressly aimed their acts at the forum state); *Asis Internet Services v.*
22 | *Imarketing Consultants, Inc.*, Slip Copy, 2008 WL 2095498 at *3 N.D.Cal.,2008 (where the
23 | court found specific jurisdiction based on defendant sending mass emails to persons in the
24 | forum); *Aitken v. Communications Workers of America*, 496 F.Supp.2d 653 at 659
25 | (E.D.Va., 2007); *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 at 611-620
26 | (E.D.Va., 2002); and *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773 at 779-780
27 | (S.D.Miss., 2001). These advertisements represent a request to do business with the intended
28 | recipients and establish contractual relationship with the intended recipients. These email

COMPLAINT FOR LIQUIDATED DAMAGES      2

advertisements therefore establish the existence of deliberate and continuing obligations with residents of the forum state, California. Therefore, Defendants: "has availed itself of the privilege of conducting business there, and because its activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require it to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 at 476 (1985).

3.    Venue is proper in this Court pursuant to 28 *USC* §1391(a)(2) and is founded on the fact that a substantial part of the unlawful actions of the Defendants occurred in this judicial district, that is the emails were sent to Email and Internet Service Providers in Garberville, California, and Eureka, California.

**FACTUAL ALLEGATIONS**

4.    Plaintiffs are informed and believe and based thereon allege that Defendant **CONSUMERBARGAINGIVEAWAYS, LLC,** is and was at all times relevant herein a business located at address 848 Dodge Avenue #313, Evanston, IL 60201. Plaintiffs are informed and believe and based thereon allege that Defendant **CONSUMERBARGAINGIVEAWAYS, LLC (hereafter "CBG")** is an Illinois Limited Liability Company.

5.    Plaintiffs are informed and believe and based thereon allege that Defendants, **CONSUMER REVIEW NETWORK, LLC dba CONSUMERREVIEWNETWORK.COM** is and was at all times relevant herein a business located at address 655 Deerfield Road #100-193 Deerfield, IL 60015. Plaintiffs are informed and believe and based thereon allege that Defendant **CONSUMER REVIEW NETWORK, LLC (hereafter "CRN")** is a Delaware Limited Liability Company.

6.    Plaintiffs are informed and believe and based thereon allege that Defendant **DIRECTGIFTCARDPROMOTIONS, LLC,** is and was at all times relevant herein a business located at address 4064 N. Lincoln #107, Chicago, IL 60618. Plaintiffs are informed and believe and based thereon allege that Defendant **DIRECTGIFTCARDPROMOTIONS, LLC (hereafter "DGCP")** is an Illinois Limited Liability Company.

7.    Plaintiffs are informed and believe and based thereon allege that Defendant

**JEFF M. ZWEBEN** is a resident of Evanston, Illinois, residing at 2119 Dewey Avenue, Suite B, Evanston, IL 60201, and that **JEFF M. ZWEBEN** is the owner, manager, and sole principal responsible for the daily activities of **CBG**, **CRN, and DGCP**.

8.    Plaintiffs are informed and believe and based thereon allege that Defendants **CRN** are in fact agents, partners, or employees of Defendants **CBG.**  See the WHOIS report for website **CONSUMERREVIEWNETWORK.COM** indicating ownership by **CBG** attached hereto as Exhibit "A."

8.    Plaintiffs are informed and believe and therefore allege that Defendants **OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM,** are aliases or agents for Defendant **CBG**.    (See the Terms and Conditions and the Privacy Policy for **OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM** which state:  "The OpinionResearchPanel Website is a media property owned by ConsumerBargainGiveaways, LLC, a leading online marketing company.", attached hereto as Exhibit "B."   In addition, see the WHOIS report for **OPINIONRESEARCHPANEL.COM** indicating ownership by **CBG** attached hereto as Exhibit "C."

9.    Plaintiffs are informed and believe and therefore allege that Defendants **LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM** are aliases or agents for Defendant **DGCP**.    (See the Terms and Conditions and the Privacy Policy for **LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM** which state:    "The LaptopReviewPanel Website is a media property owned by DirectGiftCardPromotions, LLC, a leading online marketing company." attached hereto as Exhibit "D."   In addition, see the WHOIS report for **LAPTOPREVIEWPANEL.COM** indicating ownership by **DGCP** attached hereto as Exhibit "E."

10.    Plaintiffs **ASIS INTERNET SERVICES and JOEL HOUSEHOLTER** do not know the true names and capacities of defendants **CONSUMERBARGAINGIVEAWAYS, LLC, dba OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM, CONSUMER REVIEW NETWORK, LLC aka CONSUMERREVIEWNETWORK.COM, DIRECTGIFTCARD-PROMOTIONS, LLC, dba LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM,**

**JEFF M. ZWEBEN, and DOES ONE through FIFTY, inclusive**, their business capacities, their ownership connection to the business(s), nor their relative responsibilities in causing the violations of *California Business and Professions Code* §17529.5 and other violations herein complained of, and alleges, on information and belief, a joint venture and common enterprise by all such defendants. Plaintiffs are informed and believe that each of the defendants herein, including **DOES ONE to FIFTY, inclusive**, is the agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, joint venture, partner, and associate, or such similar capacity, of each of the other defendants, and was at all times acting and performing, or failing to act or perform, with the authorization, consent, permission or ratification of each of the other defendants, and is responsible in some manner for the acts and omissions of the other defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described. Plaintiffs will seek leave to amend this Complaint when the true names, capacities, connections and responsibilities of defendants **CONSUMERBARGAINGIVEAWAYS, LLC, dba OPINIONRESEARCHPANEL aka OPINIONRESEARCHPANEL.COM, CONSUMER REVIEW NETWORK, LLC aka CONSUMERREVIEWNETWORK.COM, DIRECTGIFTCARDPROMOTIONS, LLC, LAPTOPREVIEWPANEL aka LAPTOPREVIEWPANEL.COM, JEFF M. ZWEBEN, and DOES ONE through FIFTY, inclusive**, are ascertained.

11.     Plaintiffs are informed and believe and therefore allege that all named Defendants, including **DOES ONE to FIFTY, inclusive**, conspired to commit the acts described herein, or alternatively, aided and abetted one another in the performance of the wrongful acts hereinafter alleged.

12.     Plaintiff **ASIS** is a California corporation registered to do business in California and is located in Garberville, California. **ASIS** provides Internet service and email service within the meaning of *California Business & Professions Code* §17529.5. **ASIS** received the emails at issue while performing services as an internet access provider and email service provider for its customers.

13.    Plaintiff **FOGGY** is a sole proprietorship located in Eureka, California.  **FOGGY** provides internet and email service within the meaning of ***California Business & Professions Code*** §17529.5.  **Foggy** received the emails at issue while performing services as an internet access provider and email service for its customers.

14.    Plaintiffs are informed and believe and based thereon allege that Defendants advertised in **597** commercial electronic mail advertisements sent to Plaintiff **ASIS'** protected computers from September 12, 2007, through September 27, 2008, containing header information that was falsified, misrepresented, or forged.

15.    Plaintiffs are informed and believe and based thereon allege that Defendants advertised in **331** commercial electronic mail advertisements sent to Plaintiff **FOGGY's** protected computers from August 22, 2007, through September 28, 2008, containing header information that was falsified, misrepresented, or forged.

16.    Plaintiffs are informed and believe and based thereon allege that Defendants advertised in **597** commercial electronic mail advertisements sent to Plaintiff **ASIS'** protected computers from September 12, 2007, through September 27, 2008, with a subject line that a person would know would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents and subject matter of the message.

17.    Plaintiffs are informed and believe and based thereon allege that Defendants advertised in **331** commercial electronic mail advertisements sent to Plaintiff **FOGGY's** protected computers from August 22, 2007, through September 28, 2008, with a subject line that a person would know would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents and subject matter of the message.

18.    Plaintiffs state that the email accounts that the **597** commercial emails sent to **ASIS** accounts did not solicit the emails.  Plaintiffs state that some of the email accounts that the **331** commercial emails sent to **FOGGY** accounts did not solicit the emails.  These emails were unsolicited because they were sent to unassigned or inactive email accounts owned by

ASIS and **FOGGY**.  **ASIS** did not solicit any product, service, or information from any entity using these email accounts.  **FOGGY** did not solicit any product, service, or information from any entity using these email accounts.

### FIRST CAUSE OF ACTION
**(Violation of *California Business and Professions Code* §17529.5
Unlawful activities relating to commercial email advertisements.)**

19.  Plaintiffs refer to the allegations of paragraphs 1 through 18 of this complaint and incorporate the same herein by this reference as though set forth in full.

20.  Plaintiffs are informed and believe and based thereon allege that all of the relevant electronic mails sent by or on behalf of the Defendants on August 22, 2007, through September 28, 2008, contained or were accompanied by header information that was materially false or materially misleading.  **891** of the **928 (597** to **ASIS** and **331** to **FOGGY)** messages indicated that they were from email accounts belonging to the recipients.  The remaining 37 from names are related to the subject of the emails, such as "Restaurant Savings", "Gift Card Notice", and "Gas for a year".  The **891** emails contain 'from names' on the emails that indicate the emails were from the persons receiving the emails.  In all cases, the from header information contained a different email account in the sender Id field that was obviously stolen or does not exist.  For example, the email in sample 1 indicates the email is both from "catskinner@asis.com" to "catskinner@asis.com".  See Sample emails in Exhibit "F." The sender id information indicates the email is from "mejnryhopw@amazon.com" a user at amazon.com.  However, the IP address in all but one of the email header indicates the email was sent from a Verizon Internet service IP address.  The one email IP address not from Verizon comes from PenTeleData, Inc., a cable provider of DSL.  These IP addresses are assigned to DSL Internet customers.  These computers are consumer DSL personal computers.  See Exhibit "G for the IP addresses and its owner listed as sending IPs in the emails.  All of the emails appear to come from consumer IP addresses, however, the sending domain names are from well known companies such as "dell.com", "sun.com", "borland.com", "microsoft.com", "google.com", "ibm.com", etc.  See Exhibit "H" for a complete list of sending domain names.  See Exhibit "I" for ARIN information regarding the company IP addresses for

the domains contained in the sender id fields.  All of these well known companies have their own IP address blocks that do not coincide with the Verizon or PenTeleData blocks.  Therefore the sending email accounts were either stolen or are forged and the true sender of the emails cannot be identified by the header information.  Forging the recipient's name in the sending name field indicates a clear intent to trick the recipient and possibly the email service providers filtering software into thinking the emails are safe and from a known source.  Therefore, the electronic mail violated *California Business and Professions Code* §17529.5(a)(1) and (2).

9.      Plaintiffs further allege that the Defendants sent or had sent  **928** (**597** to **ASIS** and **331** to **FOGGY)** separate unsolicited electronic mail advertisements to plaintiffs' computers that include various subject lines that were false and misleading and would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message in violation of *California Business and Professions Code* §17529.5(a)(3).  Plaintiffs allege that the "circumstances" required are plainly visible in the actual subject lines of the emails.  The email subject lines received by Plaintiffs were clearly intended to get someone to open the email by enticing them with free gifts such as: "Your JCPenny 500 USD Gift Card!", " CONFIRMATION: We have your $100 Visa Gift Card ready to ship!", "[QUAR] You were chosen to receive a $500 JCPenney Gift Card!", and "[QUAR] Your $500 JCPenney Holiday Gift Card Expiring Soon"  See Sample emails in Exhibit "F" and see a complete list of subject lines appearing the emails at Exhibit "J." 15 *USC* §45 is titled "Unfair methods of competition unlawful; prevention by Commission," and enables the Federal Trade Commission to issue orders regarding unfair trade practices.  15 *USC* §45(d) provides that the orders of the Commission are exclusive unless overturned by the United States Court of Appeals.   The FTC has issued 16 *CFR* part 251, "Guide concerning use of the word 'free' and similar representations."  16 *CFR* Part 251 states that the terms of the offer should be set out clearly and conspicuously at the outset of the offer so that no misunderstanding can occur. Most of the email subject lines represent that the recipient has received a free gift.  Some state that participation is required.  16 *CFR* part 251 clearly states that the requirements for participation must appear within the same page of the offer and must

COMPLAINT FOR LIQUIDATED DAMAGES                    8

1   be conspicuous.  None of the emails describe any terms or conditions on the first page.  Some

2   of the emails contain, on the second page of the email, a summary of requirements.  Once the

3   recipient clicks on the active links in the email they are taken to one of several landing pages

4   where they must submit email information to continue.  See Exhibit "K" Landing Page 1.  At

5   this point they are given an opportunity to review the Privacy Policies and Terms and

6   Conditions to acquire the free gifts.  See Exhibit "L" Privacy policies and Terms & Conditions

7   for **CONSUMERREVIEWNETWORK.COM**.  After entering their information, the recipient is

8   taken to a second page where they are required to provide detail personal information and told

9   to receive their gift they must: "1) Register with valid information; 2) Complete the user survey;

10  3) Complete at least 2 Silver,1 Gold, and 1 Platinum offers (available reward offers will vary).

11  Some reward offers require a purchase. Credit card offers may require you to activate the card

12  by making a purchase, transferring a balance or taking a cash advance.  Click on the following

13  links to go directly to the reward offer pages: Silver, Gold, Platinum); 4) follow the redemption

14  instructions. All program requirements must be completed within 120 days of the date of

15  registration. Allow 6-8 weeks for delivery. Limit of one (1) gift per household. No cash

16  redemption value."  See Exhibit "M" **CONSUMERREVIEWNETWORK.COM** Landing page 2.

17  Nowhere in the email is the recipient alerted what or how much the free gift will cost.  The

18  subject lines are clearly intended to trick the recipients into thinking they are getting a free gift

19  in order to entice them into opening and responding to the emails.  The email subject lines are

20  in violation of 16 **CFR** part 251 and therefore in violation of *California Business and*

21  *Professions Code* §17529.5(a)(3).

22      21.     As a proximate result of said unlawful conduct by said Defendants, Plaintiffs are

23  entitled to liquidated damages in the amount of $1,000.00 for each unsolicited commercial

24  email transmitted in violation of *California Business and Professions Code* §17529.5(a) as

25  set forth in *California Business and Professions Code* §17529.5(b)(1)(B)(ii).

26      22.     Plaintiffs furthermore seek their attorney fees and costs against the defendants

27  pursuant to *California Business and Professions Code* §17529.5(b)(1)(C).

28      **WHEREFORE**, plaintiffs pray judgment against the defendants and each of them as

COMPLAINT FOR LIQUIDATED DAMAGES                    9

follows:

1. For liquidated damages of $1,000.00 for each violation of **California Business and Professions Code** §17529.5(a) in the sum of **$928,000**;

5. For an award of reasonable attorneys' fees and costs according to proof;

6. For costs of suit; and

7. For such other and further relief as this Courts deems just and proper.

**SINGLETON LAW GROUP**

Dated: October 17, 2008    /s/ Jason K. Singleton
Jason K. Singleton
Richard E. Grabowski,
Attorneys for Plaintiffs, **ASIS INTERNET SERVICES and JOEL HOUSEHOLTER, dba FOGGY.NET**

**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a jury for all claims for which a jury is permitted.

**SINGLETON LAW GROUP**

Dated: October 17, 2008    /s/ Jason K. Singleton
Jason K. Singleton
Richard E. Grabowski
Attorneys for Plaintiffs, **ASIS INTERNET SERVICES and JOEL HOUSEHOLTER, dba FOGGY.NET**

COMPLAINT FOR LIQUIDATED DAMAGES     10

Exhibit F

ORIGINAL

1  Jason K. Singleton, State Bar #166170
   jason@singletonlawgroup.com
2  Richard E. Grabowski, State Bar #236207
   rgrabowski@mckinleyville.net
3  SINGLETON LAW GROUP
   611 "L" Street, Suite A
4  Eureka, CA 95501

5  (707) 441-1177
   FAX 441-1533

6  Attorneys for Plaintiff, ASIS INTERNET SERVICES

**NO SUMMONS ISSUED**

**FILED**
San Francisco County Superior Court

JUN - 2 2010

CLERK OF THE COURT
BY: _____ Deputy Clerk

**CASE MANAGEMENT CONFERENCE SET**

NOV - 5 2010 - 9:00 AM

DEPARTMENT 212

7              CALIFORNIA SUPERIOR COURT

8              SAN FRANCISCO COUNTY

9

10  ASIS INTERNET SERVICES, a California          )   Case No.  **CGC-10-500363**
    corporation                                   )
11                                                )
                                                  )   COMPLAINT FOR VIOLATIONS OF
12          Plaintiff,                            )   *CALIFORNIA BUSINESS &*
    vs.                                           )   *PROFESSIONS CODE §17529.5*
13                                                )
    MEMBER SOURCE MEDIA, LLC, a California        )   DEMAND FOR JURY TRIAL
14  limited liability company, dba ONLINE         )
    REWARD GROUP (aka                             )
15  ONLINEREWARDGROUP.COM), also dba              )
    GREAT AMERICAN GIVEAWAYS (aka                 )
16  GREATAMERICANGIVEAWAYS.COM), also             )
    dba CONSUMER GAIN (aka                        )
17  CONSUMERGAIN.COM), and DOES ONE               )
    through FIFTY, inclusive,                     )
18                                                )
                                                  )
19          Defendants.                           )
                                                  )
20  _____ )

21          Plaintiff **ASIS INTERNET SERVICES, a California corporation,** and a provider of

22  Internet Access and Email Services, complains of Defendants **MEMBER SOURCE MEDIA,**

23  **LLC, a California limited liability company, dba ONLINE REWARD GROUP (aka**

24  **ONLINEREWARDGROUP.COM), also dba GREAT AMERICAN GIVEAWAYS (aka**

25  **GREATAMERICANGIVEAWAYS.COM), also dba CONSUMER GAIN (aka**

26  **CONSUMERGAIN.COM), and DOES ONE through FIFTY, inclusive**, and alleges violations

27  of the *California Business and Professions Code* §17529.5(a) and requests liquidated

28  damages, aggravated damages, and attorney fees authorized as remedies under *Business*

COMPLAINT FOR LIQUIDATED DAMAGES                    1

*and Professions Code* §17529.5(b)(1)(B) as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff **ASIS** is a California corporation registered to do business in California and is located in Garberville, California.  **ASIS** provides Internet access service and email service within the meaning of *Business & Professions Code* §17529.5.

2.      Plaintiff is informed and believes and therefore alleges that Defendant **MEMBER SOURCE MEDIA, LLC,** (hereinafter **"MSM"**) which maintains offices at 1322 Maple Street, San Mateo, California, according to representations made to the Secretary of State of California.  The Secretary of State of California also lists an agent for service for **MEMBER SOURCE MEDIA, LLC,** in California.  The other **dba's** named in this suit are copyrighted brand names owned by **MEMBER SOURCE MEDIA, LLC.**    (See **Exhibit "A"** California Secretary of State Business Portal Report, and **Exhibit "B"** Terms and Conditions from each of the websites for the Brand Names stating that they are owned by **MEMBER SOURCE MEDIA, LLC**).  Plaintiff is informed and believes and therefore alleges that Defendant **MSM** is a California Limited Liability Company.  (see **Exhibit "A"**)  Defendant **MSM** is believed to be a limited liability company or the agent of a limited liability company or partnership providing internet marketing services to retailers selling to residents of the United States and California over the internet.

3.      Plaintiff is informed and believes and therefore alleges that Defendants **ONLINE REWARD GROUP (aka ONLINEREWARDGROUP.COM), also dba GREAT AMERICAN GIVEAWAYS (aka GREATAMERICANGIVEAWAYS.COM), also dba CONSUMER GAIN (aka CONSUMERGAIN.COM),** are aliases or agents for Defendant **MSM, LLC.**    (See the Terms and Conditions from the web sites of each dba stating the relationship between the parties attached hereto as **Exhibit "B"**).

4.      **Jurisdiction**.  This Court has jurisdiction of this action for violations of the *California Business and Professions Code* §17529.5, based on *Code of Civil Procedure* §410.10.  The Court has in persona jurisdiction as Defendant is an LLC registered in California with offices in California, County of San Francisco.  The Court has subject matter jurisdiction

over violations of state law.  This case was initially brought before the Northern District of California Federal Court based on federal subject matter jurisdiction relating to violations of the *CAN SPAM Act of 2003* with supplemental jurisdiction over state claims arising under *California Business and Professions Code* §17529.5.  After dismissing the *CAN SPAM Act of 2003* and partially dismissing the *California Business and Professions Code* §17529.5, but not the issues presented here, the Federal Court declined supplemental jurisdiction over the remaining issues and dismissed without prejudice those claims.  Plaintiff complains of the remaining claims.  Attached hereto as **Exhibit "C"** is a copy of the final Order and Judgment of the Federal Court on this matter.

5. **Venue.**  This Court is the proper court, under *Code of Civil Procedure* §395.5(a), as Defendant **MSM, LLC** maintains its offices in San Francisco County.

6. Plaintiff **ASIS INTERNET SERVICES (hereafter "ASIS")** does not know the true names and capacities of Defendants **MSM and DOES ONE to FIFTY, inclusive**, their business capacities, their ownership connection to the business(s), nor their relative responsibilities in causing the violations herein complained of, and alleges, on information and belief, a joint venture and common enterprise by all such defendants.  Plaintiff is informed and believes that each of the defendants herein, including DOES ONE to FIFTY, inclusive, is the agent, ostensible agent, master, servant, employer, employee, representative, franchiser, franchisee, joint venturer, partner, and associate, or such similar capacity, of each of the other defendants, and was at all times acting and performing, or failing to act or perform, with the authorization, consent, permission or ratification of each of the other defendants, and is responsible in some manner for the acts and omissions of the other defendants in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described.  Plaintiff will seek leave to amend this Complaint when the true names, capacities, connections and responsibilities of defendants **MSM and DOES ONE to FIFTY, inclusive**, are ascertained.

7. Plaintiff is informed and believes and therefore alleges that all named defendants, including **DOES ONE to FIFTY, inclusive**, conspired to commit the acts

1  described herein, or alternatively, aided and abetted one another in the performance of the

2  wrongful acts hereinafter alleged.

3      8.   Plaintiff is informed and believes and therefore alleges that Defendants sent or

4  caused to have sent **1370** commercial electronic mail messages from **March 3, 2006, through**

5  **December 15, 2007**, to Plaintiff **ASIS'** servers, protected computers, containing, and/or

6  accompanied by subject lines  that were materially false or materially misleading and would be

7  likely to mislead a recipient, acting reasonably under the circumstances.

8      9.   Plaintiff received Defendant's emails and Plaintiff has suffered harm from the

9  sending and receipt of Defendant's emails.  Plaintiff states that it was harmed by having to

10  process the emails over its servers and by having its agents investigate the offending emails.

11  Plaintiff's web site has a clear notice that misuse of its resources is prohibited:

12    "ASIS provides the use of its equipment and services for the
       exclusive use of its subscribing customers. ASIS prohibits the use
13     of its equipment and services by anyone other than its subscribing
       customers for any purpose unless specifically authorized by ASIS
14     in writing. ASIS specifically prohibits the use of its equipment and
       services, including but not limited to mail servers, for delivery,
15     transmission, or re-transmission of unsolicited commercial emails
       (UCE) or unsolicited bulk emails (UBE)."
16

17  See **ASIS' Acceptable Use Policy** at www.asis.com, a copy of which is attached hereto as

18  **Exhibit D**.

19      10.  Plaintiff ASIS was harmed by Defendant's emails in the following manner:

20         a.   ASIS received the emails at issue in this suit, processed those emails

21              through its SPAM filtering service Postini; processed the emails through its

22              email server; preserved the emails on its servers, and transferred the

23              emails to its attorneys as evidence in this case.  See Declaration of Nella

24              White, President of ASIS, filed concurrently herewith, (hereafter "Dec of

25              NW") ¶2.

26         b.   ASIS estimates that a third of its' employees' time is spent on customer

27              spam complaints and technical issues, such as modifications to individual

28              customer account filtering to reduce SPAM and avoid false positives.

ASIS spends a considerable amount of time in sender authentication, a process where ASIS stops its users or users who have been taken over as zombies, from sending SPAM to other sites.   This is an industry wide problem as any ISP that is discovered allowing their customers to send SPAM will be blocked by the other ISPs.   As the level of SPAM has increased since 2005 the sender authentication process has become increasingly burdensome to avoid email blockage by the network.  Dec of NW ¶3.

c.      ASIS estimates that the prevention of SPAM costs about $3000 per month in SPAM filtering costs and employee time.  Dec of NW ¶4.

d.      In 2005 ASIS increased its computer server capacity and network capacity as a result of the spam emails it has received in the last several years and collocated its servers with Falcon Knight hosting and administration services.  As part of its contract with Falcon Knight, ASIS has contracted for on demand bandwidth increases to cover network spikes caused by SPAM.  ASIS has not exceeded its on demand limits and has not had to pay excess fees beyond the fixed costs of the contract since 2005.   In 2007, ASIS changed its email server from SENDMAIL to Postfix to upgrade its services to process and capture SPAM email that was evading the Postini filtering service and going directly to customers.  Dec of NW ¶5.

e.      ASIS incurs network and processor slow downs occasionally as a result of constantly increasing SPAM loads.  Dec of NW ¶6.

11.     Plaintiff is informed and believes and therefore alleges that Defendant sent or caused to have sent **1370** commercial electronic mail messages from **March 3, 2006, through December 15, 2007,** to Plaintiff **ASIS'** servers with a subject line that a person would know would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents and subject matter of the message.

12.    Plaintiff states that the email accounts that the **1370** commercial emails sent to **ASIS** accounts did not solicit the emails.  These emails were unsolicited because they were sent to unassigned or inactive email accounts owned by **ASIS** that are accessed on a daily basis by **ASIS's** computers and investigators in California.  **ASIS** did not solicit any product, service, or information from any entity using these email accounts.

## FIRST CAUSE OF ACTION
### (Violation of *California Business and Professions Code* §17529.5
### Unlawful activities relating to commercial email advertisements.)

13.    Plaintiff hereby incorporates by reference the preceding paragraphs, inclusive, as if the same were fully set forth herein.

14.    Plaintiff is informed and believes and therefore alleges that all **1370** of the relevant electronic mail advertisements sent by or on behalf of the Defendant to plaintiff's computers on **March 3, 2006, through December 15, 2007**, are separate unsolicited electronic mail advertisements that include various subject lines that were false and misleading and would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message in violation of *Business and Professions Code* §17529.5(a)(3).  Plaintiff alleges that the "circumstances" required are plainly visible in the actual subject lines of the emails.  The email subject lines received by Plaintiff were clearly intended to get someone to open the email by enticing them with free gifts such as: "WAL*MART(R) 500 Dollar Gift Card Inside," "Second Attempt: WAL*MART (R) 500 Dollar Gift Card Inside," "Claim your Complimentary American Idol $500 Visa Gift Card Now" and "Second Attempt: Victoria's Secret (R) Gift Card Inside" in the subject lines.  See **Exhibit "E"** for a complete list of the email subject lines with a count of how many emails were sent with each subject line.  No gift card was contained in the email, only an advertisement and a link to Defendant's web sites.  None of the emails contained the actual terms or requirements for receiving the free gift, some of the emails contained a statement that there were additional terms, but not what those terms were.  The email subject lines received by Plaintiff were clearly intended to get someone to open the email by enticing them with free gifts.  See **Exhibit "F"** for sample printed emails, the entire set of emails is attached hereto as **Exhibit**

1   **"G"** on CD with instructions for viewing.  (Note that all receiving email accounts have been

2   redacted, while these email all represent inactive email accounts they are still the property of

3   **ASIS** and are protected by corporate privilege.)

4        15.    The California courts have determined that the standard for false advertisements

5   under the California False Advertising Act (***Business and Professions Code*** §17500 et seq.)

6   is the reasonable consumer standard and all that is necessary to prevail is a showing that a

7   reasonable consumer would be deceived or mislead.  (***Colgan v. Leatherman Tool Group,***

8   ***Inc.*** (2006) 135 Cal. App. 4th 663 at  682 [38 Cal. Rptr. 3d 36].) The California Courts have

9   further found that the Federal Trade Commission has used the reasonable consumer standard

10  in development of their rules concerning false advertising and that those rules apply.  (***Lavie v.***

11  ***Procter & Gamble Co.*** (2003) 105 Cal.App.4th 496, 512-513 [129 Cal.Rptr.2d 486]).  15 ***USC***

12  §45 is titled "Unfair methods of competition unlawful; prevention by Commission," and enables

13  the Federal Trade Commission to issue orders regarding unfair trade practices.  15 ***USC***

14  §45(d) provides that the orders of the Commission are exclusive unless overturned by the

15  United States Court of Appeals.  The FTC has issued 16 ***CFR*** part 251, "Guide concerning use

16  of the word 'free' and similar representations."  16 ***CFR*** Part 251 states that the terms of the

17  offer should be set out clearly and conspicuously at the outset of the offer so that no

18  misunderstanding can occur.  All of the emails subject lines represent that the recipient has

19  received a free gift or that there is a gift card enclosed.  Some state that participation is

20  required within the email but provide no details.  16 ***CFR*** part 251 clearly states that the

21  requirements for participation must appear within the same page as the offer and must be

22  conspicuous.  Nowhere in the email are the terms for receiving a free gift.  Therefore, the

23  advertiser has failed to comply with the requirements for use of a free offer by failing to provide

24  the terms for receipt of the free offer conspicuously and in close proximity (on the same page)

25  to the free offer.   Once the recipient clicks on the claim button in the email they are taken to a

26  site where they are required to enter their email address.  See **Exhibit "H"** Landing Page 1.

27  After entering their email information they are taken to a second page where they are required

28  to provide extensive personal information.  See **Exhibit "I"** Landing Page 2.  Even on these

COMPLAINT FOR LIQUIDATED DAMAGES       7

pages they are not provided the terms of the program, they must instead click on the Terms and Conditions at the bottom of the page where they are finally taken to a web page where the Terms are provided.   See **Exhibit "B"** T&Cs for the various sites.  Nowhere in the email is the recipient alerted to the conditions of the program.  The emails are in violation of 16 *CFR* part 251 and therefore in violation of *Business and Professions Code* §17529.5(a)(3).  This also represents a violation of 16 *CFR* part 238, Section 238.2 Initial Offer, which states:

> "(a) No statement or illustration should be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, the purchaser may be switched from the advertised product to another; (b) Even though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception."

The advertisements clearly state they are about getting a free gift, when in fact they are an advertisement to join a membership program for subscribing to various businesses and to make purchases.  Therefore, the emails are in violation of 16 *CFR* part 238 Section 238.2 and are false advertisements.

16.    Plaintiff is informed and believes and based thereon alleges that these email advertisements are a clear attempt at "bait and switch" advertising intended to fleece the California consumer.  The bait is provided by the offer of a free gift and the switch is the undisclosed requirement to join Defendant's membership program, provide significant personal information, and purchase products or sign up for credit cards and other services.

17.    *Business and Professions Code* §17529.5 is part of the California False Advertising Law (*Business and Professions Code* §17500 et seq.) and requires that the plaintiff allege falsification, misrepresentation, or forgery.   The California courts have interpreted this language to mean that the plaintiff must plead averments of fraud.  Fraud as it relates to The California False Advertising Law is defined by the courts as requiring a showing of misrepresentation or deceit, knowledge and intent.  (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663 at 682 [38 Cal.Rptr.3d 36].)

18.   Plaintiff is informed and believes and based thereon alleges that Defendant advertised in the **1370** subject emails with misleading or deceptive statements, knowledge, and intent to deceive.  Plaintiff is informed and believes and based thereon alleges that the false subject lines as discussed above would deceive a reasonable consumer by tricking them into thinking they are getting a free gift, and by concealing the information that they must sign up for multiple product offers to get that free gift.

19.   Plaintiff is informed and believes and based thereon alleges that hundreds of emails containing misrepresentations, in the form of misleading or deceptive statements in the subject lines, were sent to multiple email accounts at Plaintiff's email service with the knowledge of the Defendant, indicating an intent to deceive.

20.   The actual terms and conditions for getting the free gift cards are not included anywhere in the email.   Further, once a party goes to the landing page, they must enter their email address and agree to the terms of the promotion without even knowing what the terms are.  Plaintiff is informed and believes and based thereon alleges an intent to deceive by failing to correct misrepresentations when the opportunity arises.

21.   If one submits their email ID, then one is taken to a web page where they must provide significant personal information and then to another web page where they must buy or accept a certain number of offers prior to receiving their "Free Gift".  See **Exhibits "H"** and **"I"** for the Landing pages.  Plaintiff is informed and believes and based thereon alleges Defendant intended deceit by not informing the recipient in the email that they were going to be required to buy or accept various products in order to receive the free gift.

22.   All of the advertisements were addressed to consumer accounts with domain names owned by ASIS and sent to ASIS' email server.  Plaintiff is informed and believes and based thereon alleges Defendant's knowledge of where the advertisements were being sent based on the header information in the subject emails.  Plaintiff is informed and believes and based thereon alleges Defendant's knowledge of the content of the advertisements based on the copyright notice for the various brands contained in the emails.  See **Exhibit "F"** for sample emails.

23.     As a proximate result of said unlawful conduct by said Defendant, Plaintiff was harmed and incurred actual damages in the form of costs of receiving, processing, and storing the emails at issue in this matter.

24.     As a proximate result of said unlawful conduct by said Defendant, Plaintiff is entitled to liquidated damages in the amount of $1,000.00 for each unsolicited commercial email transmitted in violation of **California Business and Professions Code** §17529.5(a) as set forth in **Business and Professions Code** §17529.5(b)(1)(B)(ii).

25.     Plaintiff furthermore seeks its attorney fees and costs against the defendant pursuant to **Business and Professions Code** §17529.5(b)(1)(C).

**WHEREFORE**, plaintiff prays judgment against the defendants and each of them as follows:

1.     For liquidated damages of $1000.00 for each violation of **Business and Professions Code** §17529.5(a) in the sum of **$5,564,000**;

2.     For an award of reasonable attorneys' fees and costs according to proof;

3.     For costs of suit; and

4.     For such other and further relief as this Courts deems just and proper.

**SINGLETON LAW GROUP**

Dated:     May 11, 2010

_____

Jason K. Singleton
Richard E. Grabowski, Attorneys for Plaintiff,
**ASIS INTERNET SERVICES**

**REQUEST FOR JURY TRIAL**

Plaintiff hereby requests a jury for all claims for which a jury is permitted.

**SINGLETON LAW GROUP**

Dated:     May 11, 2010

_____

Jason K. Singleton
Richard E. Grabowski, Attorneys for Plaintiff,
**ASIS INTERNET SERVICES**

Exhibit G

1
2
3
4
5            UNITED STATES DISTRICT COURT

6            NORTHERN DISTRICT OF CALIFORNIA

7

8   ASIS INTERNET SERVICES,                    No. C-08-1321 EMC

9            Plaintiff,

10        v.                                   **ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SECURITY FOR COSTS;
11   MEMBER SOURCE MEDIA, LLC,                 AND SETTING CASE MANAGEMENT
                                               SCHEDULE**
12            Defendant.
                                               **(Docket No. 7)**
13   _____/

14

15        Both the CAN-SPAM (Controlling the Assault of Non-Solicited Pornography and

16   Marketing) Act of 2003 and California Business and Professions Code § 17259 restrict the use of

17   unsolicited commercial email.  Plaintiff ASIS Internet Services has filed suit against Defendant

18   Member Source Media, LLC, asserting claims pursuant to both statutes.  Currently pending is

19   Member Source's motion for security for costs, including attorney's fees.  Member Source asks that

20   the Court order ASIS to post security in the amount of $200,000.  Having considered the parties'

21   briefs and accompanying submissions, the oral argument of counsel, and all other evidence of

22   record, the Court hereby **GRANTS** Member Source's motion for security.  However, the Court shall

23   require ASIS to post security in the amount of $7,500 only, for the reasons discussed below.

24                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

25   A.    Parties

26        In its complaint, ASIS alleges that it is a California corporation that provides Internet access.

27   *See* Compl. at 1.

28

**United States District Court**
For the Northern District of California

In support of its motion for security, Member Source has submitted evidence that it "is an Internet marketing company, which assists clients such as Blockbuster, Discover Card, and Columbia House in the online promotion of their goods and services." Sommer Decl. ¶ 2.

B.  <u>Complaint</u>

In its complaint, ASIS alleges that, from March 2006 through January 2008, Member Source sent or caused the sending of 5,006 commercial email messages to ASIS servers which contained (1) header information that was materially false or misleading and (2) a subject line that was deceptive. *See* Compl. ¶¶ 9, 11. The 5,006 emails that were sent were not solicited because they were sent to unassigned or inactive email accounts owned by ASIS. *See id.* ¶ 12.

ASIS also alleges in its complaint that Member Source (1) "used a harvest and directory [sic] attack" to acquire the email accounts to send the 5,006 emails and (2) "used an automated creation of multiple email accounts" to send the 5,006 emails. *Id.* ¶¶ 15-16.

According to ASIS, in doing the above, Member Source violated both the CAN-SPAM Act, *see* 15 U.S.C. §§ 7704(a)(1)-(2), (b)(1)-(2), as well as California law. *See* Cal. Bus. & Prof. Code § 17529.5.

C.  <u>Other Litigation Filed by ASIS</u>

In addition to this case, ASIS has filed seven other lawsuits in this District, also alleging violations of the CAN-SPAM Act and/or California Business & Professions Code § 17529.5. Those cases are as follows:

(1)  *ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS (filed on 12/12/2005).

(2)  *ASIS Internet Servs. v. Valueclick, Inc.*, No. C-07-3261 PJH (filed on 6/21/2007).

(3)  *ASIS Internet Servs. v. Azoogle.com, Inc.*, No. C-07-4630 JCS (filed on 9/7/2007).[1]

(4)  *ASIS Internet Servs. v. Imarketing Consultants, Inc.*, No. C-07-5357 CW (filed on 10/19/2007).

(5)  *ASIS Internet Servs. v. All In, LLC*, No. C-07-5717 JSW (filed on 11/9/2007).

---

[1] This case was recently reassigned from Judge Patel to Judge Spero. *See* Docket No. 32 (No. C-07-4630 JCS).

United States District Court
For the Northern District of California

(6)    *ASIS Internet Servs. v. Active Response Group, Inc.*, No. C-07-6211 TEH (filed on 12/07/2007).

(7)    *ASIS Internet Servs. v. Pure Ads, LLC*, No. C-08-1566 SC (filed on 3/21/2008).

A motion for security was filed by one of the defendants in the first case (*i.e.*, No. C-05-5124 JCS) while Judge Wilken was still the presiding judge. Judge Wilken denied the motion for security because (1) the defendant was not likely to succeed on the merits and because (2) "this is a new area of law in which the scope of liability is not clear" and "requiring Plaintiff to post a security bond at this juncture could chill private enforcement of anti-spam laws." *ASIS Internet Servs. v. Optin Global, Inc.*, No. C-05-5124 JCS (Docket No. 72) (Order at 17, filed on 6/30/2006).

Out of the seven cases above, there has been a ruling on the merits in only one, that is, the first case (*i.e.*, No. C-05-5124 JCS). In that case, Judge Spero granted the defendant's motion for summary judgment and denied ASIS's, concluding that ASIS lacked standing to pursue its case. The defendant has filed a bill of costs in the action (approximately $38,000), *see id.* (Docket No. 409), and has also filed a motion for sanctions, including attorney's fees (approximately $912,000). *See id.* (Docket Nos. 411, 416).

## II.    <u>DEFENDANT'S MOTION FOR SECURITY</u>

A.    <u>Authority for Requiring the Posting of Security</u>

In its motion, Member Source asks that the Court order ASIS to post security in the amount of $200,000 to cover any costs, including attorney's fees, that may be assessed in the future. ASIS does not challenge Member Source's assertion that this Court has the authority to require security pursuant to:

(1)    the CAN-SPAM Act, *see* 15 U.S.C. § 7706(g)(4) (stating that, if a provider of Internet access service brings a civil action, then "the court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorney's fees, against any party");

(2)    the Civil Local Rules, *see* Civ. L.R. 65.1-1 (stating that, "where authorized by law and for good cause shown, the Court may require any party to furnish security for costs which can be awarded against such party"); and

(3)   the Court's inherent powers.  *See In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987) (stating that "[f]ederal courts have inherent authority to require plaintiffs to post security for costs"); *see also Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994) (same); *Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986) (stating that "[s]ecurity for costs is not covered by Rule 54(d)" and "is a proper subject for regulation by local rules"; adding that, in the absence of a local rule, "a district court has inherent power to require security for costs when warranted by the circumstances of the case").

Security for fees (as opposed to costs) is authorized only pursuant to the CAN-SPAM Act.

Furthermore, the parties agree that, whether pursuant to the CAN-SPAM Act, the Civil Local Rules, and/or the Court's inherent powers, the relevant factors for the Court to consider in determining whether to require security include as follows:

(1)   the financial condition and ability to pay of the plaintiff;

(2)   whether the plaintiff is a nonresident or foreign corporation and whether there is attachable property of the plaintiff within the district;

(3)   the merits of the plaintiff's underlying claims;

(4)   the background and purpose of the plaintiff's suit;

(5)   the legal costs expected to be incurred by the defendant (*e.g.*, whether substantial costs may be incurred by the defendant in preparation for trial) and the extent and scope of discovery;

(6)   the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective and from the plaintiff's perspective; and

(7)   the plaintiff's compliance with past court orders.

*See also Simulnet*, 37 F.3d at 576; *Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, No. 03 Civ. 10254 (JFK), 2008 U.S. Dist. LEXIS 3227, at *4 (S.D.N.Y. Jan. 15, 2008); *Jones v. Haga*, No. 05-cv-02268-PSF-CBS, 2006 U.S. Dist. LEXIS 19870, at *7 (D. Colo. Apr. 13, 2006); *Internet Billions Domains, Inc. v. Venetian Casino Resort, LLC*, No. 01-5417, 2002 U.S. Dist. LEXIS 11805, at *10 (E.D. Pa. May 31, 2002).

4

United States District Court

For the Northern District of California

1    Some courts have held that a plaintiff's inability to pay is sufficient in and of itself to require

2  the posting of a bond.  *See Sea Trade*, 2008 U.S. Dist. LEXIS 3227, at *6-7.  On the other hand, the

3  Ninth Circuit has cautioned that, "[i]n requiring a security bond for defendants' costs, care must be

4  taken not to deprive a plaintiff of access to the federal courts.  To do so has serious constitutional

5  implications.  Our statutes and case law make it evident that we studiously avoid limitation of access

6  to the courts because of a party's impecunious circumstance."  *Simulnet*, 37 F.3d at 575-76.

7  B.    Application of Factors

8         1.    Plaintiff's Financial Condition and Ability to Pay

9    Member Source asserts that it has serious concerns about ASIS's financial condition and

10  ability to pay based on conversations that its counsel had with ASIS's counsel during the Judge

11  Spero case.  According to counsel for Member Source, during the Judge Spero case, "counsel for

12  ASIS stated to [him], *on multiple occasions*, most recently during an April 10, 2008 telephone call,

13  that should ASIS be forced to pay costs and/or attorneys' fees in [the Judge Spero] case ASIS would

14  declare bankruptcy."  Burgoyne Decl. ¶ 14 (emphasis in original).

15    In its opposition, ASIS claims that the above statement by counsel for Member Source is

16  inaccurate, *see* Opp'n at 2, but there is no evidence to support ASIS's claim.  Notably, nowhere in

17  his declaration does ASIS's counsel state such.  ASIS also argues that the Court should not consider

18  the statement by counsel for Member Source because the conversations between counsel were made

19  during the course of settlement discussions.  *See* Singleton Decl. ¶ 4; Opp'n at 2 (citing Federal Rule

20  of Evidence 408).  But Rule 408 is not applicable here.  Under the rule, statements made during a

21  settlement negotiation are not admissible "to prove liability for, invalidity of, or amount of a claim

22  that was disputed as to validity or amount."  Fed. R. Evid. 408(a).  They are, however, admissible if

23  offered for purposes other than these.  *See* Fed. R. Evid. 408(b).  Here, Member Source is not using

24  the evidence of ASIS's inability to pay as evidence of the invalidity of ASIS's CAN-SPAM and

25  related state law claims, and therefore the evidence may be considered.  And even if this evidence

26  could not be considered, the Court could still take into account ASIS's representation (albeit made

27  without any supporting evidence) that it is not financially able to post a bond in the amount of

28  $200,000.  Opp'n at 2.

**United States District Court**
For the Northern District of California

In light of the declaration submitted by Member Source's counsel as well as ASIS's representation that it is not financially able to post a bond in the amount of $200,000, the Court finds that this factor weighs in favor of Member Source. The Court gives no weight to ASIS's claim that it has gross yearly revenues in the hundreds of thousands of dollars, *see* Opp'n at 2 -- (1) because ASIS provides no evidence to back up this claim and (2) because the claim is undercut by ASIS's statement (again, made without any supporting evidence) that its yearly profits are "pedestrian." Opp'n at 2.

2. <u>Whether Plaintiff is Nonresident or Foreign Corporation; and Whether There is Attachable Property of Plaintiff Within District</u>

This factor weighs against Member Source since ASIS is a California corporation. Since ASIS is a California corporation, presumably, it has attachable property within the District, which also makes this factor weigh against Member Source.

3. <u>Merits of Plaintiff's Underlying Claims</u>

Under the CAN-SPAM Act, a provider of Internet access service "adversely affected" by a violation of 15 U.S.C. § 7704(a)(1) or (b), *or* a pattern or practice that violates § 7704(a)(2), may bring a civil action in federal court. 15 U.S.C. § 7706(g)(1).

In its complaint, ASIS asserts that Member Source violated the CAN-SPAM Act in four ways:

(1) by sending or causing the sending of 5,006 commercial emails to ASIS's servers containing header information that was materially false or misleading, a violation of 15 U.S.C. § 7704(a)(1);

(2) by sending or causing the sending of 5,006 commercial emails to ASIS's servers containing misleading subject liens, a violation of § 7704(a)(2);

(3) by using a harvest and dictionary attack to acquire the email accounts to send the 5,006 commercial emails, a violation of § 7704(b)(1); and

(4) by using an automated creation of multiple email accounts to send the 5,006 commercial emails, a violation of § 7704(b)(2).

**United States District Court**
For the Northern District of California

1   ASIS alleges in the complaint that it has "suffered adverse affect [sic] from the sending and receipt

2   of [Member Source's] emails," Compl. ¶ 10, but does not specify what those adverse effects are.

3          Member Source argues that the merits of ASIS's case is weak, largely on the basis that, in

4   one of the other cases filed by ASIS, Judge Spero concluded that ASIS lacked standing to assert its

5   CAN-SPAM claim because "no reasonable jury could find, based on the undisputed evidence, that

6   the Emails that are the subject of this action caused any significant adverse effect to ASIS." JCS

7   Order at 26 (emphasis in original). Member Source contends that, consistent with Judge Spero's

8   ruling, for ASIS to have standing in this case, it must show adverse effects *specifically related* to the

9   emails that were sent by, or caused to be sent by, Member Source; furthermore, those adverse effects

10  must be *significant*. *See also Brosnan v. Alki Mortgage, LLC*, No. C 07 4339 JL, 2008 U.S. Dist.

11  LEXIS 14739, at *7 (N.D. Cal. Feb. 13, 2008) (stating that, "[t]o establish adverse effects the

12  plaintiff must show significant adverse harm" and that "[t]he harm enumerated by Congress goes

13  well beyond the inconvenience of having to deal with an inbox full of spam"); *Gordon v.

14  Virtumundo, Inc.*, No. 06-0204-JCC, 2007 U.S. Dist. LEXIS 35544, at *22-23, 26-27 (W.D. Wash.

15  May 15, 2007) (same).

16         Based on the record before it, the Court does not have sufficient information to assess

17  ASIS's standing. As ASIS points out, even if the Court were to agree with Judge Spero's legal

18  interpretation with respect to adverse effects, the case here involves different facts, being based on

19  different transactions with a different defendant. *See* Opp'n at 4. As indicated at the hearing, the

20  Court will bifurcate the issue and resolve standing on summary judgment.

21         This factor, therefore, does not weigh in favor of Member Source. But neither does it weigh

22  in favor of ASIS, given the legal interpretation that has been rendered by other federal judges.

23         4.     Background and Purpose of Plaintiff's Suit

24         This factor weighs strongly in favor of Member Source. The Court acknowledges that

25  Congress has authorized antispam lawsuits that make possible large statutory damages awards. But

26  it is evident the ASIS's litigation is brought primarily for the purpose of profiting from litigation and

27  not protecting its underlying business. For instance, at the hearing, ASIS admitted that one of the

28  reasons why it turned off its spam filter for its inactive email accounts was to ensure that it could

7

**United States District Court**

For the Northern District of California

1  collect a sufficient number of spam emails to support the filing of its antispam lawsuits.  The only

2  other reason provided by ASIS as to why it turned off its spam filter was that it needed to collect

3  some spam emails in order to configure or better configure its spam filter.  ASIS did not explain why

4  it could not do periodic sampling (*i.e.*, turn off its spam filter for only limited periods of time rather

5  than all the time), nor did it explain why it could not do sampling based on a limited number of

6  inactive accounts (rather than all 1,400 or 1,500 inactive accounts).

7       5.    <u>Legal Costs Expected to be Incurred by Defendant and Extent and Scope of</u>

8            <u>Discovery</u>

9       This factor weighs in favor of Member Source more than ASIS.  It is likely that this case will

10  involve fairly extensive third-party discovery, a fact that ASIS does not really dispute.  *See* Opp'n at

11  10 (stating that "the primary issues for discovery by Plaintiff regard: 1) who was the actual sender of

12  the [5,006] emails, if it was not [Member Source]; and 2) if [Member Source] was not the sender,

13  did they hire or induce the sending of the emails with knowledge or consciously avoid knowing the

14  sender would violate the CAN SPAM Act").  Notably, at the hearing, ASIS asked for permission to

15  issue as many as twenty third-party subpoenas, even though it understood that the Court was

16  limiting discovery to, in essence, the issue of standing, which the Court was bifurcating from the

17  case on its merits in order to allow an early summary judgment motion on standing.  *See* Part III,

18  *infra*.

19       6.    <u>Reasonable Extent of Security to be Posted</u>

20       This factor weighs in favor of ASIS.  Member Source is asking for security in the amount of

21  $200,000 to be posted.  This is an excessive sum, taking into account that the Court is bifurcating the

22  standing issue for early resolution.  Moreover, the sum seems excessive given that only limited costs

23  are covered by 28 U.S.C. § 1920.  *See Jones*, 2006 U.S. Dist. LEXIS 19870, at *7-8 (denying

24  request for security because court could not reach conclusions about merits of the plaintiff's claims

25  in advance of ruling on pending motions to dismiss, the defendants failed to present evidence to

26  support their claim that the plaintiff was unable to pay costs assessed, and the defendants did not

27  establish that a bond in the amount of $50,000 was justified since what could qualify as statutory

28  costs was limited by 28 U.S.C. § 1920).

United States District Court

For the Northern District of California

1    Member Source points out that the $200,000 is needed to cover not only costs but also

2    attorney's fees.  However, the likelihood of Member Source being awarded a fee is questionable.

3    First, as ASIS points out, if Member Source prevails on the argument that ASIS has no standing to

4    bring the suit, then this Court arguably would have no jurisdiction under the CAN-SPAM Act to

5    award fees.  *Cf. Branson v. Nott*, 62 F.3d 287, 292-93 (9th Cir. 1995) ("[B]ecause the district court

6    lacked subject matter jurisdiction over Branson's purported civil rights claim in the first instance, it

7    also lacked the power to award attorney's fees under the civil rights attorney fee statute."); *Knight v.

8    Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000) (concluding that, if a court lacks subject matter

9    jurisdiction over an ERISA claim, then it cannot award attorney's fees under the ERISA fee

10   provision; noting that fee-shifting provisions cannot confer subject matter jurisdiction that is

11   otherwise absent).

12        Member Source argues that "ASIS's position rests on an obvious conflation of constitutional

13   standing and statutory standing" and that "[t]he Ninth Circuit has expressly ruled that where a

14   plaintiff has been found to lack statutory standing, the court nevertheless retains jurisdiction to

15   award costs and fees."  Reply at 3 (citing *Credit Managers Ass'n of S. Cal. v. Kennesaw Life &

16   Accident Ins. Co.*, 25 F.3d 743 (9th Cir. 1994)).  But two of the cases cited by ASIS (*Branson* and

17   *Knight*) have nothing to do with constitutional standing; they simply reflect the principle that, if a

18   court lacks subject matter jurisdiction over a statutory claim, then attorney's fees cannot be awarded

19   pursuant to that statute.  Moreover, ASIS's characterization of *Credit Managers* is not entirely

20   correct.

21        *Credit Managers* involved an ERISA claim.  While the Ninth Circuit did award fees to the

22   prevailing defendant even though the plaintiff failed to establish that it standing to pursue an ERISA

23   claim, the court did so largely as a matter of equity because of the specific circumstances involved:

24            Pursuant to 29 U.S.C. § 1132(g)(1), courts have discretion to
             award reasonable attorney's fees to either party in any action by an
25           ERISA-plan participant, beneficiary, or fiduciary.  In *CMA I*, this
             court held that CMA had standing to bring an ERISA claim because
26           the evidence in the record demonstrated that CMA 'could be' an
             ERISA fiduciary. . . . At trial, however, CMA failed to prove that any
27           of the employers who subscribed to COMPETE had created an ERISA
             plan.  Therefore, CMA argues that, because it failed to satisfy its

28

9

United States District Court
For the Northern District of California

burden of proving that an ERISA plan existed, it could not have been an ERISA fiduciary.

We reject this argument. During the eight years of litigation prior to this appeal, CMA has purported to be a fiduciary to various ERISA plans and has asserted to pursue this case on behalf of the participants of those plans. We agree with Kennesaw that it would be unjust to permit CMA to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims. Indeed, the fact that CMA pursued for so long a claim that lacked any evidentiary basis weighs in favor of awarding fees to Kennesaw. Accordingly, because CMA colorably maintained that it was a fiduciary of a plan throughout the proceedings below, in a manner sufficient to withstand summary judgment, we conclude that the district court had authority to award attorney's fees under section 1132(g)(1) notwithstanding CMA's ultimate failure to prove its claims.

*Id.* at 747. Member Source might be able to obtain fees under CAN-SPAM if this case unfolded like *Credit Managers* -- *e.g.*, prolonged litigation in which ASIS withstood a summary judgment challenge that it lacked standing. However, at this juncture, it is not clear that the case will necessarily unfold like *Credit Managers*, and thus the equitable basis that existed in *Credit Managers* may not obtain here.

Second, attorney's fees under the CAN-SPAM Act are discretionary, not mandatory. *See* 15 U.S.C. § 7706(g)(4) ("[T]he court may, in its discretion, require an undertaking for the payment of the costs of such action, and assess reasonable costs, including reasonable attorneys' fees, against any party."). Furthermore, even under the "evenhanded approach" to attorney's fees (*i.e.*, instead of the dual standard typically applied in civil rights cases and articulated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)), *see Gordon v. Virtumundo, Inc.*, No. 06-0204-JCC, 2007 U.S. Dist. LEXIS 55941, at *14 (W.D. Wash. Aug. 1, 2007) (applying the evenhanded approach to a CAN-SPAM action), a losing plaintiff would likely be assessed fees and costs only if the original suit was frivolous or objectively unreasonable or brought in bad faith. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994) (stating that these factors, as well as the need in particular circumstances to advance considerations of compensation and deterrence, may be used to guide a court's discretion in deciding whether to award fees under the Copyright Act, "so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner"). In the instant case, while there are issues with respect to

United States District Court
For the Northern District of California

1   ASIS's motive in bringing the lawsuit, the case is not clearly frivolous or objectively reasonable.

2   Even the standing issue is not easily resolved, as indicated above.

3          This is not to say that it will be impossible for Member Source to be awarded fees if it is

4   ultimately the prevailing party in this action; nor is the Court making any prejudgment about

5   whether fees are appropriate should Member Source prevail.  The Court is simply noting that, at this

6   juncture, Member Source's claim to fees is highly uncertain.

7          7.      Plaintiff's Compliance with Past Court Orders

8          This factor is not applicable in the instant case.

9   C.     Summary

10         The above factors reflect that Member Source has legitimate concerns behind its request for

11  security based on, *e.g.*, ASIS's financial ability to pay, the extent and scope of expected discovery,

12  and ASIS's motivation in bringing this litigation.  On the other hand, it is not clear that ASIS's suit

13  is without merit, as Member Source contends.  Furthermore, the amount of security requested by

14  Member Source is excessive, particularly because the Court is bifurcating the standing issue and

15  Member Source may not be entitled to attorney's fees (as opposed to taxable costs).

16         Taking into account all of the above, the Court concludes that Member Source's request for

17  security is justified.  However, the Court will not require a bond of $200,000, as Member Source has

18  requested.  Requiring a bond in this amount is not warranted for the reasons discussed above.

19  Moreover, requiring a bond in this amount would effectively preclude ASIS from proceeding with

20  this case, something that the Court is loathe to do since the Ninth Circuit has cautioned that "care

21  must be taken not to deprive a plaintiff of access to the federal courts."  *Simulnet*, 37 F.3d at 575-76.

22         The Court concludes that security in the amount of $7,500 is appropriate.  This amount is

23  likely to cover any taxable costs that Member Source would incur should the standing issue be

24  resolved in its favor.  Should ASIS prevail on the summary judgment motion on standing, then

25  Member Source may ask the Court to revisit the issue of whether a bond in a greater amount should

26  be posted.

27

28

**United States District Court**
For the Northern District of California

### III. CASE MANAGEMENT SCHEDULE

At the hearing, the parties agreed that, to conserve resources, the Court should bifurcate the standing issue and allow an early summary judgment motion on that issue before dealing with the case on its merits.

The summary judgment motion on standing shall be heard on **October 15, 2008, at 10:30 a.m.** The opening brief shall be filed by September 10, 2008; the opposition brief by September 24, 2008; and the reply brief by October 1, 2008.

Prior to the hearing on the summary judgment motion, all discovery shall be stayed, with the following limited exceptions. First, the Court shall allow limited, reasonable discovery specifically targeted to the issue of standing. Second, the Court shall allow ASIS to issue five subpoenas to third parties the sole purpose of allowing ASIS to determine who the owner of a domain name is. The parties may meet and confer to determine whether other limited, reasonable discovery is appropriate, keeping in mind that the Court wishes to keep costs at a minimum so that the threshold issue of standing may be resolved first.

Finally, the Court orders the parties to meet and confer to discuss whether it may be appropriate to stay this case until after the Ninth Circuit rules on ASIS's appeal in the *Optin Global* case (No. C-05-5124 JCS) and clarifies what the standing requirements are for an action brought pursuant to the CAN-SPAM Act. The parties should report back to the Court by joint letter on the stay issue by July 17, 2008.

This order disposes of Docket No. 7.


IT IS SO ORDERED.


Dated: July 2, 2007

_____
EDWARD M. CHEN
United States Magistrate Judge

Exhibit H

THIS DOCUMENT HAS AN ARTIFICIAL WATERMARK PRINTED ON THE BACK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT BORDER. ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

**US bank**
Five Star Service Guaranteed

**CASHIER'S CHECK**    No. 3842502495

90-3582
1222

4419

**DATE:**   MAY 19, 2010

**PAY**    FIFTY EIGHT THOUSAND TWO HUNDRED NINE DOLLARS AND 29 CENTS

CCUSH    $ 58,209.29

**TO THE
ORDER OF:**    **ASIS INTERNET SERVICES**

MAY 19 '10

**PURPOSE/REMITTER:** SINGLETON LAW GROUP

8

**Location:**   3842 EUREKA MAIN

_Anne Russell_
AUTHORIZED SIGNATURE

U.S. Bank National Association
Minneapolis, MN 55480

⑈384 2502495⑈ ⑈122235821⑈ 1534 1002 3953⑈

IF THIS INSTRUMENT IS DESIGNATED ON ITS FACE
AS A MONEY ORDER THE FOLLOWING APPLIES:

Exhibit I

# CLEARED CHECK

| Date Cleared | Check Number | Amount |
|---|---|---|
| 05/19/2010 | 103136 | 40000.00 |

Close Window        Print



View Back

Exhibit J

**Community Credit Union**

757 Redwood Drive
Garberville, California 95542

707.923.2012

# Statement Of Account

ACCOUNT #: 6419
PAGE:  1          WC: P

MC: 5

ASIS INTERNET SERVICES
PO BOX 776
GARBERVILLE, CA          95542

STATEMENT PERIOD
 MONTHLY FROM: 05/01/10
           TO: 05/31/10
NON-MONTHLY FROM: 05/01/10
           TO: 05/31/10

--------------------------------------------------------------------

| TRAN DATE | TRAN TYPE | TRANSACTION AMOUNT | RESULTING SHARE BALANCE | LOAN PRINCIPAL | *FINANCE* *CHARGE* | RESULTING LOAN BALANCE |
|---|---|---|---|---|---|---|
| SHARE SUFFIX A - PRIMARY SHARE DIVIDEND RATE:  .40 | | | | | | |
| 05-01-10 | BEG BAL | | 444.94 | | | .00 |
| 05-31-10 | DIVIDEND | .15 | 445.09 | | | |
| | TERM: 31 DAYS  AVERAGE DAILY BALANCE: | | | 444.94 | APYE: | .41 |
| 05-31-10 | END BAL | | 445.09 | | | |

DIVIDEND YTD                      1.67   *FINANCE CHARGE YTD*          .00

========================================================================
SHARE SUFFIX 0 - DRAFT
 DIVIDEND RATE:   .00

| | | | | | | |
|---|---|---|---|---|---|---|
| 05-01-10 | BEG BAL | | 2,045.46 | | | .00 |
| 05-04-10 | # 10546 | 32.53 | 2,012.93 | | | |
| 05-04-10 | # 10547 | 525.00 | 1,487.93 | | | |
| 05-10-10 | # 10548 | 75.00 | 1,412.93 | | | |
| 05-19-10 | # 10549 | 50.09 | 1,362.84 | | | |
| 05-19-10 | DEPOSIT | 58,209.29 | 59,572.13 | | | |
| 05-19-10 | W/D | 40,000.00 | 19,572.13 | | | |
| | NELLA WHITE | | | | | |
| 05-19-10 | W/D | 3.00 | 19,569.13 | | | |
| 05-19-10 | MISC TRN | 3.00 | * NO CHANGE IN BALANCE * | | | |
| | CHECK FEE | | | | | |
| 05-21-10 | # 10553 | 3,217.57 | 16,351.56 | | | |
| 05-24-10 | # 10551 | 200.00 | 16,151.56 | | | |
| 05-26-10 | # 10541 | 25.00 | 16,126.56 | | | |
| 05-26-10 | # 10552 | 200.00 | 15,926.56 | | | |
| 05-26-10 | # 10550 | 396.00 | 15,530.56 | | | |
| 05-26-10 | # 10557 | 1,500.00 | 14,030.56 | | | |
| 05-27-10 | # 10555 | 6,500.00 | 7,530.56 | | | |
| 05-31-10 | END BAL | | 7,530.56 | | | |

# INDICATES A SHARE DRAFT NUMBER

CONTINUED ON NEXT PAGE          APYE=ANNUAL PERCENTAGE YIELD EARNED



**Community Credit Union**

757 Redwood Drive
Garberville, California 95542

707.923.2012

## Statement Of Account

ACCOUNT #: 6419
PAGE: 2          WC: P

MC: 5

ASIS INTERNET SERVICES
PO BOX 776
GARBERVILLE, CA          95542

STATEMENT PERIOD
MONTHLY FROM: 05/01/10
TO: 05/31/10
NON-MONTHLY FROM: 05/01/10
TO: 05/31/10

---

| TRAN DATE | TRAN TYPE | TRANSACTION AMOUNT | RESULTING SHARE BALANCE | LOAN PRINCIPAL | *FINANCE* *CHARGE* | RESULTING LOAN BALANCE |
|---|---|---|---|---|---|---|

SHARE SUFFIX 0 - DRAFT                    CONTINUED FROM PAGE - 1
DIVIDEND RATE:    .00

| DRAFT # | AMOUNT | DRAFT # | AMOUNT | DRAFT # | AMOUNT |
|---|---|---|---|---|---|
| 10541 | 25.00 | 10549 | 50.09 | 10553 | 3,217.57 |
| 10546* | 32.53 | 10550 | 396.00 | 10555* | 6,500.00 |
| 10547 | 525.00 | 10551 | 200.00 | 10557* | 1,500.00 |
| 10548 | 75.00 | 10552 | 200.00 | | |

* INDICATES A BREAK IN DRAFT # SEQUENCE                    TOTAL DRAFTS:    11

|  | TOTAL MONTH-TO-DATE | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | $      .00 | $      25.00 |
| TOTAL RETURNED ITEM FEES | $      .00 | $      .00 |

DIVIDEND YTD                    .00    *FINANCE CHARGE YTD*          .00

APYE = ANNUAL PERCENTAGE YIELD EARNED
* ALL SUFFIXES REFLECTED IN THE FOLLOWING TOTALS *
*TOTAL YTD DIVIDENDS/INTEREST*  TAXABLE:      1.67    DEFERRED: {          .00 }
*TOTAL YTD FINANCE CHARGE*  NON-MTG:      .00    MORTGAGE: {          .00 }

WE UNDERSTAND THE IMPORTANCE OF PROTECTING YOUR PRIVACY &
MAINTAINING THE CONFIDENTIALITY OF YOUR FINANCIAL RECORDS.
WE DO NOT PROVIDE YOUR INFORMATION TO THIRD PARTIES FOR THE
PURPOSE OF INDEPENDENT MARKETING.   YOUR PRIVACY IS IMPORTANT!
SIGN UP FOR E-STATEMENTS AT WWW.CCUSH.ORG

# Statement Of Account

**Community Credit Union**
757 Redwood Drive
Garberville, California 95542
707.923.2012

ACCOUNT #: 6419
PAGE:  1      WC: P

MC: 5

ASIS INTERNET SERVICES
PO BOX 776
GARBERVILLE, CA          95542

STATEMENT PERIOD
MONTHLY FROM: 06/01/10
TO: 06/30/10
NON-MONTHLY FROM: 04/01/10
TO: 06/30/10

---

| TRAN DATE | TRAN TYPE | TRANSACTION AMOUNT | RESULTING SHARE BALANCE | LOAN PRINCIPAL | *FINANCE* *CHARGE* | RESULTING LOAN BALANCE |
|---|---|---|---|---|---|---|

SHARE SUFFIX A - PRIMARY SHARE
DIVIDEND RATE:  .40

```
04-01-10 BEG BAL                   444.79                                    .00
04-30-10 DIVIDEND          .15     444.94
         TERM:   30 DAYS  AVERAGE DAILY BALANCE:     444.79   APYE:   .42
05-31-10 DIVIDEND          .15     445.09
         TERM:   31 DAYS  AVERAGE DAILY BALANCE:     444.94   APYE:   .41
06-30-10 DIVIDEND          .15     445.24
         TERM:   30 DAYS  AVERAGE DAILY BALANCE:     445.09   APYE:   .42
06-30-10 END BAL                   445.24
```

DIVIDEND YTD                       1.82    *FINANCE CHARGE YTD*        .00

SHARE SUFFIX 0 - DRAFT
DIVIDEND RATE:   .00

```
06-01-10 BEG BAL               7,530.56                                    .00
06-02-10 #  10556    2,500.00   5,030.56
06-03-10 #  10559      812.38   4,218.18
06-04-10 #  10562       37.50   4,180.68
06-08-10 #  10560      208.75   3,971.93
06-09-10 DEPOSIT       216.10   4,188.03
06-09-10 TFR W/D       144.00   4,044.03
         TO SIMPLE INTERNET
06-11-10 #  10561      601.46   3,442.57
06-30-10 END BAL               3,442.57
```
# INDICATES A SHARE DRAFT NUMBER

| DRAFT # | AMOUNT | DRAFT # | AMOUNT | DRAFT # | AMOUNT |
|---|---|---|---|---|---|
| 10556 | 2,500.00 | 10560 | 208.75 | 10562 | 37.50 |
| 10559* | 812.38 | 10561 | 601.46 | | |

* INDICATES A BREAK IN DRAFT # SEQUENCE                    TOTAL DRAFTS:    5

CONTINUED ON NEXT PAGE          APYE=ANNUAL PERCENTAGE YIELD EARNED



**Community Credit Union**

757 Redwood Drive
Garberville, California 95542

707.923.2012

## Statement Of Account

ACCOUNT #: 6419
PAGE: 2     WC: P

MC: 5

```
ASIS INTERNET SERVICES                    STATEMENT PERIOD
PO BOX 776                                  MONTHLY FROM: 06/01/10
GARBERVILLE, CA          95542                         TO: 06/30/10
                                        NON-MONTHLY FROM: 04/01/10
                                                       TO: 06/30/10
```

```
-------------------------------------------------------------------------
  TRAN      TRAN     TRANSACTION  RESULTING       LOAN   *FINANCE*  RESULTING
  DATE      TYPE        AMOUNT    SHARE BALANCE  PRINCIPAL *CHARGE* LOAN BALANCE
=========================================================================
SHARE SUFFIX 0 - DRAFT                CONTINUED FROM PAGE - 1
DIVIDEND RATE:    .00

DRAFT #        AMOUNT      DRAFT #        AMOUNT      DRAFT #        AMOUNT
-------------------------------------------------------------------------
```

| | TOTAL MONTH-TO-DATE | TOTAL YEAR-TO-DATE |
|---|---|---|
| TOTAL OVERDRAFT FEES | $      .00 | $    25.00 |
| TOTAL RETURNED ITEM FEES | $      .00 | $      .00 |

```
DIVIDEND YTD                       .00   *FINANCE CHARGE YTD*          .00
=========================================================================
 APYE = ANNUAL PERCENTAGE YIELD EARNED
* ALL SUFFIXES REFLECTED IN THE FOLLOWING TOTALS *
*TOTAL YTD DIVIDENDS/INTEREST*  TAXABLE:       1.82   DEFERRED: {       .00 }
*TOTAL YTD FINANCE CHARGE*      NON-MTG:        .00   MORTGAGE: {       .00 }

    WE UNDERSTAND THE IMPORTANCE OF PROTECTING YOUR PRIVACY &
    MAINTAINING THE CONFIDENTIALITY OF YOUR FINANCIAL RECORDS.
    WE DO NOT PROVIDE YOUR INFORMATION TO THIRD PARTIES FOR THE
    PURPOSE OF INDEPENDENT MARKETING.  YOUR PRIVACY IS IMPORTANT!
    SIGN UP FOR E-STATEMENTS AT WWW.CCUSH.ORG
```

Exhibit K

California Secretary of State Debra Bowen

| Secretary of State | Administration | Elections | Business Programs | Political Reform | Archives | Registries |

**Business Entities (BE)**

Online Services
- **Business Search**
- **Disclosure Search**
- **E-File Statements**
- **Mail Processing Times**

**Main Page**

**Service Options**

**Name Availability**

**Forms, Samples & Fees**

**Annual/Biennial Statements**

**Filing Tips**

**Information Requests**
(certificates, copies &
status reports)

**Service of Process**

**FAQs**

**Contact Information**

Resources
- **Business Resources**
- **Tax Information**
- **Starting A Business**
- **International Business**
  **Relations Program**

**Customer Alert**
(misleading business
solicitations)

# Business Entity Detail

Data is updated weekly and is current as of Friday, August 13, 2010. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | ASIS INTERNET SERVICES |
| **Entity Number:** | C2424005 |
| **Date Filed:** | 06/24/2002 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | PO BOX 776 |
| **Entity City, State, Zip:** | GARBERVILLE CA 95542 |
| **Agent for Service of Process:** | NELLA WHITE |
| **Agent Address:** | 7883 BENBOW DR |
| **Agent City, State, Zip:** | GARBERVILLE CA 95542 |

* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code **section 2114** for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to **Name Availability**.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to **Information Requests**.
- For help with searching an entity name, refer to **Search Tips**.
- For descriptions of the various fields and status types, refer to **Field Descriptions and Status Definitions**.

**Modify Search** | **New Search** | **Printer Friendly** | **Back to Search Results**

**Privacy Statement** | **Free Document Readers**

Copyright © 2010   California Secretary of State

Exhibit L

Community Credit Unic

757 Redwood Drive
Garberville, California 95542

707.923.2012

```
ACCOUNT    LOAN     PREV     LOAN                 INTEREST  PRINCIPAL  NEW
NUMBER  SFX NAME   BALANCE  TO    AMOUNT                               BALANCE
6419      0         38191.37 ST  12000.00                            26191.37
DR# 902.00   CR# 700     OT#          REF# 056877 SERVICES, ASIS IN REC  7856
TO 12951
12951     A         4072.31 SU   12000.00                            16072.31
DR# 700      CR# 901.00  OT#          REF# 056878 WHITE, NELLA    REC  7857
```

*Nella White*

```
DATE: 01/27/10  TIME: 16:04:39  TELLER: BNL
CASH IN              .00    CHECK IN            .00   CHANGE        .00
NET TRANSFER         .00    NO MONEY ITEM       .00   CASH OUT      .00
```

Community Credit Union
757 Redwood Drive
Garberville, California 95542
707.923.2012

| ACCOUNT NUMBER | SFX PAGE | PREV BALANCE | TC | AMOUNT | INTEREST | PRINCIPAL | NEW BALANCE |
|---|---|---|---|---|---|---|---|
| 6419 | 0 | 26191.37 ST | | 8000.00 | | | 18191.37 |
| DR# 902.00 | CR# 700 | OT# | | REF# 056881 SERVICES, ASIS IN | REC 7858 | | |
| TO 13260 | | | | | | | |
| 13260 | 0 | 867.35 SU | | 8000.00 | | | 8867.35 |
| DR# 700 | CR# 902.00 | OT# | | REF# 056882 WHITE, NELLA | REC 7859 | | |

*Nella White*

DATE: 01/27/10  TIME: 16:07:41  TELLER: BNL

| CASH IN | .00 | CHECK IN | .00 | CHANGE | .00 |
|---|---|---|---|---|---|
| NET TRANSFER | .00 | NO MONEY ITEM | .00 | CASH OUT | .00 |